Honorable Thomas S. Zilly

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT
9              WESTERN DISTRICT OF WASHINGTON AT SEATTLE

10  VALVE, L.L.C., a Washington limited liability     No. CV02-1683
    company,
11                                                     DEFENDANT'S MOTION FOR
                        Plaintiff,                     PROTECTIVE ORDER AND
12                                                     MEMORANDUM OF LAW IN
           v.                                          SUPPORT
13
    SIERRA ENTERTAINMENT, INC., (aka
14  SIERRA ON-LINE, INC.),
15                      Defendant.                     **NOTED FOR**
                                                       **CONSIDERATION:**
16                                                     **August 25, 2003**
17                                                     **ORAL ARGUMENT**
                                                       **REQUESTED**
18

19              **I.      INTRODUCTION AND RELIEF REQUESTED**

20          Defendant, Sierra Entertainment, Inc. ("Sierra"), pursuant to Fed.R.Civ.P. 26(c),

21  moves this Court for its Protective Order limiting discovery in this matter to activities

22  concerning the licensing of cybercafés[1] located within the United States, and prohibiting

23

24  _____

25          [1] Cybercafés are facilities where several computers are connected by a Local Area Network, or "LAN."
    The LAN permits cybercafé gamers an opportunity to play one another in an online environment. Patrons can
26  check email, browse internet sites, or use software, including gaming software, installed on the computer or the
    LAN.  As to games distributed by Sierra, each computer in a cybercafé is loaded with a copy of licensed
27  software manufactured by Sierra for distribution in retail markets.  (Declaration of Eric Roeder ("Roeder Decl."),
    ¶ 8)

CHRISTENSEN
O'CONNOR
JOHNSON
KINDNESS^PLLC

LAW OFFICES
1420 Fifth Avenue, Suite 2800
Seattle, WA  98101-2347
TELEPHONE  206.682.8100

1    Plaintiff from conducting discovery concerning the licensing of cybercafés outside the United

2    States, consistent with the territorial limits of U.S. copyright law.

3         As set forth in detail below, this dispute centers around Plaintiff's complaint for

4    copyright infringement.  Defendant Sierra has the exclusive worldwide license to sell and

5    distribute certain Valve computer games at retail, and to "rent, lease and license" retail

6    versions of the games.  Sierra has licensed Valve games to cybercafés so that cybercafé

7    patrons may lease time on cybercafé computers and play the games on a "pay for play" basis.

8    Valve has begun a program of licensing in direct competition with Sierra,[2] and Valve now

9    contends that game play in the cybercafés constitutes a "public performance" under U.S. law,

10   not withstanding the "rent, lease and license" language of the license grant.  Valve thus

11   contends that Sierra's licensure of cybercafés is an infringement of Valve's U.S. copyrights.

12        Sierra has produced full discovery concerning its activities in licensing cybercafés

13   located within the U.S.  (Carlson Decl. ¶ 6)  Sierra has also produced discovery concerning

14   communications between its U.S. offices and overseas offices related to the licensing of

15   cybercafés in foreign countries.    (Carlson Decl. ¶ 6)   Valve, however, has demanded

16   discovery, even from Sierra's overseas corporate affiliates, concerning all foreign licensing

17   activities.  The "pay for play" use of Valve games at cybercafés in foreign countries is not

18   governed by U.S. copyright law, so Valve's requested discovery cannot possibly lead to the

19   discovery of admissible evidence.  The collection of documentation and depositions of

20   overseas witnesses will result in a tremendous escalation in costs, without yielding any

21   evidence relevant to claims of infringement of U.S. copyrights.    (Roeder Decl. ¶ 7)

22   Accordingly, Sierra seeks the Court's protective order limiting the scope of discovery to

23   activities concerning cybercafés which are located within the U.S.

24

25

26   _____

27        [2]  Copies from Valve's website describing its new "STEAM" technology for distributing Valve games
     online are attached to the Declaration of Robert J. Carlson ("Carlson Decl.) as Ex. D.

