Honorable Thomas S. Zilly
Set for Hearing August 29, 2003
No Oral Argument Requested



02-CV-01683-M

ORIGINAL

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VALVE, L.L.C., a Washington Limited Liability Company,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>SIERRA ENTERTAINMENT, INC. (AKA SIERRA ON-LINE, INC.), a Delaware Corporation,<br><br>　　　　　　　　　　　　Defendant. | No. C 02-1683Z<br><br>PLAINTIFF'S MOTION TO COMPEL DISCOVERY |

PLAINTIFF'S MOTION TO COMPEL
DISCOVERY

K:\36063\00014\KJB\KJB_P20G0

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## I.   RELIEF REQUESTED

Pursuant to Federal Rule of Civil Procedure 26 and 37, plaintiff Valve, L.L.C. ("Valve") moves to compel discovery from defendant Sierra Entertainment, Inc. ("Sierra").

## II.   INTRODUCTION

Sierra has wrongfully refused to provide requested discovery that is relevant to the claims and defenses at issue in this matter. In attempting to avoid discovery, Sierra essentially maintains that its licensing and distribution of Valve products to cybercafés outside the United States is shielded from discovery. Sierra is wrong. Such information is discoverable because it bears on the very defense that Sierra is attempting to assert. Further, Sierra's refusal to produce such documents and information is contrary to (1) an agreement that the parties reached in lieu of Valve bringing a motion to compel on this subject at the beginning of July and (2) information that Valve has found on its own that contradicts Sierra's foundational claim that its activities outside the United States are separate from its domestic activities. Valve has attempted to resolve this issue with Sierra over the past months (and ostensibly did so by the parties previous agreement), but, given Sierra's counsels' position that Sierra would not produce the requested discovery absent a court order, Valve has been forced to bring this motion to compel.

## III.   STATEMENT OF FACTS

A.   **The Underlying Dispute: Sierra's Infringement of Its Limited License to Publish Valve Products.**

Valve and Sierra Entertainment, Inc. ("Sierra") entered into a publication and licensing agreement (the "Agreement") on March 29, 2001 that granted Sierra[1] a limited scope of license to publish certain computer games made by Valve ("Valve Games"). See Declaration of Jason Holtman ("Holtman Decl."), ¶ 1. Valve's license to Sierra did not give it

---

[1] Sierra has been acting with and through its parent company and several of its affiliates in the implementation of the Agreement. Vivendi Universal is Sierra's parent, and Vivendi Universal Games and Havas Interactive have also been directly and extensively involved in the implementation of the Agreement and licensing activities both domestically and abroad. Valve has separately requested that Sierra stipulate to adding these parties.

PLAINTIFF'S MOTION TO COMPEL
DISCOVERY - 1

K:\36063\00014\KJB\KJB_P20G0

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  the right to license Valve games such as its popular title "Counter-Strike" for use in cyber
2  cafés.[2] *Id.*, ¶ 2. Cyber cafes are game playing centers that make available games such as
3  Counter-Strike for the purposes of in-store play by customers. Sierra's publication license
4  was expressly limited to retail distribution of the Valve Games as Retail Packaged Product,[3]
5  the best example of which would be the boxed software found for sale at retail distributors
6  such as Comp USA or Electronics Boutique or available for retail purchase online at
7  Amazon.com. *Id.*

8  Valve commenced this suit against Sierra on August 14, 2002, alleging that Sierra
9  committed copyright infringement in violation of 17 U.S.C. § 501 by acting outside the scope
10 of its license by reproducing, using, distributing, and/or licensing Valve Games to cybercafés
11 worldwide. *Id.*, ¶ 3; *see also* Complaint, ¶¶ 7-14.

**B.  The Discovery Dispute at Issue: Sierra's Refusal to Produce Documents Related to Its Activities Outside the United States**

**1.  Valve's First Set of Discovery Requests and Sierra's Objections Thereto**

On April 10, 2003 Valve served its First Set of Request for Production of Documents and its First Set of Interrogatories on Sierra. These discovery requests sought information and documents relating to Sierra's licensing of Valve Games to cybercafés. Holtman Decl. ¶ 5, Ex. 1.

