Honorable Thomas S. Zilly
**Set for Hearing August 29, 2003**

02-CV-01683-DECL

ORIGINAL

FILED LODGED ENTERED RECEIVED
AUG 14 2003 MR
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VALVE, L.L.C., a Washington Limited Liability Company,<br><br>                         Plaintiff,<br><br>v.<br><br>SIERRA ENTERTAINMENT, INC. (AKA SIERRA ON-LINE, INC.), a Delaware Corporation,<br><br>                         Defendant. | No. C 02-1683Z<br><br>DECLARATION OF JASON HOLTMAN IN SUPPORT OF VALVE'S MOTION TO COMPEL DISCOVERY |

I have appeared as an attorney for Valve L.L.C. in the above-entitled action. I am over the age of eighteen years and I am competent to make this declaration. I make this declaration based on my own personal knowledge.

1.    Valve, L.L.C. ("Valve") and Sierra Entertainment, Inc. ("Sierra") entered into a Software Publishing Agreement ("Agreement") on March 29, 2001. The Agreement granted Sierra a limited scope of license to publish certain computer games made by Valve ("Valve Games").

2.    Valve's license to Sierra did not give it the right to license Valve games such as its popular title "Counter-Strike" for use in cybercafés. Sierra's publication license was

HOLTMAN DECLARATION - 1

K:\36063\00014\JPH\JPH_P2208

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

expressly limited to retail distribution of the Valve Games as Retail Packaged Product, such as the boxed software found at such retail distributors as Comp USA or Electronics Boutique or available for retail purchase online at Amazon.com.

3. Valve commenced this suit against Sierra on August 14, 2002, alleging that Sierra committed copyright infringement in violation of 17 U.S.C. § 501 by reproducing, using, distributing, and/or licensing Valve Games to cybercafés worldwide.

4. On April 10, 2003, Valve served its First Set of Requests for Production of Documents and its First Set of Interrogatories on Sierra. These discovery requests sought information and documents relating to Sierra's licensing of the Valve Games to cybercafés, the individuals involved in licensing, and royalty payments due to Valve. These included:

> **Interrogatory No. 1**: Identify current and former Sierra employees that are responsible for or involved in the licensing, distribution or sale of Valve products to Cyber cafés, and identify whether such persons are employed by Sierra;
>
> **Interrogatory No. 2**: Identify all existing licenses between Sierra or its Licensing Agents and Cyber cafés;
>
> **Interrogatory No. 3**: Identify all revenue received by Sierra for the license, distribution or sale of products to Cyber cafés in which a Valve product was included;
>
> **Interrogatory No. 5**: Identify all current and former Licensing Agents authorized by Sierra to license Valve products to Cyber cafés;
>
> **Request for Production No. 1**: Any documents that refer or relate to the license, distribution or sale of Valve products to Cyber cafés by Sierra or its Licensing Agents;
>
> **Request for Production No. 2**: Any documents that refer or relate to any revenues received by Sierra with regard to the license, distribution or sale of Valve products to Cyber cafés by Sierra or its Licensing Agents;
>
> **Request for Production No. 5**: Any documents that refer or relate to agreements or contracts between Sierra and its Licensing Agents for the license, distribution or sale of Valve products to Cyber cafés;
>
> **Request for Production No. 6**: Any documents that refer or relate to end-user license agreements provided to Cyber cafés for Valve products by either Sierra or its Licensing Agents;
>
> **Request for Production No. 7**: Any documents that refer or relate to payments to Sierra from its Licensing Agents for the license, distribution or sale of Valve products to Cyber cafés.

HOLTMAN DECLARATION - 2

K:\36063\00014\JPH\JPH_P2208

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

5. Sierra mailed its written discovery responses to Valve on May 23, but produced no documents whatsoever. Sierra's responses to these discovery requests were originally due on May 12, but Valve agreed to extend Sierra's response deadline to May 23. Sierra asserted a blanket objection, claiming that "information concerning Valve products licensed, distributed or sold for use outside the United States" was "neither relevant nor reasonably calculated to lead to the discovery of admissible evidence," and that such information concerned "subject matter beyond the jurisdiction of this Court." Attached as Exhibit 1 is a true and correct copy of Sierra's Responses to Plaintiff's First Set of Interrogatories to Defendant and Plaintiff's First Set of Requests for Production of Documents to Defendant.

