Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| VALVE, L.L.C., a Washington limited liability company,<br><br>                  Plaintiff,<br><br>                  v.<br><br>SIERRA ENTERTAINMENT, INC., (aka SIERRA ON-LINE, INC.),<br><br>                  Defendant. | No. CV02-1683<br><br>SIERRA'S RESPONSE BRIEF IN OPPOSITION TO VALVE'S MOTION TO COMPEL<br><br>**NOTE ON MOTION CALENDAR:** August 29, 2003 |

## I. INTRODUCTION

The Defendant, Sierra Entertainment, Inc. ("Sierra") hereby opposes Plaintiff Valve, L.L.C.'s ("Valve") Motion to Compel. The requested discovery would unnecessarily escalate costs and immensely complicate this case. Valve's Motion seeks an exhaustive production and reporting regarding not only Sierra's acts overseas but the overseas acts of Sierra's parent company, Vivendi Universal Games ("VUG"). The requested discovery should be limited because Valve's Complaint is so clearly limited to violations of U.S. copyright law. In Valve's Complaint for U.S. copyright infringement, Sierra is alleged to have acted outside of the scope of its license for certain copyrights owned by Valve. (Complaint ¶ 8) Valve's Complaint contains no allegation that Sierra breached its license agreement nor does Valve allege that Sierra infringed foreign copyrights owned by Valve. Valve's Complaint begins and ends with allegations of U.S. copyright infringement. Valve cannot show that Sierra, in

SIERRA'S RESPONSE BRIEF IN OPPOSITION
TO VALVE'S MOTION TO COMPEL
(CV02-1683) - 1
VIUP\2343PL16.DOC

CHRISTENSEN
O'CONNOR
JOHNSON
KINDNESS^PLLC

LAW OFFICES
1420 Fifth Avenue, Suite 2800
Seattle, WA 98101-2347
TELEPHONE: 206.682.8100

conducting its *overseas* licensing activities, committed one *domestic* act of infringement. Sierra's activities within the United States, such as the replication of software and the authorization for use of said software overseas by cybercafés, cannot amount to U.S. copyright infringement. There is no legitimate dispute that Sierra's replication of software within the U.S. is licensed, nor is there legitimate dispute that Sierra merely authorizes the use of software by cybercafés. Accordingly, Valve's Motion to Compel should be denied in its entirety and the Court should grant Sierra's Motion for a Protective Order, limiting discovery in this case to Sierra's U.S. cybercafés.

## II. VALVE'S ARGUMENTS AND CONTENTIONS

Valve's Motion to Compel makes the following arguments and contentions:

- Valve's primary position is that the requested discovery "attempt[s] to 'define and clarify the issues' related to the claim that Sierra acted outside of the scope of its license. . . ." (Valve's Motion at p. 9.) In support of this position, Valve cites the case, *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). As explained *infra*, Valve's position carries little weight because "the issues" in this case have nothing to do with Sierra's foreign activities and as such, the requested discovery has no ability to "define or clarify."

- Valve argues that the requested discovery "bears on the very defense that Sierra is attempting to assert [*i.e.,* extraterritoriality]." (Valve's Motion pp. 1 and 8) Valve's reasoning is flawed. Sierra's position on discovery is <u>lack of relevance</u> *due to* extraterritoriality. Sierra's <u>defense</u> is non-infringement of U.S. copyright law. Sierra's defense does not require documents or information relating to foreign activities. Such activities are simply not relevant, and Sierra merely objects to Valve's discovery based on lack of relevance. Further, the discovery is overly burdensome and the probative value is nil.

