02-CV-01683-RESP

CC TO JUDGE __DJ__

Honorable Thomas S. Zilly
**Set for Hearing August 29, 2003**

____ FILED ____ ENTERED
____ LODGED ____ RECEIVED

AUG 2 5 2003   DJ

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY ____ DEPUTY

ORIGINAL

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VALVE, L.L.C., a Washington Limited Liability Company, | No. C 02-1683Z |
| Plaintiff, | PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER |
| v. | |
| SIERRA ENTERTAINMENT, INC. (AKA SIERRA ON-LINE, INC.), a Delaware Corporation, | |
| Defendant. | |

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
PROTECTIVE ORDER

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## I. INTRODUCTION

Sierra is not entitled to the protective order that it seeks. The issue in this case is Sierra's copyright infringement, which resulted from Sierra exceeding the scope of its license to reproduce, manufacture and distribute Valve products. The discovery requested from and involving Sierra's foreign offices directly relates to this issue, as well as the other claims and defenses at issue in this lawsuit.

Sierra exceeded the scope of it license by reproducing manufacturing, distributing and licensing Valve products to cybercafes domestically and abroad. Sierra has pled a defense based upon the "extraterritoriality" doctrine described in Subafilms, Ltd. v. MGM-Pathe Communications Co., 24 F.3d 1088, 1095 (9th Cir. 1994). Sierra is wrong in its understanding of Subafilms, but regardless, the question of whether certain activity is extraterritorial can only be resolved through *factual inquiry*. Furthermore, the law is clear that Valve may recover for infringing activities abroad that were enabled by Sierra's predicate acts of infringement domestically. Valve's requested discovery would lead to such information. Extraterritoriality is not a *per se* bar to discovery and Sierra's Motion for Protective Order ("Sierra Motion") should be denied.

## II. STATEMENT OF FACTS

In addition to the facts set forth in Valve's Motion to Compel, Sierra, in support of its Motion for Protective Order, has now admitted to further facts that support the discovery that Valve seeks.[1] Through the declaration of Eric Roeder, Vice President and Assistant General Counsel of Vivendi Universal Games, Sierra has admitted to activity that brings this matter directly within the purview of Copyright Act:

> CD-ROMS used in cybercafes, domestically and abroad, do not differ from the CD-ROMS sold to computer users for use outside of a networked gaming environment. **Sierra manufactures copies of CD-ROMs domestically** and

---

[1] Factual references in this Response, unless otherwise indicated, will be cited to the Declaration of Jason P. Holtman in Support of Valve's Motion to Compel dated August 14, 2003 ("Holtman Decl.").

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
PROTECTIVE ORDER - 1

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE (206) 623-7022

occasionally permits their manufacture overseas according to its license to manufacture Retail Packaged Product granted by the Software Publishing Agreement. Valve receives and accepts a royalty payment for each CD-ROM distributed by Sierra. ***Product manufactured within the U.S. is then shipped to foreign distributors abroad or in some cases to Sierra's corporate affiliates abroad in Europe or Asia.*** In some cases, Sierra will authorize one of its distributors to use CD-ROMS in a cybercafe whereupon a sticker is placed on the box indicating that the CD-ROM is for use in a cybercafe only. Besides the sticker placed on the box, the CD-ROM does not differ in any way from those typically distributed in other retail outlets for a given geographic location.

Declaration of Eric Roeder in Support of Sierra's Motion for a Protective Order ("Roeder Decl.") ¶ 8 (emphasis added). Additionally, Mr. Roeder makes claims such as "[T]he documents in [Sierra's and Vivendi Universal Games' foreign offices] to the best of my understanding relate solely to licensees of Sierra and/or Vivendi Universal Games overseas," Roeder Decl. ¶ 3, and "to the best of my knowledge, [Sierra's and Vivendi Universal Games'] distributorship agreements are mostly negotiated overseas." Roeder Decl. ¶ 6. Valve is entitled to pursue information that would both further bolster Sierra's admission regarding its predicate acts of infringement and information that would test the basis for Mr. Roeder's other claims regarding foreign activity.