DEFENDANT'S MOTION FOR PROTECTIVE
ORDER AND MEMORANDUM OF LAW IN
SUPPORT (CV02-1683) - 2
VIUP\2343PL11B.DOC

CHRISTENSEN
O'CONNOR
JOHNSON
KINDNESS<sup>PLLC</sup>

LAW OFFICES
1420 Fifth Avenue, Suite 2800
Seattle, WA  98101-2347
TELEPHONE:  206.682.8100

The only purpose of the discovery sought is to yield information that may be useful to Valve in a commercial capacity.  Through Valve's STEAM technology, they compete directly with Sierra for the cybercafé market.  (Carlson Decl. Ex. D)  The requested discovery places an extreme burden on Sierra and Sierra's corporate affiliates because it requires document collection and information gathering from a number of foreign offices in distant foreign countries such as the Philippines, Malaysia, Thailand, China, and Singapore.  (Roeder Decl. ¶ 2)   Most notably, Sierra's 30(b)(6) deposition notice requires Sierra to produce a representative from Singapore (Roeder Decl. ¶ 9) for an examination lacking any relevance whatsoever to the issues in this litigation.

Valve's Deposition Notice pursuant to Rule 30(b)(6) is attached to the declaration of Robert J. Carlson ("Carlson Decl.") as Exhibit A.   Valve's written Interrogatories and Requests for Production pursuant to Rules 33 and 34 are attached to the Carlson Declaration as Exhibits B and C, respectively.  Counsel for Sierra certifies that the parties have met and conferred in good faith regarding this discovery dispute prior to bringing the present motion.

## II.     FACTUAL BACKGROUND

### A.     Nature of the Dispute

#### 1.     Parties

Sierra is a P.C. game development studio and one of several such studios under the corporate ownership of Vivendi Universal Games, one of the world's leading publishers of interactive entertainment and educational software for all major platforms, including P.C., console and internet platforms.

Valve is a developer of P.C. games, and in partnership with Sierra, originally developed the popular game title "Half-Life."   Another successful Valve title is "Counter-Strike."  Valve enjoys substantial notoriety as a developer and as a direct result of Sierra's global marketing and advertising.  Recently, Valve released technology known as "STEAM" that permits Valve to compete directly with Sierra in the cybercafé market. (Carlson Decl. Ex. D)

DEFENDANT'S MOTION FOR PROTECTIVE
ORDER AND MEMORANDUM OF LAW IN
SUPPORT (CV02-1683) - 3
VIUP\2343PL11B.DOC

CHRISTENSEN
O'CONNOR
JOHNSON
KINDNESS┬LLC

LAW OFFICES
1420 Fifth Avenue, Suite 2800
Seattle, WA 98101-2347
TELEPHONE  206 682 8100

## 2.    Sierra's License

The present relationship between Valve and Sierra is governed by a Software Publishing Agreement having an effective date of March 29, 2001. Prior to the effective date, Sierra owned all intellectual property embodied in the "Half-Life" and "Half-Life 2" and add-on products, pursuant to previous agreements between the parties. The Software Publishing Agreement transferred that intellectual property from Sierra to Valve, with Sierra retaining the exclusive worldwide license rights to reproduce, use, distribute, (directly or indirectly) and licensed Retail Packaged Product versions of the games.

The Software Publishing Agreement, including attached exhibits and addenda, is a document comprising over a hundred pages, but as relevant to this litigation, and as to each Valve game at issue, the Software Publishing Agreement grants Sierra:

> . . . [A] worldwide perpetual license to manufacture or cause to be manufactured, reproduce or cause to be reproduced, use, distribute or have distributed, market, advertise, publicly display and perform in connection with such marketing and advertising, rent, lease and license [the subject Valve game] and foreign translations thereof . . . as Retail Packaged Product.

The Software Publishing Agreement defines Retail Packaged Product as product that:

> (a) is distributed on only tangible media (e.g., on a CD-ROM); (b) includes as part of the purchase price, the right to receive Sierra product support for a limited period of time . . .; (c) is distributed in packaging of the type typical of game software in the Retail Channel; and (d) is distributed in the Retail Channel.

## 3.    Valve Contentions

Valve's Complaint alleges that Sierra has acted outside the scope of its authorized rights under the Software Publishing Agreement by licensing Valve games to multi-player facilities "in the United States and abroad, which are commonly known as 'internet cafés' and/or 'cybercafés.'" (Complaint, ¶ 8) Notably, however, Valve's Complaint alleges only that cybercafé licensing constitutes copyright infringement under U.S. law. Valve has not asserted any breach of contract claims for Sierra's alleged violations of the Software Publishing

DEFENDANT'S MOTION FOR PROTECTIVE
ORDER AND MEMORANDUM OF LAW IN
SUPPORT (CV02-1683) - 4
VIUP\2343PL11B.DOC

CHRISTENSEN
O'CONNOR
JOHNSON
KINDNESS$^{PLLC}$

LAW OFFICES
1420 Fifth Avenue, Suite 2800
Seattle, WA 98101-2347
TELEPHONE: 206.682.8100