---

[2] The relevant license grant for Counter-Strike reads: "Valve grants Sierra a worldwide, perpetual license to manufacture or cause to be manufactured, reproduce or cause to be reproduced, use, distribute (directly or indirectly), or have distributed, market, advertise, *publicly display and perform in connection with such marketing and advertising*, rent, lease and license such product and Foreign Translations thereof (developed by or for Valve) in object code form on an exclusive basis (even as to Valve and its Affiliates, but except as provided in Section 3.1.2) *solely as Retail Packaged Product.*" (Agreement §3.5) (emphasis added).

[3] "Retail Packaged Product" is defined in relevant part as "a version of a Product...that... (c) is distributed in packaging of the type typical of game software in the Retail Channel; and (d) is distributed in the Retail Channel." The Agreement defines the "Retail Channel" as "'brick and mortar' retail outlets; Internet retailers that carry any of electronics, software, games, toys and/or gifts, Internet auction sites; and all other channels now or during the term hereof commonly referred to in the retail trade as 'retail outlets' and distributors and resellers to such 'retail outlets.'"

PLAINTIFF'S MOTION TO COMPEL
DISCOVERY - 2

K:\36063\00014\KJB\KJB_P20G0

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Sierra mailed its written discovery responses to Valve on May 23, 2003,[4] but produced no documents whatsoever. Sierra asserted a blanket objection, claiming that "information concerning Valve products licensed, distributed or sold for use outside the United States" was "neither relevant nor reasonably calculated to lead to the discovery of admissible evidence," and that such information concerned "subject matter beyond the jurisdiction of this Court." Holtman Decl. ¶ 5, Exhibit 1 (Sierra's Responses to Plaintiff's First Set of Requests for Production and Plaintiff's First Set of Interrogatories). Over the next month, Valve attempted to engage Sierra in discussions regarding its blanket objection based on activity outside the United States and Sierra's failure to produce documents.[5]

On June 20, Sierra produced approximately 500 pages of documents to Valve. Counsel for the parties held a Rule 37 discovery conference on June 23, 2003. Holtman Decl., ¶ 7, Ex. 6 (June 20 letter from Bob Carlson to Jason Holtman). Although the parties could not reach agreement on whether the doctrine of "extraterritoriality" applied to the claims alleged in the lawsuit in the first place, Valve's counsel pointed out that even if it might, Valve would still be entitled to discovery on the issue. Holtman Decl., ¶ 7, Ex. 7 (June 23, 2003 letter from Jason Holtman to Bob Carlson). On June 25, Sierra's counsel admitted that Valve products had been distributed and licensed for installation in cyber cafes in foreign countries by Sierra. Holtman Decl., ¶ 8, Ex. 8 (June 25, 2003 letter from Bob Carlson to Jason Holtman). Although acknowledging the activity alleged in the complaint did in fact take place, Sierra maintained its position that such information and documents did not have to be produced to Valve. *Id.*

**2.    Valve is Forced to Prepare a Motion to Compel Due to Sierra's Continued**

---

[4] Sierra's responses to these discovery requests were originally due on May 12, 2003, but Valve agreed to extend Sierra's response deadline to May 23, 2003. Holtman Decl., ¶ 5.

[5] On May 30 and June 12, Valve requested a conference to discuss these matters. Holtman Decl., ¶ 6, Exs. 2 and 3 (May 30 and June 12, 2003 letters from Jason Holtman to Bob Carlson). Counsel exchanged further letters on this subject that are included here for reference. See Holtman Decl., ¶ 6 Exs. 4 and 5. (June 13 and June 16, 2003 letters from Jason Holtman to Bob Carlson).