6. Over the next month, Valve attempted to engage Sierra in discussions regarding its blanket objection based on activity outside the United States and Sierra's failure to produce documents. On May 30 and June 12, Valve requested a conference to discuss these matters. Valve sent additional letters on this subject on June 13 and June 16. Attached as Exhibit 2 is a true and correct copy of Jason Holtman's May 30, 2003 letter to Bob Carlson. Attached as Exhibit 3 is a true and correct copy of Jason Holtman's June 12, 2003 letter to Bob Carlson. Attached as Exhibit 4 is a true and correct copy of Jason Holtman's June 13, 2003 letter to Bob Carlson. Attached as Exhibit 5 is a true and correct copy of Jason Holtman's June 16, 2003 letter to Bob Carlson.

7. On June 20, Sierra produced approximately 500 pages of documents to Valve. Counsel for the parties held a Rule 37 discovery conference on June 23. Although the parties could not reach agreement on whether the doctrine of "extraterritoriality" applied to the claims alleged in the lawsuit in the first place, Valve's counsel pointed out that even if it might, Valve would still be entitled to discovery on the issue. Attached as Exhibit 6 is a true

HOLTMAN DECLARATION - 3

K:\36063\00014\JPH\JPH_P2208

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE: (206) 623-7022

and correct copy of Bob Carlson's June 20, 2003 letter to Jason Holtman. Attached as Exhibit 7 is a true and correct copy of Jason Holtman's June 23, 2003 letter to Bob Carlson.

8. On June 25, Sierra's counsel admitted that Valve products had been distributed and licensed for installation in cyber cafes in foreign countries by Sierra. Although acknowledging the activity alleged in the complaint did in fact take place, Sierra maintained its position that such information and documents did not have to be produced to Valve. Attached as Exhibit 8 is a true and correct copy of Bob Carlson's June 25, 2003 letter to Jason Holtman.

9. On June 30, Valve informed Sierra that it would be moving the Court to compel production from Sierra. Particularly, Valve reminded Sierra that Vivendi Universal Games conducted business out of its Washington and California offices and that *at a minimum* Valve would be entitled to full discovery regarding materials in Sierra's domestic and foreign offices "in order to investigate the extent that these United States offices were involved in licensing cyber cafés worldwide." Even in the minimal discovery produced by Sierra on June 20, there was evidence that Vivendi Universal Games' U.S. representatives took some role in licensing cyber cafés in the Asia/Pacific region (specifically SIERRA 00002-00003). Attached as Exhibit 9 is a true and correct copy of Jason Holtman's June 30, 2003 letter to Bob Carlson.

10. On July 2, Valve provided Sierra with an International Distributor Agreement dated November 1, 2002 between Vivendi Universal Games and Asia Media Development Group ("AMDG") that provided for the "sale" of Counter-Strike to AMDG at $2 per copy. To Valve's knowledge and as advertised on AMDG's website, AMDG's primary line of business was licensing games to cyber cafes in the Philippines. The Agreement required that AMDG take delivery of Valve games from California, specified that California law governed the contract, and required that any action be commenced in California. Consequently, Valve once again challenged Sierra's reliance on a discovery objection based on extraterritoriality.

HOLTMAN DECLARATION - 4

K:\36063\00014\JPH\JPH_P2208

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE (206) 623-7022

Attached as Exhibit 10 is a true and correct copy of Jason Holtman's July 2, 2003 letter to Bob Carlson. Attached as Exhibit 11 is a true and correct copy of the International Distributor Agreements dated November 1, 2002 between Vivendi Universal Games and Asia Media Development Group (SIERRA 000531-564).