- Valve incorrectly alleges a prior agreement of counsel regarding discovery. (Valve's Motion pp. 1 and 5-7) Counsel's memory of the agreement is incorrect

SIERRA'S RESPONSE BRIEF IN OPPOSITION
TO VALVE'S MOTION TO COMPEL
(CV02-1683) - 2
VIUP\2343PL16.DOC

CHRISTENSEN
O'CONNOR
JOHNSON
KINDNESS<sup>PLLC</sup>

LAW OFFICES
1420 Fifth Avenue, Suite 2800
Seattle, WA 98101-2347
TELEPHONE: 206.682.8100

and it is based on a "confirming letter" sent just before the Independence Day holiday, in the afternoon of July 3, 2003. Regardless, whatever agreement Valve's counsel thought it had reached regarding discovery, the fact remains that the requested discovery places an incredible burden on Sierra and Sierra simply cannot agree (and therefore did not agree) to undertake global document collection and witness preparation/interviewing. The foregoing is Sierra's position now and has always been Sierra's position, regardless of any alleged earlier "agreement."

- Valve incredulously accuses Sierra and Sierra's counsel of bad faith and failing to cooperate regarding the overseas licensing activities of distributors for VUG located in the Philippines ("AMDG"), Europe ("CoinBox"), and Singapore ("iGames Asia"). (Valve's Motion pp. 6 and 7, notes 8 and 9) Valve's accusations of "bad faith" originate from Valve's surreptitious investigation of VUG's overseas distributors for Sierra games – or more accurately, *the customers* of VUG's overseas distributors. As explained below, the Sierra/VUG network of overseas licensing companies, distributors, and customers is extremely complex. As a practical matter, Sierra relies on VUG, and its distributors in certain circumstances to enforce Sierra's rights regarding software licensing. Thus, Valve's surreptitious investigations of individual cybercafés abroad amount to a veritable "tempest in a teapot" unworthy of note.

- Valve refuses to recognize the controlling nature of *Subafilms Ltd. v. MGM-Pathe Comm. Co.*, 24 F.3d 1088 (9th Cir. 1994), and spuriously argues that this case applies only to alleged acts of contributory infringement. (Valve's Motion at p. 10.) Furthermore, Valve's discussion of *Subafilms* sets up a straw man by mischaracterizing Sierra's position ("[Sierra argues] a *per se* rule against discovery regarding foreign activities in copyright cases. There is no such Rule." Valve's Motion at p. 10.) Of course, Sierra does not argue that a "*per se* rule" was

SIERRA'S RESPONSE BRIEF IN OPPOSITION
TO VALVE'S MOTION TO COMPEL
(CV02-1683) - 3
VIUP\2343PL16.DOC

CHRISTENSEN
O'CONNOR
JOHNSON
KINDNESS^{PLLC}

LAW OFFICES
1420 Fifth Avenue, Suite 2800
Seattle, WA 98101-2347
TELEPHONE: 206.682.8100

established in *Subafilms*. Indeed, Sierra has agreed to produce all foreign documents relating to U.S. licensing activities.

- Continuing in the same vein as Valve's mischaracterization of *Subafilms*, Valve attempts to mischaracterize Sierra's entire position on discovery by claiming that Sierra has not agreed to undertake document collection from foreign offices under its control. This is simply not the case, because all documents overseas relating to U.S. licensing activities, if any, will be produced.

- Finally, and perhaps most notably, Valve utterly fails to recognize the massive burden global discovery would create on an organization of the size and complexity of Sierra/VUG. Sierra is but one part of the global network that is VUG. As stated in the Declaration of Eric Roeder, VUG works with literally hundreds of distributors for Sierra Games worldwide and Valve seeks review and collection from each of them. (Roeder Decl. ¶¶5-7.) Additionally, Valve seeks information and documents from every single VUG country manager and information "relating" to all licensed cybercafés on a worldwide basis. Global discovery would unnecessarily complicate this case and raise costs to an amount not commensurate with the issues, which are so clearly limited to violations of U.S. copyright law.