### III. ARGUMENT

**A. Valve's Discovery Requests Are Relevant to Both Its Claims of Copyright Infringement and Sierra's Defense Based on Extraterritoriality**

*1. United States' Copyright Law Applies to the Exploitation Abroad of Domestic Acts of Infringement*

Contrary to Sierra's argument that it is "untouchable" under United States copyright law in regard to its worldwide infringement of Valve products, the Ninth Circuit recognizes jurisdiction over foreign activity in copyright cases where there is an act of infringement or predicate act leading to infringement that occurred in the United States. Within the last week, discussing its decision in L.A. News Serv. V. Reuters Television Int'l, Ltd., 149 F.3d 987 (9th

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
PROTECTIVE ORDER - 2

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Cir, 1998) (Reuters III), the Ninth Circuit reaffirmed the "predicate act" exception to the extraterritoriality application of the Copyright Act:

> We concluded that although the district court was correct to hold the Copyright Act does not apply extraterritorially, *an exception may apply where an act of infringement is completed entirely within the United States and that such infringing act enabled further exploitation abroad.* Relying on Sheldon v. Metro-Goldwyn Pictures Corp., 106 F.2d 45 (2d Cir. 1939), aff'd, 309 U.S. 390 (1940), which held that profits from overseas infringement can be recovered on the theory that the infringer holds them in constructive trust for the copyright owner, we reversed the grant of summary judgment. *We held that "LANS [was] entitled to recover damages flowing from the exploitation abroad of the domestic acts of infringement committed by defendants."*

L.A. News Serv. V. Reuters Television Int'l, Ltd., No. 02-56956, __ F.3d __, 2003 WL 21982758, at *1 (9th Cir. August 21, 2003) ("Reuters IV") (citations omitted) (emphasis added) citing Los Angeles News Service v. Reuters Television International, Ltd., 149 F.3d 987, 992 (9th Cir. 1998); see also Aalmuhammed v. Lee, 202 F.3d 1227, 1238 (9th Cir. 2000), (reversing a copyright dismissal based on extraterritoriality because the Court could not determine whether the actions occurred in the United States or in a foreign country: "We cannot tell from the complaint whether foreign distributors do their work in foreign countries, or do it by fax, phone, and email from California.").[2]

Valve is entitled to discovery that will establish that Sierra's conduct fits within the exception set forth in Reuters IV, and to determine the nexus between domestic and foreign activity that was the basis for the dismissal in Aalmuhammed. The subject matter of this litigation is Sierra's licensing, distribution, and reproduction of Valve products to cybercafes worldwide. A request for discovery should be considered relevant "if there is *any possibility* that the information sought may be relevant to the subject matter of [the] action." (emphasis

---

[2] Sierra's reliance on Subafilms is further misplaced because Subafilms discussed the limited situation in which the plaintiff alleged a contributory copyright infringement claim based solely on "mere authorization" of foreign acts. In contrast, Valve has alleged a direct infringement claim—it is not relying solely on Sierra's mere authorization of foreign agents.

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
PROTECTIVE ORDER - 3

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

added) Paulsen v. Case Corp., 168 F.R.D. 285, 288 (C.D.Cal. 1996), citing, Jones v. Commander, Kansas Army Ammunitions Plant, 147 F.R.D. 248, 250 (D.Kan. 1993); see also Miller v. Pancucci, 141 F.R.D. 292, 296 (C.D.Cal. 1992) (holding that discovery should be allowed "unless the information sought has no conceivable bearing on the case."). The discovery and information sought by Valve easily meets this standard.

The documents requested by Valve are related both to Valve's claim that Sierra acted outside the scope of its license as well as to Sierra's extraterritoriality defense. FED. R. CIV. P. 26(b) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . ."); Soto v. City of Concord, 162 F.R.D. 603, 610 (N.D.Cal. 1995) (one purpose of discovery is to "define and clarify the issues" in the litigation). Sierra's insistence that its activities are beyond the scope of the Copyright laws, without providing any discovery on the issue, hamstrings Valve's ability to present its case at trial. See United States v. Proctor & Gamble Co., 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958) (holding that full discovery makes trial "less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent."), distinguished on other grounds, John's Insulation v. L. Addison & Assocs., 156 F.3d 101, 107 (1st Cir. 1998); Plasterers Local Union No. 346 v. Wyland Enterprises, Inc., 819 F.2d 217, 218 (9th Cir. 1987). Sierra's request for a protective order should therefore be denied.