1  Agreement, nor any claim that foreign copyrights are infringed; instead, the only allegation is

2  U.S. copyright infringement.

3       Valve's contention is that the playing of Valve games in a multi-player cybercafé

4  constitutes an unauthorized "public performance" in violation of 17 U.S.C. § 106(4).  Valve

5  contends that the public display and performance of Valve games must be "in connection with

6  . . . marketing and advertising" of the games, under the license grant set forth above.  While

7  there may indeed be fact questions as to whether cybercafé game play is "public," and

8  whether even public game play, including tournaments, is a public performance (and the case

9  of *Allen v. Academic Games League of America Inc.*, 89 F.3d 614, 616 (9th Cir. 1996) holds

10 that it is not) Valve's Complaint may, indeed, state a claim for relief as to cybercafés located

11 ***within the U.S.***  Unquestionably, however, play of the games in cybercafés located ***outside***

12 ***the U.S.*** is not governed by U.S. copyright law, as discussed more fully below.

13      Valve has recently departed from its contentions related to "public performance," and

14 now contends generally that the rights granted in the Software Publishing Agreement do not

15 include the right to license leased time on the games at cybercafés, despite the express grant

16 permitting Sierra to "rent, lease and license" the games.  Again, Valve's Complaint may state

17 a claim for relief with respect to U.S.-based cybercafés, but the issue being litigated is

18 infringement of U.S. copyright, not breach of the agreement.  As set forth below, it is

19 axiomatic that United States copyright law has no application beyond the United States

20 territorial borders.  It is equally well settled that activities within the U.S. that constitute

21 licensing or authorizing infringing activity outside the U.S. does not give rise to a claim under

22 U.S. copyright.

23 **B.     Discovery Produced and Demanded**

24      Valve's 30(b)(6) deposition notice (Carlson Decl. Exh. A) requests the examination of

25 a representative knowledgeable regarding Asian Media Development Group ("AMDG").

26 AMDG is Sierra's distributor in the Philippines.  (Carlson Decl. ¶ 4; Roeder Decl. ¶ 9)

27 Valve's deposition notice enumerates eleven (11) subject matter categories for examination.

DEFENDANT'S MOTION FOR PROTECTIVE
ORDER AND MEMORANDUM OF LAW IN
SUPPORT (CV02-1683) - 5
VIUP\2343PL11B.DOC

CHRISTENSEN
O'CONNOR
JOHNSON
KINDNESS^PLLC

LAW OFFICES
1420 Fifth Avenue, Suite 2800
Seattle, WA  98101-2347
TELEPHONE:  206.682.8100

1    The only Sierra representatives knowledgeable regarding this subject matter are located in the

2    Philippines or Singapore.  (Roeder Decl. ¶ 9)  In an action based solely on an alleged

3    violation of U.S. copyright law, Valve cannot show that an examination regarding AMDG

4    will yield admissible evidence.  As explained further below, the licensing activities of AMDG

5    cannot – under any factual scenario – violate U.S. copyright law; this is true even where

6    authorization for such activities originates in the U.S.  *See Subafilms v. MGM-Pathe*

7    *Communications Co.*, 24 F.3d 1088 (9th Cir. 1994).  Producing witnesses knowledgeable

8    regarding AMDG, or travelling to Singapore for their depositions, would place an

9    unreasonable burden on Sierra, while yielding no admissible evidence.

10       Valve's written discovery requests (Carlson Decl. Exhs. B and C) also seek a

11   tremendously broad scope of information and documents regarding activities on foreign soil,

12   without relation to U.S. copyright law.  These requests place an unreasonable burden on

13   Sierra because they purport to require the collection of documents from several foreign

14   sources located in distant countries such as the Philippines, Malaysia, Thailand, China and

15   Singapore. (Roeder Decl. ¶ 2)  In an attempt to compromise with Valve, Sierra has agreed to

16   produce all U.S.-based documentation including all correspondence with foreign offices

17   regarding cybercafé licensing.  (Carlson Decl. ¶ 6)

18       Sierra has agreed to produce this U.S.-based documentation relating to foreign

19   cybercafé licensing notwithstanding Sierra's view that Valve is entitled only to documents

20   relating to the licensing activities for cybercafés in the United States.  Regarding the licensing

21   activities of cybercafés in the United States, Sierra has been clear that it will produce all

22   documents in its possession or control relating to U.S. cybercafés. (Carlson Decl. ¶ 6)  Valve

23   is not satisfied with this offer and it continues to demand an exhaustive <u>global</u> collection of all

24   documents and information relating to Sierra's foreign licensing.  Valve demands a collection

25   from every country manager, foreign distributor, and cybercafé on a <u>worldwide</u> <u>basis</u>.