PLAINTIFF'S MOTION TO COMPEL
DISCOVERY - 3

K:\36063\00014\KJB\KJB_P20G0

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

**Resistance to Providing Discovery**

On June 30, Valve informed Sierra that it would be moving the Court to compel production from Sierra. Holtman Decl. ¶ 9, Ex. 9 (June 30, 2003 letter from Jason Holtman to Bob Carlson). Particularly, Valve reminded Sierra that its affiliate, Vivendi Universal Games, conducted business out of its Washington and California offices and that *at a minimum* Valve would be entitled to full discovery regarding materials in Sierra's domestic and foreign offices "in order to investigate the extent that these United States offices were involved in licensing cyber cafés worldwide." *Id.* Notably, Valve pointed out that even in the minimal discovery produced by Sierra on June 20, there was evidence that Vivendi Universal Games' U.S. representatives took some role in licensing cyber cafés in the Asia/Pacific region. *Id.* (referencing SIERRA 00002-00003). Sierra did not respond to this letter.

In light of Sierra's non-responsiveness, on July 2, Valve brought to Sierra's attention an International Distributor Agreement dated November 1, 2002 between Vivendi Universal Games and Asia Media Development Group ("AMDG") that provided for the "sale" of Counter-Strike to AMDG at $2 per copy. Holtman Decl., ¶ 10, Ex. 10 (July 2 letter from Jason Holtman to Bob Carlson), Ex. 11 (Vivendi/AMDG International Distributor Agreement).[6] To Valve's knowledge and as advertised on AMDG's website, AMDG's primary line of business was licensing games to cyber cafes in the Philippines.[7] The Agreement required that AMDG take delivery of Valve games from California, specified that

---

[6] Originally, Valve had knowledge of the AMDG Agreement because it was posted on a website. After being confronted with the AMDG Agreement, Sierra produced a more legible copy. Holtman Decl., ¶ 10, Ex. 11. Given that the initial copies do not copy well, the more legible, later produced copies are included in the Holtman Decl.

[7] AMDG's website contained the following advertisement on its front page: "LICENSES: AMDG offers Commercial Site Licenses for Blizzard & Sierra Games! Network Gaming Centers may now enjoy playing Vivendi Universal Games legitimately. AMDG now offers a promotional Commercial Site Licenses STARTER PACK for Blizzard & Sierra award winning games. Included in this package are the new hit games "Warcraft III: Reign of Chaos" and the phenomenal "Half-Life: Counter Strike". Declaration of Dennis Tessier, ¶ 2-5.

PLAINTIFF'S MOTION TO COMPEL
DISCOVERY - 4

K:\36063\00014\KJB\KJB_P20G0

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

California law governed the contract, and required that any action be commenced in California. Holtman Decl., ¶ 10, Ex. 11, at § 17(e). For these reasons, Valve once again challenged Sierra's reliance on a discovery objection based on extraterritoriality.

3. **Sierra Agrees to Stop Raising Extraterritoriality as a Bar to Discovery and to Develop a Discovery Plan Accordingly in Exchange for Valve Not Bringing Its Motion to Compel**

On the morning of July 3, the day that Valve intended to bring its motion to compel, the parties once again held a CR 37 conference. During that conference, the parties discussed the fact that the AMDG Agreement demonstrated questionable distribution activity by Sierra of Valve products from the United States to a foreign agent (which held itself out as a licensing entity for cyber cafes). The results of the CR 37 conference were memorialized in a letter that afternoon, which stated that the parties had agreed "that Vivendi will not raise extraterritoriality as a bar to discovery and that Vivendi intends to produce documents related to cybercafé licensing worldwide." To that end, the parties also agreed to develop a discovery plan and to request an extension of time from this Court. Given this agreement, Valve did not bring its motion to compel.

On July 9, counsel for Sierra and Valve worked on a discovery plan that involved production of documents from the files of certain Vivendi Universal Games employees and Vivendi Universal country managers. Holtman Decl. ¶ 9. Valve also requested specific additional information regarding European and South American licensing. *Id.* At the end of this meeting it was agreed that the review and collection of domestic files would take place in the very near term and that the review and collection of foreign files might take additional time. *Id.*

4. **Sierra Reneges on Its Agreement and Forces Valve to Bring the Present Motion to Compel, Even Though Evidence of Sierra's Direct Involvement with Licensing Cyber Cafés Overseas Continues to Be Discovered Through Valve's Independent Investigation**