11. On the morning of July 3, the day that Valve intended to bring its motion to compel, the parties once again held a CR 37 conference. During that conference, the parties discussed the fact that the AMDG Agreement demonstrated questionable distribution activity by Sierra of Valve products from the United States to a foreign agent that held itself out as a licensing entity for cyber cafes. The results of the CR 37 conference were memorialized in a letter that afternoon, which stated that the parties had agreed "that Vivendi will not raise extraterritoriality as a bar to discovery and that Vivendi intends to produce documents related to cybercafé licensing worldwide." To that end, the parties also agreed to develop a discovery plan and to request an extension of time from this Court. Given this agreement, Valve did not bring its motion to compel. Attached as Exhibit 12 is a true and correct copy of Jason Holtman's July 3, 2003 email to Bob Carlson (Email contains July 3, 2003 letter as an attachment, along with the Stipulated Order.)

12. On July 9, counsel for Sierra and Valve worked on a discovery plan that involved production of documents from the files of certain Vivendi Universal Games employees and Vivendi Universal country managers. Valve also requested specific additional information regarding European and South American licensing. At the end of this meeting it was agreed that the review and collection of domestic files would take place in the very near term and that the review and collection of foreign files might take additional time.

13. On July 21, Valve provided Sierra additional evidence that its offices were involved with licensing Valve games to cyber cafés. In particular, Valve provided Sierra with a commercial license agreement offered by AMDG *in Vivendi Universal's name* to cyber cafés that states it "is deemed to have been *made and executed* in the State of California in the

HOLTMAN DECLARATION - 5

K:\36063\00014\JPH\JPH_P2208

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

United States of America." Valve also provided Sierra a scanned image from the front cover of a Counter-Strike jewel case obtained from the Philippines, which had a prominent sticker with "Sierra Entertainment" printed on it and stating that it was "for Philippine cyber café use only." Valve also reminded Sierra that AMDG had advertised commercial site licenses for Valve products on its website. Attached as Exhibit 13 is a true and correct copy of Jason Holtman's July 21, 2003 letter to Bob Carlson.

14. On July 24, Valve received an email from Sierra in which Deanna Erickson, Vivendi's Asia Pacific Brand Coordination Manager, proposed a Counter-Strike baseball cap promotion in order to "benefit cafés who purchase the software [Counterstrike] from us [Vivendi]." Valve informed Sierra that this demonstrated that Vivendi was actively and knowingly engaged in licensing and distributing Valve products to cyber cafés worldwide. Sierra did not respond. Attached as Exhibit 14 is a true and correct copy of Jason Holtman's July 24, 2003 letter to Bob Carlson.

15. Because Valve had received no further production from Sierra as anticipated during the July 9 discovery planning conference, Valve asked to schedule a CR 37 conference for Wednesday, July 30. Sierra did not agree to a discovery conference on that day, but did claim that it would only "produce documents reflecting U.S. records of foreign licensing activity." In response to Sierra's delay in producing documents and apparent reassertion of extraterritoriality as a bar to discovery, Valve requested an immediate discovery conference, to which Sierra did not respond. Attached as Exhibit 15 is a true and correct copy of email communications between Bob Carlson and Jason Holtman on July 30, 2003.

16. On July 30, Sierra delivered its supplemental production, and reaffirmed that it did not collect any documents from its foreign offices. Attached as Exhibit 16 is a true and correct copy of Bob Carlson's July 30, 2003 letter to Jason Holtman.

17. On July 31, Valve brought to Sierra's attention certain licensing activities of its German subsidiary, Vivendi Germany, in relation to a company known as Coinbox. Coinbox

HOLTMAN DECLARATION - 6

K:\36063\00014\JPH\JPH_P2208

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

appeared to install Valve products on PC's for the purpose of licensing and using those PC's in cybercafés. Attached as Exhibit 17 is a true and correct copy of Jason Holtman's July 31, 2003 letter to Bob Carlson.

18. Sierra supplied a supplemental production of documents on August 4. Upon review of the documents, Valve informed Sierra that the production failed to address any of the discovery issues for which Valve had attempted to schedule CR 37 conferences. Sierra agreed to a discovery conference on August 5. Sierra continued to insist that "although we disagree that this discovery is relevant or likely to lead to the discovery of admissible evidence in this matter, we agreed with your proposal to provide correspondence between U. S. offices and foreign offices concerning licensing of foreign cybercafés." Attached as Exhibit 18 are true and correct copies of four letters sent between Bob Carlson and Jason Holtman on August 4, 2003.