### III. SIERRA'S RESPONSE

**A.   The Requested Discovery does not "Define and Clarify the Issues" Related to Valve's Claim that Sierra Acted Outside the Scope of its License**

Valve cites *Soto*, 162 FRD 603 (N.D. Cal. 1995), a case from the Northern District of California, for the proposition that the requested discovery should be compelled to "define and clarify the issues." (Valve's Motion at p. 9.) Valve's Complaint alleges that the "pay for play" use of licensed software by a cybercafé infringes certain U.S. copyrights. Information related to <u>use</u> of software overseas by cybercafés has no relevancy whatsoever to Valve's claim based on U.S. copyright law, nor can such information "define [or] clarify" whether

SIERRA'S RESPONSE BRIEF IN OPPOSITION
TO VALVE'S MOTION TO COMPEL
(CV02-1683) - 4
VIUP\2343PL16.DOC

CHRISTENSEN
O'CONNOR
JOHNSON
KINDNESS<sup>PLLC</sup>

LAW OFFICES
1420 Fifth Avenue, Suite 2800
Seattle, WA 98101-2347
TELEPHONE: 206.682.8100

Sierra's domestic activities are infringing. The utter lack of relevance when compared to the burden global discovery will create, begs entry of the Court's protective order.

1. **Allegedly Unlicensed Acts in the U.S. are Relevant; Allegedly Unlicensed Acts Abroad are Not**

Valve's theory on copyright infringement is a moving target, propelled only recently away from statements that cybercafé play is an unlicensed "public performance" in violation of § 106(4). After Sierra raised discovery objections based on extraterritoriality, Valve abandoned its arguments that cybercafé play is an unauthorized public performance. Valve's most recent position is simply that Sierra "acts outside the scope" of its license. (Valve's Motion, p. 1) Valve struggles in vain to find at least one unlicensed domestic act related to overseas cybercafés. Valve can find no act of direct infringement domestically because all replication of software done domestically by Sierra is licensed. Eric Roeder declares there is absolutely no difference between software manufactured for use at a cybercafé and software manufactured for use on a standalone (*i.e.*, not "networked") machine. (Roeder Decl., ¶8.) Thus, the only issue is whether these genuine, authorized copies are nevertheless put to an infringing use once installed and played on a computer at a cybercafé.

<u>Valve is not without a remedy for overseas cybercafé licensing</u>. Available to Valve are causes of action for breach of the Software Publishing Agreement and copyright infringement under the laws of several foreign jurisdictions. In the present litigation, Valve's allegations relating to unlicensed acts abroad are simply not relevant.

2. ***Los Angeles News Service*** **is Not Inconsistent with Sierra's Position on Extraterritoriality**

Valve's discussion of the case *Los Angeles News Service v. Reuters Television Int'l Ltd.*, 149 F.3d 987 (9th Cir. 1998), at page 9 of its Motion is misleading. The *Los Angeles News Service* case – without a doubt – requires proof that a <u>domestic</u> <u>act</u> of infringement was committed. *See,* 149 F.3d at 992 (holding that the plaintiff was "entitled to recover damages flowing from exploitation abroad of . . . *domestic acts* of infringement."). The present case is

SIERRA'S RESPONSE BRIEF IN OPPOSITION
TO VALVE'S MOTION TO COMPEL
(CV02-1683) - 5
VIUP\2343PL16.DOC

CHRISTENSEN
O'CONNOR
JOHNSON
KINDNESS[PLLC]

LAW OFFICES
1420 Fifth Avenue, Suite 2800
Seattle, WA 98101-2347
TELEPHONE: 206.682.8100

different from *Los Angeles News Service* because Valve can point to no domestic act of infringement. As discussed above, the "pay for play" use of software (manufactured under license) cannot be a domestic act of infringement if that use occurs in a foreign country. Accordingly, the *Los Angeles News Service* case is in no way inconsistent with Sierra's position on extraterritoriality. Unless Valve can show a domestic act of infringement by Sierra and damages for exploitation of that infringement abroad, Sierra's foreign activities have no bearing on the present case.