   2.   *Sierra Does Not Have a License to Distribute Valve Games to Cybercafés, It Only Has a License to Manufacture, Reproduce, and Distribute Valve Products "Solely as Retail Packaged Product"*

Sierra is not entitled to rely upon its *contested* interpretation of the Publishing Agreement as a means to avoid discovery in this litigation. Sierra, putting the cart before the horse, assumes its interpretation of the Publishing Agreement is correct. See Sierra Motion at 8 ("[T]he fundamental issue to be resolved by this litigation has nothing to do with whether Sierra can reproduce or distribute the Valve works; Sierra is licensed to do so."). However,

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
PROTECTIVE ORDER - 4

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

contrary to Mr. Roeder's claim that Sierra is licensed to manufacture and distribute Valve products in the United States and then ship them overseas to be used for infringing purposes, Sierra is *only* licensed to reproduce and distribute Valve products *as Retail Packaged Product*, which is expressly set forth in the Publishing Agreement:

> Valve grants Sierra a worldwide, perpetual license to manufacture or cause to be manufactured, reproduce or cause to be reproduced, use, distribute (directly or indirectly), or have distributed, market, advertise, publicly display and perform in connection with such marketing and advertising, rent, lease and license such product and Foreign Translations thereof (developed by or for Valve) in object code form on an exclusive basis (even as to Valve and its Affiliates, but except as provided in Section 3.1.2) **solely as Retail Packaged Product**.

Agreement §3.5 (emphasis added). "Retail Packaged Product" is defined in relevant part as:

> a version of a Product...that...(c) is distributed in packaging of the type typical of game software in the Retail Channel; and (d) is distributed in the Retail Channel.

Id. *Definitions*. The Software Publishing Agreement defines "Retail Channel" as:

> "brick and mortar" retail outlets; Internet retailers that carry any of electronics, software, games, toys and/or gifts, Internet auction sites; and all other channels now or during the term hereof commonly referred to in the retail trade as "retail outlets" and distributors and resellers to such "retail outlets."

Id. Central to this litigation is the scope of Sierra's license: whether Sierra has the right to reproduce and redistribute the Valve products as it did. See 17 U.S.C. §§ 106(1) and 106(3) (granting copyright holders the exclusive right to reproduce and distribute works). Sierra cannot avoid its discovery obligations by claiming that it is licensed.

In Adobe Sys. Inc. v. One Stop Micro Inc., the Court found that distribution of product outside the scope of a license (in that case low-priced, "licensed" educational versions of Adobe products that the defendant repackaged and then sold as higher-priced, non-educational versions) constituted copyright infringement:

> [Adobe's license] specifically permits the reseller to distribute "solely to Educational End Users at Reseller's Outlet or through reseller's direct sales

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
PROTECTIVE ORDER - 5

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

> force." . . . [T]he President of One Stop admits to adulterating educational versions of Adobe software and re-packaging them as full retail versions. . . .
>
> One Stop's admitted distribution of educational versions of Adobe software to non-educational end users is manifestly outside the scope of Adobe's license and in violation of its right to distribute under § 106(3). Accordingly, the Court finds that One Stop has committed copyright infringement as a matter of law under § 501(a) ( "Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 118 ... is an infringer of the copyright.")

84 F.Supp.2d 1086, 1093 (N.D.Cal. 2000). Adobe's license was limited to distribution "solely to Educational End Users at Reseller's Outlet or through reseller's direct sales force" just like Sierra's license is expressly limited to manufacturing, reproducing, and distributing Valve products "solely as Retail Packaged Product." Thus, Sierra directly infringed Valve's copyrights when it acted outside the scope of the publication license by reproducing, distributing, and licensing Valve Games to cybercafes. As Mr. Roeder admits, that infringement occurred domestically when Sierra reproduced and distributed Valve products for shipment overseas for use other than as Retail Packaged Product. See Roeder Decl. at ¶ 8.