26   (Carlson Decl. ¶ 6)  Global document production and global information gathering in

27   response to Valve's incredibly broad written discovery would come at great financial and

DEFENDANT'S MOTION FOR PROTECTIVE
ORDER AND MEMORANDUM OF LAW IN
SUPPORT (CV02-1683) - 6
VIUP\2343PL11B.DOC

CHRISTENSEN
O'CONNOR
JOHNSON
KINDNESS™

LAW OFFICES
1420 Fifth Avenue, Suite 2800
Seattle, WA 98101-2347
TELEPHONE: 206.682.8100

1  administrative cost to Sierra.  (Roeder Decl. ¶ 7)  Because the issues in this litigation are so

2  clearly limited to violations of U.S. copyright law, Valve cannot conduct its global discovery

3  as to cybercafés located outside the U.S.

### III.   ARGUMENT AND AUTHORITY

**A.   Standard for Granting Protective Order**

Pursuant to Fed. R. Civ. P. 26(c), the court has wide discretion to enter orders protecting parties and witnesses during the discovery process. *See Kirschner v. Uniden Corp. of America*, 842 F.2d 1074 (9th Cir. 1988).  Protective orders should be entered upon a showing of "good cause."  *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1310 (11th Cir. 2001).  A court has almost complete discretion in determining what constitutes good cause. *See id.*  Rule 26(c) specifically instructs courts to limit the frequency or extent of discovery if the same will cause undue burden or expense.  Discoverable material need not be admissible as evidence but only "reasonably calculated" to lead to the discovery of admissible evidence, but all discovery is subject to the limitations imposed by Fed. R. Civ. P. 26(b)(iii), which requires limitations on discovery when

> the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(iii).

**B.   Scope of U.S. Copyright Laws**

In this case, it is undisputed that Valve, as the copyright holder, has granted Sierra several of the exclusive rights enumerated in 17 U.S.C. § 106 by way of the Software Publishing Agreement.  Where the copyrighted works in question are Valve's games, Sierra has the right to manufacture copies of the work, *see* § 106(1), and to distribute copies of the work to the public by sale or other transfer of ownership, or by rental, lease or lending, *see* § 106(3).  All copies of the Valve works reproduced and distributed throughout the world are



CHRISTENSEN
O'CONNOR
JOHNSON
KINDNESS^PLLC

LAW OFFICES
1420 Fifth Avenue, Suite 2800
Seattle, WA  98101-2347
TELEPHONE:  206.682.8100

1   distributed in accordance with the license terms, *i.e.*, as Retail Packaged Product.  (Roeder

2   Decl. ¶ 9)

3        Under the terms of the agreement, Valve has not granted the right to publicly perform

4   the work, *see* § 106(4), except in association with advertising or promotion of Valve's game.

5   The remaining enumerated exclusive rights (preparation of "derivative works," § 106(2);

6   public display of individual images, § 106(5); and public performance of digital sound

7   recordings, § 106(6)) are not at issue in this litigation.

8        Therefore, the fundamental issue to be resolved by this litigation has nothing to do

9   with whether Sierra can reproduce or distribute the Valve works; Sierra is licensed to do so.

10  The only issue is whether these genuine, authorized copies are nevertheless put to an

11  infringing use once installed and played on a computer at a cybercafé.  Sierra believes it has

12  the right to authorize a cybercafé to permit leased time pay for play use, because Sierra can

13  "rent, lease and license" the software.  Valve contends that cybercafé use is a public

14  performance, authority for which is withheld under § 106(4).  Valve's theory regarding use of

15  Retail Packaged Product by overseas cybercafés, however, cannot support a claim for

16  violation of U.S. copyright law.