PLAINTIFF'S MOTION TO COMPEL
DISCOVERY - 5

K:\36063\00014\KJB\KJB_P20G0

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

In the middle of July, Valve was concerned that Sierra was delaying production and might continue to raise its previous extraterritoriality objection to producing documents (notwithstanding the agreement reached on July 3). On July 21, Valve provided Sierra additional evidence that its offices were involved with licensing Valve games to cyber cafés. In particular, Valve provided Sierra with a commercial license agreement offered by AMDG *in Vivendi Universal's name* to cyber cafés that states it "is deemed to have been *made and executed* in the State of California in the United States of America." (emphasis added) Holtman Decl., ¶ 13, Ex. 13 (July 21 letter from Jason Holtman to Bob Carlson). Valve also provided Sierra a scanned image from the front cover of a Counter-Strike jewel case obtained from the Philippines, which had a prominent sticker with "Sierra Entertainment" printed on it and stating that it was "for Philippine cyber café use only." *Id.* Valve also reminded Sierra that AMDG had advertised commercial site licenses for Valve products on its website. *Id.* Over the following weeks, Valve also brought to Sierra's attention additional evidence that Sierra's US offices were involved in providing Valve games to cybercafés.[8]

Because Valve had received no further production from Sierra as anticipated during the July 9 discovery planning conference, Valve asked to schedule a CR 37 conference for Wednesday, July 30. Holtman Decl., ¶ 15, Ex. 15 (July 30 emails). Sierra did not agree to a discovery conference on that day, but did claim that it would only "produce documents reflecting U.S. records of foreign licensing activity." *Id.* In response to Sierra's delay in

---

[8] On July 24, Valve received an email from Sierra in which Deanna Erickson, Vivendi's Asia Pacific Brand Coordination Manager, proposed a Counter-Strike baseball cap promotion in order to "benefit cafés who purchase the software [Counterstrike] from us [Vivendi]." Holtman Decl., ¶ 14, Ex. 14 (July 24, 2003 letter from Jason Holtman to Bob Carlson.) Valve informed Sierra that this demonstrated that Vivendi was actively and knowingly engaged in licensing and distributing Valve products to cyber cafés worldwide. *Id.* On July 31, Valve brought to Sierra's attention certain licensing activities of its German subsidiary, Vivendi Germany, in relation to a company known as Coinbox. Holtman Decl., ¶ 17, Ex. 17 (July 31 letter from Jason Holtman to Bob Carlson). Coinbox appeared to install Valve products on PC's for the purpose of licensing and using those PC's in cyber cafés. On August 11, Valve brought to Sierra's attention the activities of Vivendi Universal's agent Sendi Multiara Multimedia (SMM) in Malaysia, which appeared to be offering commercial site licenses for Counter-Strike. Holtman Decl., ¶ 23, Ex. 22 (August 11 letter from Jason Holtman to Bob Carlson).

PLAINTIFF'S MOTION TO COMPEL
DISCOVERY - 6

K:\36063\00014\KJB\KJB_P20G0

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  producing documents and apparent reassertion of extraterritoriality as a bar to discovery,
2  Valve requested an immediate discovery conference, to which Sierra did not respond. *Id.*
3  Sierra supplied a supplemental production of documents on August 4. Upon review of
4  the documents, Valve informed Sierra that the production failed to address any of the
5  discovery issues for which Valve had attempted to schedule CR 37 conferences. Holtman
6  Decl., ¶ 18, Ex. 18 (August 4 letters). Sierra agreed to a discovery conference on August 5.
7  *Id.* Sierra continued to insist that "although we disagree that this discovery is relevant or
8  likely to lead to the discovery of admissible evidence in this matter, we agreed with your
9  proposal to provide correspondence between U. S. offices and foreign offices concerning
10  licensing of foreign cybercafés." *Id.*

### 5. The August 5 Discovery Conference

The parties held a CR 37 conference on August 5. In that conference they discussed and disagreed about the applicability of the extraterritoriality doctrine as a bar to discovery. Counsel for Sierra informed Valve that Valve would have to bring a motion to compel if it wanted discovery related to Vivendi's activities overseas. Holtman Decl., ¶ 19.