19. The parties held a CR 37 conference on August 5. In that conference they discussed and disagreed about the applicability of the extraterritoriality doctrine as a bar to discovery. Counsel for Sierra informed Valve that Valve would have to bring a motion to compel if it wanted discovery related to Vivendi's activities overseas.

20. During the August 5 CR 37 conference, Bob Carlson claimed that he never received the July 3 letter that memorialized our previous agreement. Soon after that conference, I forwarded the July 3 letter with its attachments to Bob Carlson for review with the original e-mail. At the parties' last CR 37 conference, held on August 11, Bob Carlson claimed that he had never read this letter, nor had he ever agreed to it. He did, however, execute and file the Stipulated Order that was attached in the same email. Authority for Mr. Carlson to sign the stipulated order on my behalf was set forth in the July 3 letter. Attached as Exhibit 19 is a true and correct copy of Jason Holtman's August 5, 2003 email to Bob Carlson.

HOLTMAN DECLARATION - 7

K:\36063\00014\JPH\JPH_P2208

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

21. On August 5, 2003, after the CR 37 conference, counsel for Valve forwarded to counsel for Sierra the multiple other licensing documents implicating Vivendi's direct participation in distributing and licensing Valve products to cyber cafés overseas that had been discovered in the Philippines. The evidence included, among other items, (1) a power of attorney granted by Vivendi Universal Games to AMDG; (2) a "threat letter" from AMDG to a cyber café dated May 8, 2003 (which included Sierra's name and trademark on the letterhead) that referenced Counter-Strike and stated the cyber café must "secure the required Commercial Site Licenses" through AMDG, pointing out that "AMDG is the exclusive distributor of Commercial Site License for Vivendi Universal Games in the Philippines"; and (3) an official report from the Philippine House of Representatives in which AMDG had testified that it had a "special power of attorney (SPA) given by Sierra and Blizzard as well as Vivendi. . ., [that] AMDG is the exclusive distributor of popular computer games like "Counter-Strike". . .[and] that without the license [which AMDG offers], internet cafes violate the intellectual property rights of licensed software developers." Attached as Exhibit 20 is a true and correct copy of Jason Holtman's August 5, 2003 letter to Bob Carlson and attachments.

22. On August 8, Valve once again wrote to Sierra asking that it abide by the July 3 agreement to cease raising extraterritoriality as a bar to discovery, and noted the additional evidence that made Sierra's claims of extraterritoriality even less tenable. Valve also requested a final CR 37 conference for Monday, August 11. Attached as Exhibit 21 is a true and correct copy of Jason Holtman's August 8, 2003 letter to Bob Carlson.

23. On August 11, Valve brought to Sierra's attention the activities of Vivendi Universal's agent Sendi Multiara Multimedia (SMM) in Malaysia, which appeared to be offering commercial site licenses for Counter-Strike. Sierra did not respond. Attached as Exhibit 22 is a true and correct copy of Jason Holtman's August 11, 2003 email to Bob Carlson.

HOLTMAN DECLARATION - 8

K:\36063\00014\JPH\JPH_P2208

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

24. In a final attempt to stave off a motion to compel and obtain Sierra's cooperation, Valve held a CR 37 conference on August 11. During the conference, I directed Mr. Carlson to the copious evidence that Valve had discovered *on its own* which cut against Sierra's claim that extraterritoriality barred discovery altogether. Sierra's counsel, however, maintained that Sierra would not produce any documents from its foreign offices because the copyright laws of the United States did not apply, and that Sierra would not undertake to collect or review documents from foreign subsidiaries or affiliates *even if such documents reflected communications/dealings with Sierra's domestic affiliates* because such those documents were in foreign jurisdictions and were therefore not discoverable or relevant to this case. Sierra's counsel also denied that there had been a previous agreement that would allow such discovery. Sierra maintained that it would not undertake any such discovery absent a court order.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct:

EXECUTED this 14th day of August, 2003 at Seattle, WA.

Jason P. Holtman

HOLTMAN DECLARATION - 9

K:\36063\00014\JPH\JPH_P2208

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022