Valve's motion fails to explain that the *Los Angeles News Service* case merely discussed damages flowing from domestic acts of infringement. The plaintiff in *Los Angeles News Service* filmed scenes from the 1992 Los Angeles riots following the acquittal of police officers accused of beating Rodney King. The plaintiff initially authorized NBC to broadcast the riot scenes in the U.S., however, NBC also transmitted film footage to its New York offices of foreign news organizations. *See id.* at 990. Videotapes were then made in New York City from these transmissions and footage was further transmitted to Europe and Africa. The court held that transmissions from New York to Europe and Africa were not infringing acts completed within the United States and thus were not cognizable under U.S. law. *See id.* at 992 ("The satellite transmissions [from NY to Europe and Africa], thus, were merely means of shipping the unlicensed footage abroad for further dissemination.") On the other hand, the videotapes made within the United States, according to the Ninth Circuit, violated U.S. copyright law. *See id.* at 1274. Distinguishing the *Subafilms* case, the Court in *Los Angeles News Service* held that the plaintiff could recover extraterritorial damages because they "flowed from extraterritorial exploitation of an infringing act that occurred in the United States [*i.e.*, the unauthorized copying of the footage onto videotapes]." *Id.* In *Subafilms*, like the present case, there was no identifiable act of domestic infringement connected to extraterritorial damage. *See id.* at 991 (citing *Subafilms*, 24 F.3d at 1090, n.3). Unless Valve can prove an act of domestic infringement connected to Sierra's overseas licensing, its motion must be denied.

SIERRA'S RESPONSE BRIEF IN OPPOSITION
TO VALVE'S MOTION TO COMPEL
(CV02-1683) - 6
VIUP\2343PL16.DOC

CHRISTENSEN
O'CONNOR
JOHNSON
KINDNESSᴾᴸᴸᶜ

LAW OFFICES
1420 Fifth Avenue, Suite 2800
Seattle, WA 98101-2347
TELEPHONE: 206.682.8100

### 3. The Software Publishing Agreement Provides Three Distinct Methods of Distribution and Sierra is Indisputably Licensed to Replicate Software on Tangible Media in the United States

Sierra's domestic replication of software eventually used by cybercafés abroad cannot be a domestic act of infringement under the *Los Angeles News Service* case. The Software Publishing Agreement contains a definition for both "Retail Packaged Product" and "Non-Retail Software Product." The definition for Retail Packaged Product has been discussed in both parties' briefs (Valve's Motion, p. 2, n. 3, Sierra's Motion, p. 4), however, the definition for "Non Retail Software Product" has not yet been addressed. Read together, the Software Publishing Agreement's respective definitions for "Retail" and "Non-Retail Product" provides for three distinct methods for distribution of Valve software:

1. "Electronically (e.g., through an online download) only and with no follow-on tangible media";

2. "On tangible media (e.g., on a CD-ROM) **and bundled** with an internet service provider promotion package" (emphasis added); and

3. as "Retail Packaged Product" which is also distributed only on tangible media and distributed "in the retail channel."

The Software Publishing Agreement effectively licenses Sierra <u>exclusively</u> for the replication of non-bundled CD-ROMs on tangible media distributed in the retail channel; this tangible mode of distribution is "Retail Packaged Product." Indeed, the Software Publishing Agreement even contemplates replication of software on tangible media domestically and "localization" of the packaging in foreign countries. Regarding packaging, the Software Publishing Agreement provides that:

> Sierra will manufacture or have manufactured Retail Packaged Product packages (including the box, manuals, registration cards, license agreements and media) and marketing materials (including print media, internet and retail advertising and promotion) for its use. . . . The manufacture of all packages for Retail Packaged Product shall be under the sole discretion and control of Sierra. . . . .

SIERRA'S RESPONSE BRIEF IN OPPOSITION
TO VALVE'S MOTION TO COMPEL
(CV02-1683) - 7
VIUP\2343PL16.DOC

CHRISTENSEN O'CONNOR JOHNSON KINDNESS^PLLC

LAW OFFICES
1420 Fifth Avenue, Suite 2800
Seattle, WA 98101-2347
TELEPHONE: 206.682.8100

(Software Publishing Agreement, ¶ 4.2) Accordingly, in many situations Sierra will replicate abroad and handle its packaging abroad. In other situations, Sierra will replicate domestically and have packaging translated and adapted for various languages in foreign countries. Plainly, Sierra was granted a wide amount of discretion on how Retail Packaged Product was created and where such product is finally packaged for distribution or use.