Sierra is wrong that Valve's claim depends upon an infringement of the "public performance" right. See Sierra Motion at 5. Although Sierra admits that "Valve has not granted [Sierra] the right to publicly perform the work" (except in association with advertising and promotion of the product), See Id. at 8, Valve's claim is not limited to that infringing conduct. Sierra claims that Valve has recently changed its position. See Id. at 5. This is neither correct nor material in the first instance. Valve's copyright claim was clearly set forth in its complaint and was not limited to Sierra's infringement of its public display right:

> Sierra has in the past and continues to reproduce, use, distribute, and/or license one or more of the Valve Games with regard to "cyber cafés." Sierra's activities are outside the scope of Sierra's limited license to reproduce, use, distribute, and/or license the Valve Games as Retail Packaged Products, and therefore constitute copyright infringement in violation of the Copyright Act of 1976, 17 U.S.C. §106.

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
PROTECTIVE ORDER - 6

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Complaint ¶ 13. Further, regardless of the fact that Sierra mischaracterizes and misunderstands Valve's claim, it now admits that it reproduced and distributed Valve products domestically for the purpose of putting them into the hands of cybercafes worldwide. See Roeder Decl. ¶ 8. Given the scope of allowable discovery, these claims and circumstances are more than enough to entitle Valve to the discovery that it seeks.

   3.   *Sierra's Declaratory Judgment Claim Also Makes the Requested Discovery Relevant.*

Sierra has asked this Court for a declaratory judgment in an attempt to sanction its worldwide distribution of Valve games to cybercafes:

> Sierra is entitled to the Court's declaratory judgment that it has, and in the past had, the right to license the Valve Games to internet cafes both inside and outside the United States.

Answer and Counterclaim ¶ 29. Although Valve's copyright claim and Sierra's defenses to that claim entitle Valve to the discovery that it seeks as set out above, Sierra's declaratory judgment action is another reason why the sought after discovery regarding Sierra's worldwide activities in regard to cybercafes is relevant. See, e.g., Golden Valley Microwave Foods v. Weaver Popcorn, Co., 130 F.R.D. 92, 95 (N.D. Ind. 1990) (holding that discovery should encompass all claims put at issue in declaratory judgment counterclaim).

   4.   *For the Purposes of Discovery, the Question of Whether Some of Sierra's Activities May Be Shielded by the Extraterritoriality Doctrine is Not Ripe.*

Although Sierra presents its argument as if the Court should rule on the issue of extraterritoriality (and thereby shield Sierra from discovery), the issue of extraterritoriality can only be decided after Valve has had a full opportunity for discovery. See Golden Valley, 130 F.R.D. at 95 (noting that "to launch into the fact sensitive inquiry necessary to make such a determination would seemingly be a bit premature during the 'discovery phase' of the case, while counsel are still in the process of discovering the 'facts.'"). Indeed, given that the Court reversed a dismissal based on extraterritoriality in Aalmuhammed, 202 F.3d at 1238, because

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
PROTECTIVE ORDER - 7

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE (206) 623-7022

it could not determine the factual basis underlying the defense, it would be error to rule upon Sierra's extraterritorial claim prior to the completion of discovery.

**B.  Valve's 30(b)(6) Deposition of Sierra Regarding AMDG Should Be Permitted to Go Forward**

The AMDG licenses and materials that Valve discovered through its own investigations are notable examples of activity that Sierra claims should be off limits in discovery, even though those limited materials indicate that the distribution of Valve products to cybercafes by AMDG and Sierra was likely domestic infringement (or at a minimum was activity that was enabled by Sierra's acts of domestic infringement). In particular, Valve discovered the following information:

> **Vivendi Universal Games "Cybercafe Commercial License"** for Counter-Strike used in the Philippines, which by its terms is "deemed to have been *made and executed in the State of California* in the United States of America." (emphasis added) Holtman Decl. Ex. 13.
>
> **Vivendi Universal Games/AMDG Power of Attorney,** which states that "SIERRA hereby ratifies and certifies all actions performed by AMDG. . .shall be deemed as the action of SIERRA." Holtman Decl. Ex. 20.
>
> **AMDG/Vivendi Universal Games International Distributor Agreement** dated November 1, 2002 that (1) required AMDG to take delivery of all [Sierra] Products FOB Fresno, California, USA (§ 7(a)); and (2) contained a California choice of law and jurisdiction. (§ 17(e))  Holtman Decl. Ex. 11.
>
> **AMDG/Vivendi Universal Games' Threat Letter dated May 8, 2003** that references Counter-Strike as one of the games for which cybercafes must "*secure the required Commercial Site Licenses*" through AMDG because "AMDG is the exclusive distributor of Commercial Site License for Vivendi Universal Games in the Philippines." Holtman Decl. Ex. 20.