17       In the amendments to the Copyright Act adopted in 1976, Congress added the words

18  "and to authorize" to 17 U.S.C. § 106, to clarify that a copyright owner has the enumerated

19  "exclusive rights to do and to authorize" any of those rights.  Thus, infringement liability can

20  stem from the directly infringing act itself, *i.e.*, public performance of the work, or

21  contributorily, from authorizing the public performance of the work.  When the allegedly

22  infringing act, (*i.e.*, public performance) takes place outside the United States, but authority to

23  do the act (*i.e.*, licensing) takes place wholly or partly within the United States, does the

24  licensing constitute an infringing act cognizable under U.S. copyright law?  The answer is,

25  unquestionably, no.  It is an undisputed axiom that U.S. copyright law has no effect outside

26  the borders of the country, and the authorization of an allegedly infringing act overseas does

27  not constitute a violation of U.S. law.  *Subafilms*, 24 F.3d at 1095.

CHRISTENSEN
O'CONNOR
JOHNSON
KINDNESS<sup>PLLC</sup>

LAW OFFICES
1420 Fifth Avenue, Suite 2800
Seattle, WA  98101-2347
TELEPHONE:  206.682.8100

The *Subafilms* court cites with approval the analysis of Professor Nimmer:

> Accepting the proposition that a direct infringement is a prerequisite to third party liability, the further question arises whether the direct infringement on which liability is premised must take place within the United States.  Given the undisputed axiom that United States copyright law has no extraterritorial application, it would seem to follow necessarily that a primary activity outside the boundaries of the United States, not constituting an infringement cognizable under the Copyright Act, cannot serve as the basis for holding liable under the Copyright Act one who is merely related to that activity within the United States.

3 Nimmer, *Nimmer on Copyright*, Section 12.04[A][3][b], cited in *Subafilms* at 1093.

In *Subafilms*, which concerned the Beatles' animated motion picture "Yellow Submarine," the copyright owner negotiated with United Artists Corporation to distribute the film in theaters and on television, pursuant to an agreement authorizing distribution.  24 F.3d at 1089.  In the early 1980's, when home video became popular, United Artists' successor, MGM, authorized its domestic subsidiary to distribute the film within the United States on video cassette.  MGM also authorized its licensee, Warner Brothers, to distribute video cassette copies of the film in foreign countries.  *See id.*  The case was tried to a special master, and the district court adopted the special master's findings, awarding compensatory damages for both foreign and domestic video cassette distribution.

The judgment was appealed to a panel of the Ninth Circuit Court of Appeals, which affirmed the finding that foreign distribution constituted infringement under the U.S. Copyright Act.  The panel concluded that it was bound by a prior decision relating to foreign distribution of copyrighted works, *Peter Starr Production Co. v. Twin Continental Films, Inc.*, 783 F.2d 1440 (9th Cir. 1986).  Although the *Peter Starr* decision recognized that infringing actions taking place entirely outside the United States are not actionable under U.S. copyright law, the *Peter Starr* case held that where illegal authorization of international exhibitions takes place in the United States, liability would lie under U.S. law.

CHRISTENSEN
O'CONNOR
JOHNSON
KINDNESS^PLLC

LAW OFFICES
1420 Fifth Avenue, Suite 2800
Seattle, WA  98101-2347
TELEPHONE:  206.682.8100

1   The initial panel decision, however, was reheard *en banc*, in part because the panel's

2   decision conflicted with the holding in *Lewis Galoob Toys Inc. v. Nintendo of America Inc.*,

3   964 F.2d 965 (9th Cir. 1992).  In *Lewis Galoob*, the Court held that where the primary accused

4   infringer was not liable (because the use was a fair use), the accused contributory infringer

5   could not be liable for authorizing the accused primary use.

6   In *Subafilms*, when the issue was reheard *en banc*, the copyright holder Subafilms

7   argued that *Lewis Galoob* should be distinguished, because the alleged primary infringement

8   was outside the purview of § 106, whereas MGM had authorized conduct expressly prohibited

9   by § 106 (distribution copies), which was nevertheless uncognizable only because it occurred

10  outside the United States.  *Subafilms* argued that MGM's conduct would have been prohibited

11  by the copyright laws of virtually every country.  The court rejected this argument, noting that

12  the prohibition against extraterritorial application of copyright was supported by over 80 years

13  of jurisprudence, and Congress plainly did not intend to extend the reach of the Act in its

14  1976 amendments.  *See Subafilms*, 24 F.3d at 1095.