Shortly after the CR 37 conference, counsel for Valve forwarded to counsel for Sierra multiple other licensing documents implicating Vivendi's direct participation in distributing and licensing Valve products to cyber cafés overseas that had been discovered in the Philippines.[9] On August 8, Valve once again wrote to Sierra asking that it abide by the July 3 agreement and cease raising extraterritoriality as a bar to discovery, noting that the additional

---

[9] The evidence included, among other items, (1) a power of attorney granted by Vivendi Universal Games to AMDG; (2) a "threat letter" from AMDG to a cyber café dated May 8, 2003 (which included Sierra's name and trademark on the letterhead) that referenced Counter-Strike and stated the cyber café must "secure the required Commercial Site Licenses" through AMDG, pointing out that "AMDG is the exclusive distributor of Commercial Site License for Vivendi Universal Games in the Philippines"; and (3) an official report from the Philippine House of Representatives in which AMDG had testified that it had a "special power of attorney (SPA) given by Sierra and Blizzard as well as Vivendi. . ., [that] AMDG is the exclusive distributor of popular computer games like "Counter-Strike". . .[and] that without the license [which AMDG offers], internet cafes violate the intellectual property rights of licensed software developers." Holtman Decl., ¶ 21, Ex. 20.

PLAINTIFF'S MOTION TO COMPEL
DISCOVERY - 7

K:\36063\00014\KJB\KJB_P20G0

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

evidence that made Sierra's claims of extraterritoriality even less tenable. Valve also requested a final CR 37 conference for Monday, August 11. Holtman Decl., ¶ 22, Ex. 21 (August 8 letter from Jason Holtman to Bob Carlson).

### 6. The August 11 Discovery Conference

In a final attempt to stave off a motion to compel and obtain Sierra's cooperation, Valve held a CR 37 conference on August 11. During the conference, Valve directed Sierra to the copious evidence that Valve had discovered *on its own* which cut against Sierra's claim that extraterritoriality barred discovery. Holtman Decl., ¶ 24. Sierra's counsel, however, maintained that Sierra would not produce any documents from its foreign offices because the copyright laws of the United States did not apply, and that Sierra would not undertake to collect or review documents from foreign subsidiaries or affiliates *even if such documents reflected communications/dealings with Sierra's domestic affiliates* because such documents were in foreign jurisdictions and were therefore not discoverable or relevant to this case. *Id.* Sierra's counsel also denied that there had been a previous agreement between the parties that would allow such discovery.[10] Sierra maintained that it would not undertake any such discovery absent a court order. *Id.*

## IV. ARGUMENT

### A. Valve Is Entitled to the Requested Discovery Concerning Sierra's Worldwide Licensing of Valve Products to Cybercafes.

The documents and information requested in Valve's Interrogatories and RFPs are relevant the claims and defenses in this matter and are therefore discoverable. FED. R. CIV. P.

---

[10] The July 3 letter has the wrong date ("July 2") due to a scrivener's error. The letter was drafted and sent after the CR 37 conference on the morning of July 3. Holtman Decl., ¶ 11, Ex. 12 (July 3 email from Jason Holtman to Bob Carlson). During the CR 37 conference held on August 5, Mr. Carlson claimed that he had never received this letter. Subsequent to that conference, Mr. Holtman forwarded the July 3 letter with its attachments to Mr. Carlson for review with the original e-mail. Holtman Decl., ¶ 20, Ex. 19 (August 5 email from Jason Holtman to Bob Carlson). At the parties' last CR 37 conference, held on August 11, Bob Carlson claimed that he had never read the July 3 letter, nor had he ever agreed to it. He did, however, execute and file the Stipulated Order that was attached in the same email as the July 3 letter. Notably, the authority for Mr. Carlson to sign the Stipulated Order on behalf of Mr. Holtman was contained in the last paragraph of the July 3 letter.