#### 4. The *Aalmuhmmed* Case is Not Inconsistent with Sierra's Position on Extraterritoriality

Valve also cites the case, *Aalmuhmmed v. Lee*, 202 F.3d 1227, 1238 (9th Cir. 2000), and argues that this case somehow should control the outcome of this discovery dispute instead of the Ninth Circuit's *en banc* opinion in *Subafilms.* The *Aalmuhmmed* case is not inconsistent with Sierra's position on extraterritoriality. *Aalmuhmmed* merely held that a plaintiff had stated a claim upon which relief could be granted based on vague allegations of copyright infringement. *See id.* at 1238. The court in *Aalmuhmmed* stated "we cannot tell from the complaint" whether the plaintiff had stated a claim. Because the complaint in *Aalmuhmmed* was pleading U.S. copyright infringement, generally, the court elected not to dismiss on extraterritoriality grounds. *See id.* Thus, the *Aalmuhmmed* decision is not only factually different from the case at bar, but procedurally inapplicable as well because it merely deals with a motion to dismiss brought pursuant to Fed. R. Civ. P. 12. The *Aalmuhmmed* decision most certainly would have dismissed the Plaintiff's claim for copyright infringement had the complaint merely alleged acts overseas. The foregoing was not the case, and the Court could not tell whether domestic acts of infringement were alleged and, as such, it declined to dismiss the complaint.

### B. The Requested Discovery is Not Needed to Prove a Defense Based on Extraterritoriality

Valve argues at pp. 1 and 8 of its brief that the requested discovery is somehow needed by Sierra to prove a defense based on extraterritoriality. This is simply not the case because Sierra does not need documentation or other information regarding overseas licensing

CHRISTENSEN
O'CONNOR
JOHNSON
KINDNESS PLLC
LAW OFFICES
1420 Fifth Avenue, Suite 2800
Seattle, WA 98101-2347
TELEPHONE: 206.682.8100

activities to take a position that such activities are simply irrelevant to Valve's complaint based on U.S. copyright law. As mentioned previously, Valve seeks global document collection from each and every distributor of VUG overseas, and there are well over 100. (Roeder Decl. ¶ 5) Additionally, Valve has named all country managers for VUG as persons it wishes to collect information from. Finally, Valve seeks the 30(b)(6) deposition "regarding AMDG," which is VUG's exclusive distributor to the Philippines for Sierra games. Valve's 30(b)(6) deposition demands production of a witness located in Singapore. (Roeder Decl., ¶ 9) Information related to these foreign licensing activities could not possibly provide relevant information.

C.  **The Activities of AMDG, CoinBox, iGames Asia or any Foreign Distributor are Irrelevant to the Present Litigation**

Much of the present discovery dispute revolves around Sierra requesting specific information regarding activities by cybercafés in the Asia-Pacific region and Europe. (Holtman Decl., Exs. 10-22) No one disputes that the Asia-Pacific region and European regions are the most lucrative markets for cybercafé gaming. This is due in large part to an absence of personal computer ownership by a large percentage of the population in these areas. Without a large segment of the population owning personal computers, many go to cybercafés to enjoy accessing e-mail and other features that ownership of a personal computer provides. But for cybercafé gaming, the market in these areas of the world for Sierra's games is relatively small. The potentially lucrative market for cybercafé gaming may explain Valve's ferocious approach to discovery and its insistence upon surreptitiously investigating (for what appear to be commercial reasons) cybercafé activity abroad. The fact remains, however, that these activities are not at issue in the present litigation.