Further, AMDG's corporate secretary testified in front of the Philippines House of Representatives that AMDG was the exclusive distributor of Counter-Strike and that AMDG had such rights pursuant to an agreement and a power of attorney given by Sierra as well as Vivendi. See <http://www.congress.gov.ph/committees/commnews_det.php?newsid=735>

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
PROTECTIVE ORDER  - 8

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Philippines House of Representatives (March 19, 2003) "Collection of fees by a computer game distributor questioned." Holtman Decl. Ex. 20.

Sierra argues that its relationship with AMDG cannot be investigated because AMDG is located outside the United States and its activities are wholly extraterritorial. See Sierra Motion at 11. Valve is entitled to inquire into Sierra's relationship with AMDG in order to determine if it is indeed "wholly extraterritorial." The categories set forth in Valve's deposition notice are all relevant to the claims and defense at issue in this case—Valve simply wants an opportunity to investigate Sierra's unsupported claims. Moreover, because the court cannot anticipate the questions that will be asked on the taking of the deposition, the scope of a proposed deposition should not be preemptively limited solely because the opposing party claims that the deposition will inquire into matters not relevant to the cause of action. See Aacon Contracting Co. v. Assoc. of Catholic Trade Unionists, 175 F. Supp. 659, 661 (E.D.N.Y. 1959) ("To circumscribe the range of proposed depositions to any extent beyond that specifically prescribed by [the Federal Rules] may deprive the plaintiff of a fair opportunity to adequately prepare for trial.").

Finally, Sierra's claim that it is unduly burdensome to depose its designated representative in the Philippines is without merit. See Sierra Motion at 11; Roeder Decl. at ¶ 9. Sierra chose to select an employee located in the Philippines as its designee. A corporation may not avoid its obligation to put forth a 30(b)(6) witness by designating someone in a foreign country and then claim that it is a hardship to prepare that person for the deposition. Sierra could, if it wished, designate another speaking agent such as Mr. Roeder (who could be educated by Sierra's employee in the Philippines) or Mr. Patrick Sweeney (Vivendi Universal Games' Senior Counsel and Assistant Secretary who executed the Power of Attorney between Vivendi Universal Games and AMDG). Furthermore, Sierra's claim is undercut by the fact that Valve's counsel offered to accommodate Sierra by either traveling to

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
PROTECTIVE ORDER - 9

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE (206) 623-7022

Vivendi Universal Games' headquarters in Los Angeles (where it would ordinarily be anticipated that Sierra could find a 30(b)(6) designee) or to conduct the deposition telephonically or by other means. Declaration of Jason Holtman in Support of Valve's Opposition to Sierra's Motion for Protective Order ("Holtman Opp. Decl.") ¶ 2, Ex. 1.

Valve should be permitted to take the requested 30(b)(6) deposition regarding AMDG.

### C. Sierra's Claims Regarding Undue Hardship and the Disclosure of Confidential Information Have No Merit

Valve does not dispute that Sierra and its affiliates control a large and complex, worldwide publishing business. However, Sierra's claim that Mr. Roeder would have to supervise document collection and that gathering documents from its overseas offices "would escalate costs tremendously in terms of time and money," see Roeder Decl. ¶ 7, is not a legitimate objection to engaging in discovery.[3] See e.g., Roesberg v. Johns-Manville Corp., 85 F.R.D. 292, 297 (E.D. Pa. 1980) (in the context of wide-ranging inquiries made by asbestos plaintiffs, holding that is not sufficient grounds to withhold discovery based on "the fact that answering the interrogatories will require the objecting party to expend considerable time, effort and expense."). Moreover, the Agreement was signed only two years ago, on March 29, 2001. In Roesberg, the court found that production of documents going back 38 years was not burdensome. Id. Sierra's production of documents from the last 5 years (encompassing events leading up to the signing of the contract and including its implementation) simply will not overly burden the corporation.