15  The *Subafilms* case appropriately focuses the inquiry for the present discovery dispute.

16  The facts of this case do not differ in any substantial way from the facts of *Subafilms*.  Since

17  Sierra unquestionably has the right to make and distribute copies of the Valve games (subject

18  to royalty), the only question is whether licensing of the Valve games to cybercafés can

19  infringe.  If use of the software by cybercafés is a tort, only torts occurring within the United

20  States are actionable.

> Because the copyright laws do not apply extraterritorially, each of the rights conferred under the five section 106 categories must be read as extending "no farther than the [United States'] borders" . . .  See, e.g., *Robert Stigwood*, 530 F.2d at 1101 (holding that no damages could be obtained under the Copyright Act for public performances in Canada when preliminary steps were taken within the United States and stating that "[t]he Canadian performances, while they may have been torts in Canada, were not torts here") . . . ."

*Subafilms*, 24 F.3d at 1094, emphasis added.

DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND MEMORANDUM OF LAW IN SUPPORT (CV02-1683) - 10
VIUP\2343PL11B.DOC

CHRISTENSEN O'CONNOR JOHNSON KINDNESS PLLC

LAW OFFICES
1420 Fifth Avenue, Suite 2800
Seattle, WA 98101-2347
TELEPHONE: 206.682.8100

1    In short, the words "to authorize" as used in 17 U.S.C. § 106 mean the authorization of

2  an infringing act *within the United States*.

3  **C.    The Burden and Expense Imposed By The Requested Discovery are Great and the Probative Value of the Requested Discovery is Nil**

4

5    In the present action for copyright infringement under U.S. law, Valve seeks

6  examination of witnesses located in the Far East, and an exhaustive document search.

7  (Roeder Decl. ¶ 7)  The information sought by Valve relates exclusively to Sierra's licensing

8  of cybercafés in foreign countries.  (Carlson Decl. ¶ 6; Roeder Decl. ¶¶ 2 and 9)  Regarding

9  the AMDG deposition, the areas of inquiry relate exclusively Sierra's distributor in the

10 Philippines and require production of a witness in Singapore.  (Roeder Decl. ¶ 9)  Valve

11 suggests that Sierra's domestic authorization of a cybercafé's use of the games overseas can be

12 an infringement of U.S. copyright.  Valve's position is untenable in view of *Subafilms*.

13    The present litigation claims only the infringement of U.S. copyright law; Valve has

14 not brought a cause of action for breach of the Software Publishing Agreement.   This

15 important distinction explains Sierra's position on discovery; *i.e.*, discovery relating to

16 licensing cybercafés outside of the United States has absolutely no bearing on Valve's cause

17 of action for copyright infringement brought under Title 17 of the United States Code.  The

18 facts underlying Sierra's dispute with Valve do not differ in any material way from the facts

19 underlying the *Subafilms* case; here as in *Subafilms*, the issue is the domestic authorization of

20 activity which cannot infringe U.S. copyright.  In view of the established Ninth Circuit

21 precedent in *Subafilms*, there can be no liability for the authorization of extraterritorial acts of

22 infringement, and Valve's requested discovery relating to overseas licensing is clearly

23 irrelevant to the present litigation.  In view of the immense financial and administrative

24 burden imposed by the requested discovery the Court should enter its order pursuant to Fed.

25 R. Civ. P. 26(c), limiting discovery to information relating to the licensing of cybercafés

26 located within the United States.

27

CHRISTENSEN
O'CONNOR
JOHNSON
KINDNESS*PLLC*

LAW OFFICES
1420 Fifth Avenue, Suite 2800
Seattle, WA 98101-2347
TELEPHONE:  206.682.8100

IV.   **CONCLUSION AND REQUEST FOR ORAL ARGUMENT**

For all the foregoing reasons, Sierra respectfully requests a protective order barring any discovery relating to Sierra's licensing of cybercafés outside the United States.   A proposed form of Order is attached.   In view of the relative importance the issue of extraterritoriality has on this litigation, counsel for Sierra respectfully requests oral argument.

Dated this 14th day of August, 2003

CHRISTENSEN O'CONNOR
JOHNSON KINDNESS<sup>PLLC</sup>

s/ Robert J. Carlson
Robert J. Carlson, WSBA No. 18,455
Attorneys for Sierra Entertainment, Inc.
1420 Fifth Avenue, Suite 2800
Seattle, WA  98101-2347
Phone:  206.682.8100
Fax:  206.224.0779
E-mail:  carlson@cojk.com

CHRISTENSEN
O'CONNOR
JOHNSON
KINDNESS<sup>PLLC</sup>

LAW OFFICES
1420 Fifth Avenue, Suite 2800
Seattle, WA  98101-2347
TELEPHONE  206.682.8100