PLAINTIFF'S MOTION TO COMPEL
DISCOVERY - 8

K:\36063\00014\KJB\KJB_P20G0

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

26(b), 34(a).[11] As outlined above, Valve's discovery requests seek information and documents relating to licensing activity under the Agreement, revenues derived from this activity, the provision of end-user license agreements, and the identity and communications of the individuals involved in the activity, including employees and agents. Holtman Decl., ¶ 4. This material bears directly on Valve's claim that Sierra acted outside the scope of its license. "A request for discovery should be considered relevant if there is *any possibility* that the information sought may be relevant to the subject matter of [the] action." Paulsen, 168 F.R.D. at 288 (emphasis added); see also Miller v. Pancucci, 141 F.R.D. 292, 296 (C.D.Cal. 1992) (holding that discovery should be allowed "unless the information sought has no conceivable bearing on the case."). The discovery sought by Valve easily meets this standard. The documents requested by Valve attempt to "define and clarify the issues" related to the claim that Sierra acted outside the scope of its license as well as facts related to Vivendi's extraterritoriality defense. Soto v. City of Concord, 162 F.R.D. 603, 610 (N.D.Cal. 1995). Valve, therefore, requests the court's assistance in order to define and clarify its claim against Sierra, and, if necessary, align its complaint and argument accordingly.

In refusing to provide discovery, Sierra argues that United States courts do not have jurisdiction over the copyright action as plead by Valve. This is simply not true. In fact, courts have regularly recognized jurisdiction over foreign acts in copyright cases where there is an act of infringement or predicate act leading to infringement that occurred in the United States. Los Angeles News Service v. Reuters Television International, Ltd., 149 F.3d 987, 992 (9th Cir. 1998) (finding that parties are "entitled to recover damages flowing from

---

[11] Wide access to discovery "serves the integrity and fairness of the judicial process by promoting the search for the truth." Epstein v. MCA, Inc., 54 F.3d 1422, 1423 (9th Cir. 1993). Rule 26 is to be "liberally interpreted" so that the parties may obtain all of the evidence necessary "to evaluate and resolve their dispute," Paulsen v. Case Corporation, 168 F.R.D. 285, 287 (CD.Cal. 1996). Allowing discovery is fundamental to the operation of the judicial system: "The need to develop all relevant facts in the adversary system is both fundamental and comprehensive... The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence." Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 70 (2nd Cir. 1988), quoting, Taylor v. Illinois, 484 US 400, 408-09 (1988).

PLAINTIFF'S MOTION TO COMPEL
DISCOVERY - 9

K:\36063\00014\KJB\KJB_P20G0

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

exploitation abroad of…domestic acts of infringement"). Contrary to Sierra's assertions, the requested discovery is allowable. Notably, Sierra's discovery objection, which is based on a misapplication of Subafilms, Ltd. v. MGM-Pathe Communications Co., 24 F.3d 1088 (9th Cir. 1994) (discussed below), amount to a *per se* rule against discovery regarding foreign activities in copyright cases. There is no such rule. Indeed, in Aalmuhammed v. Lee, 202 F.3d 1227, 1238 (9th Cir. 2000), the court reversed a dismissal based on extraterritoriality because it could not determine whether the actions occurred in the Untied States or in a foreign country: "We cannot tell from the complaint whether foreign distributors do their work in foreign countries, or do it by fax, phone, and email from California." Presumably the parties would have to undertake discovery to resolve this question. Similarly here, Valve needs discovery into Sierra's worldwide implementation of the Agreement in order to prove that Sierra is directing and participating in the infringing activity.

Sierra's analysis of the application and holding of Subafilms as a bar to discovery is wrong in any event. The extraterritoriality doctrine analyzed in Subafilms only applies to a situation in which a party only alleges only "mere authorization" of a foreign entity by a domestic party as a means of alleging that the domestic party is a contributory infringer. Subafilms, 24 F.3d at 1095. Valve's complaint does not allege "mere authorization" or contributory infringement on the part of Sierra. Rather, Valve alleges direct acts of copyright infringement. Subafilms' narrow holding therefore does not apply to this case. Los Angeles News Service, 149 F.3d at 991 (distinguishing Subafilms in finding that a predicate infringing act in the United States is sufficient to recover for foreign infringing acts).