In response to numerous letters sending information regarding foreign cybercafé gaming, and as a courtesy to Valve, Sierra has agreed to a limited cessation of all cybercafé gaming worldwide (on a case-by-case basis) until its rights under the Software Publishing Agreement can be clarified with regard to this use. Rightfully so, Sierra treats issues

SIERRA'S RESPONSE BRIEF IN OPPOSITION
TO VALVE'S MOTION TO COMPEL
(CV02-1683) - 9
VIUP\2343PL16.DOC

CHRISTENSEN
O'CONNOR
JOHNSON
KINDNESS<sup>PLLC</sup>

LAW OFFICES
1420 Fifth Avenue, Suite 2800
Seattle, WA 98101-2347
TELEPHONE: 206.682.8100

regarding AMDG, iGames Asia, and CoinBox as mere grievances over how best to allocate licensing revenues, because Sierra believes it is fully authorized to license cybercafés. Nevertheless, Valve continues to search for information regarding activities of AMDG, CoinBox, and iGames Asia when the actions of these distributors have absolutely nothing to do with the present litigation.

### D. The *Subafilms* Case Disposes of All Issues in this Discovery Dispute in Sierra's Favor

Perhaps the most frustrating thing about the present discovery dispute is Valve's unwillingness to accept the controlling precedent of the Ninth Circuit's *en banc* decision in *Subafilms*. Valve continues to dodge the clear holding that there can be no liability for authorizing activities not constituting violations of U.S. copyright law, even where the authorization comes from the United States. Valve calls *Subafilms* a "narrow holding" and attempts to make a case that *Subafilms* applies only in contributory infringement situations. As explained below, Valve's position on *Subafilms* could not be more wrong and this case resolves all discovery issues in Sierra's favor.

#### 1. Sierra Does Not Argue "a *Per Se* Rule Against Discovery Regarding Foreign Activities in Copyright Cases"

At page 10 of Valve's brief the arguments advanced fall victim to the strawman fallacy wherein they erroneously state that Sierra argues "a *per se* rule against discovery regarding foreign activities in copyright cases." This, of course, is not Sierra's position. Sierra cites *Subafilms* for its factual identity to the present situation, wherein the Ninth Circuit decided *en banc* that foreign distribution of the Beatles' movie "Yellow Submarine" was not reachable by U.S. copyright law, even if the defendants authorized such distribution from the United States.

#### 2. *Subafilms* is not Limited to Alleged Acts of Contributory Infringement

Valve's second attempt to avoid *Subafilms* involves a blatant mischaracterization of the facts. Valve's brief states "[t]he extraterritoriality doctrine analyzed in *Subafilms* only applies to a situation in which a party only alleges only 'mere authorization' of a foreign entity by a

SIERRA'S RESPONSE BRIEF IN OPPOSITION
TO VALVE'S MOTION TO COMPEL
(CV02-1683) - 10
VIUP\2343PL16.DOC

CHRISTENSEN
O'CONNOR
JOHNSON
KINDNESS℠

LAW OFFICES
1420 Fifth Avenue, Suite 2800
Seattle, WA  98101-2347
TELEPHONE:  206.682.8100

domestic party as a means of alleging that the domestic party is a contributory infringer. (Citations omitted.)" (Valve's Motion at p. 10)  The foregoing sentence is somewhat unclear, however, it implies that *Subafilms* applies only to allegations of contributory infringement. This is not the case.  The facts of *Subafilms* do not differ in any substantial way from the facts of the present case wherein a plaintiff alleges that foreign distribution of a copyrighted work in a certain format (VHS) is an infringement of U.S. copyright law because domestic actors authorize the distribution from the United States.  The discussion in *Subafilms* regarding contributory infringement is limited to providing background on certain amendments to the Copyright Act adding the words "and to authorize" in § 106.  Regarding these words, the Court stated as follows:

> In light of our above conclusion that the "authorization" right refers to the doctrine of contributory infringement, which requires that the authorized act *itself* could violate one of the exclusive rights listed in section 106(1) - (5), we believe that "[i]t is simply not possible to draw a principled distinction" between an act that does not violate a copyright because it is not the type of conduct proscribed by section 106, and one that does not violate section 106 because the illicit act occurs overseas. . . (citations omitted)  In both cases, the authorized conduct could not violate the exclusive rights guaranteed by section 106.  In both cases, therefore, there can be no such liability for "authorizing" such conduct. (citations omitted)

*Id.* at 1094 (emphasis in the original).  Accordingly, Valve is wrong when it states that *Subafilms* is "limited" to actions based on contributory infringement.