Furthermore, as set forth in Valve's Motion to Compel, the documents are within the custody and control of Sierra and are therefore discoverable. Sierra cannot resist discovery on the basis that certain documents are in its foreign offices. See Motion to Compel at 12-13.

---

[3] Although it is not directly at issue in regard to Sierra's Motion for Protective Order, Valve disputes Sierra's counsel's representation that Sierra has fully responded to Valve's discovery requests (even to the limited degree of U.S. based documents regarding U.S. activities). See Carlson Decl ¶¶ 7-8.

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
PROTECTIVE ORDER - 10

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE (206) 623-7022

"'Control' under FRCP 34 is to be broadly construed so that party may be obligated to produce documents requested even though party may not actually possess documents; as long as party has legal right or ability to obtain documents from another source on demand, that party is deemed to have 'control.'" Poole v. Textron, Inc., 192 F.R.D. 494, 501 (D.C.Md. 2000). As such, information and documents in Sierra's foreign offices are discoverable under the federal rules. Addamax Corp. v. Open Software Foundation, Inc., 148 F.R.D. 462, 468 (D.Mass. 1993); In re Richardson-Merrell, Inc., 97 F.R.D. 481, 483 (S.D.Ohio 1983) (compelling discovery of all documents responsive to plaintiff's requests that are in the care, custody or control of the company's foreign subsidiaries: "Defendant has objected to searching for documents in the hands of its foreign subsidiaries. This position is, as a general matter, not valid.").

One of Sierra's stated reasons for seeking a protective order is based on Valve's distribution system known as Steam. See Sierra Motion at p. 3. Sierra's claims regarding Steam, however, are a red herring. Valve's goal in this litigation is to enforce its license and be made whole, not to undermine Sierra's distribution of Valve games. Moreover, the parties have negotiated and are currently abiding by a protective order designed to protect against the disclosure or unauthorized use of confidential information. Initially, Valve proposed an "Attorney's Eyes Only" designation, but Sierra refused to include such a designation in the protective order. Holtman Opp. Decl., at ¶ 3. Valve still remains willing to include such a designation in order to assuage Sierra's fears.

**D.   An Extension of the Discovery Schedule and Postponement of Trial will be Necessary.**

An extended discovery schedule will be necessary in order for Sierra to collect and Valve to review the disputed documents should the Court grant Valve's Motion to Compel and deny Sierra's Motion for Protective Order. The parties previously stipulated to extend the

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
PROTECTIVE ORDER  - 11

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

trial date by three months in order to accommodate discovery, however, Sierra's continued resistance to discovery has further delayed the development of this matter. A three month extension of the current trial schedule, subject to the Court's availability, should be sufficient for this purpose. An amended proposed order granting Valve's Motion to Compel, denying Sierra's Protective Order and providing an amended trial schedule is attached.

## V. CONCLUSION

Sierra cannot build a defense out of untested assertions regarding the "wholly extraterritorial" nature of its reproduction, distribution, and licensing of Valve products to cybercafes worldwide. It is too early in this case to make such a determination, which in any event requires a factual investigation. Valve is entitled to its requested discovery in order to define and clarify its claims and to test the applicability and veracity of Sierra's defenses. Sierra must come forth with this information. There is no reason for Sierra's requested protective order.

Valve respectfully requests that Sierra's motion be denied in its entirety, that the Court compel Sierra to produce documents and information (as set forth in Valve's "companion" motion to compel on this subject), and that Valve be awarded its costs and fees in opposing this motion pursuant to FED. R. CIV. P. 37(a)(4).

DATED this 25th day of August, 2003.

PRESTON GATES & ELLIS LLP

By _____
Karl J. Quackenbush, WSBA #9602
Jason P. Holtman, WSBA # 28233
Attorneys for Plaintiff
Valve, LLC

K:\36063\00014\JPH\JPH_P220Y

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
PROTECTIVE ORDER - 12

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022