In the face of Sierra's refusal to provide documents not physically present in the United States, Valve has continued to try on its own to identify materials relating to Sierra's activities beyond the scope of its license. Valve has brought many such examples to Sierra's attention. These documents and others (like the "fax, phone, and email from California" that were at issue in Aalmuhammed) demonstrate the need for discovery so that Valve is able to

PLAINTIFF'S MOTION TO COMPEL
DISCOVERY - 10

K:\36063\00014\KJB\KJB_P20G0

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

both "define and clarify" its infringement claim and challenge Sierra's extraterritoriality defense.

**B.  Materials Located in the Foreign Offices of Vivendi's Affiliates, Subsidiaries, or Divisions are Subject to Discovery.**

Sierra has also taken the position that it will not produce documents from its foreign affiliates because such documents are beyond the jurisdiction of the court. This is contrary to the law. Documents in Sierra and its affiliates' foreign offices are within the custody and control[12] of Sierra, and as such are discoverable under the federal rules. Addamax Corp. v. Open Software Foundation, Inc., 148 F.R.D. 462, 468 (D.Mass. 1993). Courts have rejected the position that Sierra has taken: "Defendant has objected to searching for documents in the hands of its foreign subsidiaries. This position is, as a general matter, not valid." In re Richardson-Merrell, Inc., 97 F.R.D. 481, 483 (S.D.Ohio 1983) (compelling discovery of all documents responsive to plaintiff's requests that are in the care, custody or control of the company's foreign subsidiaries). In fact, even if a foreign subsidiary is not a party to the litigation that does not "shield discoverable documents in their possession from production." Id. Indeed, parties have been sanctioned in copyright cases for failing to produce discovery that involves materials located in other jurisdictions. Update Art, Inc. v. Modiin Publishing, Ltd., 843 F.2d 67, 73 (2nd Cir. 1988).

The authority to compel production of documents in foreign jurisdictions prevents just the type of conduct in which Sierra has begun to engage. In Jee v. Hanil Bank, Ltd., the court stated that discovery of documents located in Korea was necessary to "curb the bandying by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of the facts that are clearly known to the persons within the organization" and to

---

[12] "'Control' under FRCP 34 is to be broadly construed so that party may be obligated to produce documents requested even though party may not actually possess documents; as long as party has legal right or ability to obtain documents from another source on demand, that party is deemed to have 'control.'" Poole v. Textron, Inc., 192 F.R.D. 494, 501 (D.C.Md. 2000).

PLAINTIFF'S MOTION TO COMPEL
DISCOVERY - 11

K:\36063\00014\KJB\KJB_P20G0

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

prevent documents from being "moved from one branch to another in an attempt to avoid jurisdiction." 104 B.R. 289, 294 (B.C.D.Cal. 1989) (finding that even a nonparty must produce documents located in foreign offices). Notably, this authority exists even when the documents would not be discoverable in the foreign jurisdiction. "The fact that the documents are located in a country where their discovery would be illegal does not mean that a United States Court is without the authority to compel the production of subpoenaed documents." Jee, at 295. Hence, Sierra has no basis on which to claim the documents of its foreign subsidiary or affiliate are beyond the scope of discovery.

## V. CONCLUSION

For the foregoing reasons, the Court should compel Sierra to produce the documents and information requested by Valve. Furthermore, pursuant to Fed R. Civ. P. 37(a)(4), Valve should be awarded its reasonable expenses in making this motion, including attorney's fees. A proposed order is filed herewith.

Undersigned certifies that counsel for Valve has in good faith conferred or attempted to confer with counsel for Sierra in an effort to obtain the relief requested herein without court action.

DATED this 14th day of August, 2003.

PRESTON GATES & ELLIS LLP

By _____
Karl J. Quackenbush, WSBA #9602
Jason P. Holtman, WSBA # 28233
Attorneys for Plaintiff
Valve, LLC

PLAINTIFF'S MOTION TO COMPEL
DISCOVERY - 12

K:\36063\00014\KJB\KJB_P20G0

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE (206) 623-7022