E.  **Sierra has Agreed to Produce Discovery – Even Documents Overseas – if They Relate to U.S. Licensing Activities**

At page 11 of Valve's brief, under subsection B, Valve states "materials located in foreign offices of Vivendi's affiliates, subsidiaries, or divisions are subject to discovery." Sierra does not disagree with Valve's statement.  In fact, Sierra has agreed to produce all relevant documents relating to the licensing of cybercafés in the United States, if such documentation is located overseas.

SIERRA'S RESPONSE BRIEF IN OPPOSITION
TO VALVE'S MOTION TO COMPEL
(CV02-1683) - 11
VIUP\2343PL16.DOC

CHRISTENSEN
O'CONNOR
JOHNSON
KINDNESS<sup>PLLC</sup>

LAW OFFICES
1420 Fifth Avenue, Suite 2800
Seattle, WA 98101-2347
TELEPHONE: 206.682.8100

<hr>

**F.   Valve Fails to Recognize the Burden Global Discovery Creates on an Entity as Large as Vivendi – Sierra**

Valve cares very little about the breadth of its discovery requests and the burden global discovery would create on an entity the size of Vivendi/Sierra. The burden and expense associated with the request for discovery far outweighs its likely benefit, taking into account the needs of the present case and its limitation to U.S. copyright law. *See, e.g., Munoz-Santana v. The United States* 742 F.2d 561, 563-64 (9th Cir. 1984) (District Court abused its discretion in entering the discovery order in light of cost of further production of requested materials because cost of further discovery outweighed need for information). Although cost alone does not determine whether discovery should be limited, *Standard Chlorine v. Sinibaldi*, 821 F. Supp. 232, 262 (D. Del. 1992), the sheer magnitude of the request may be enough to tip the scales in favor of limiting discovery. *See Coleman v. American Red Cross*, 23 F.3d 1091, 1098 (6th Cir. 1994). The sheer magnitude of Valve's broad requests – especially on a global scale – require limitation in the form of a protective order. In issues of complex commercial litigation, the manual of complex litigation sets forth that limits should be entered on the quantity or scope of particular discovery devices in consideration of the issues at stake and the management needs of the particular litigation. Federal Judicial Center, *Manual For Complex Litigation, 3d edition*, Section 21.422, 1995.

## IV.   CONCLUSION

Valve's requested discovery would simply complicate matters and escalate costs further, while at the same time yielding absolutely no admissible evidence. Accordingly, Sierra respectfully requests that the Court deny Valve's Motion to Compel and grant Sierra's Motion for a protective order limiting discovery to U.S.-based activities.

SIERRA'S RESPONSE BRIEF IN OPPOSITION
TO VALVE'S MOTION TO COMPEL
(CV02-1683) - 12
VIUP\2343PL16.DOC

CHRISTENSEN
O'CONNOR
JOHNSON
KINDNESS<sup>PLLC</sup>

LAW OFFICES
1420 Fifth Avenue, Suite 2800
Seattle, WA 98101-2347
TELEPHONE: 206.682.8100

Dated this 25th day of August, 2003.

CHRISTENSEN O'CONNOR
JOHNSON KINDNESS<sup>PLLC</sup>

s / Mark P. Walters
F. Ross Boundy, WSBA No. 403
Robert J. Carlson, WSBA No. 18,455
Mark P. Walters, WSBA No. 30,819
Attorneys for Defendant Sierra
Entertainment, Inc.

SIERRA'S RESPONSE BRIEF IN OPPOSITION
TO VALVE'S MOTION TO COMPEL
(CV02-1683) - 13
VIUP\2343PL16.DOC

CHRISTENSEN
O'CONNOR
JOHNSON
KINDNESS<sup>PLLC</sup>

LAW OFFICES
1420 Fifth Avenue, Suite 2800
Seattle, WA 98101-2347
TELEPHONE: 206.682.8100