

**HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN**

*A Professional Corporation*

October 14, 2003

Three Embarcadero Center
Seventh Floor
San Francisco, CA 94111-4024

Telephone 415.434.1600
Facsimile 415.217.5910
www.howardrice.com

Writer's Information:

Annette L. Hurst
ahurst@howardrice.com

**VIA FACSIMILE AND US MAIL**

Jason Holtman, Esq.
Preston Gates Ellis LLP
925 Fourth Ave., Suite. 2900
Seattle, WA 98104-1158

Re:   Valve v. Sierra

Dear Jason:

This will confirm various aspects of our meet and confer conversation on Friday.

1.   We raised the issue of Gabe Newell's reformat of his hard drive, expressing the concern that this resulted in the destruction of evidence both through Mr. Newell's likely failure to maintain all relevant materials and the permanent erasure of previously deleted material maintained in the unused sectors of the drive. I asked whether the hard drive had been mirrored prior to its reformatting. You promised to provide us with a complete explanation of what had occurred and what steps had been taken, if any, to preserve evidence.

2.   You inquired whether Sierra was taking the position that its production from its domestic files regarding the cyber-café issue was complete. Each of us had some confusion surrounding our discussion on this issue. I represented to you that we had not limited the scope of our current search for all documents on the cyber-café issue based on any assumption regarding the efficacy or completeness of the prior production. We started producing documents on Friday as we had agreed, and will continue doing so over the course of the next few weeks.

3.   We had a lengthy discussion regarding the proposed Protective Order and our changes thereto. Our primary areas of disagreement include exclusion of in-house counsel from the Attorneys' Eyes Only designation and limiting the number of persons who can have access to Confidential Material. On the former issue, I proposed that perhaps a three-tier order might solve the problem, so long as the Outside Counsel Eyes Only tier is limited to very specific categories of documents. One such category you proposed was

45

Jason Holtman, Esq.
October 14, 2003
Page 2

"future business plans." You did not agree to this proposal but indicated that you would consider it. You promised to provide us with a letter summarizing your position on all of the issues we raised in Kim Bliss's letter, as well as supplying those specific categories of documents that you believe properly should be Outside Counsel Eyes' Only material. We need that information in order to provide the re-drafted Protective Order, as we agreed to do. In the meantime, we agreed that both parties are treating AEO designated material as OCEO material, reserving all rights to object later to such a designation.

An issue that we did not raise on Friday, but that we believe also must be addressed in this context, is the role of business lawyers at PGE who have dual roles for Valve. As we understand it, Liam Lavery and others working with him provide substantial business advice to Valve, acting as Valve's "outside" general counsel. Accordingly, they will need to be screened from the OCEO designation as well and we will be proposing language in that regard.

4.  I reiterated that we will provide you with information regarding who and where for the AMDG deposition notice sometime this week. Additionally, we are providing you this information without waiver as to objections to specific topics. We will serve those objections shortly.

5.  We discussed Valve's most recent deposition notice regarding corporate structure. I further explained my view that this was not the appropriate discovery vehicle for this type of information and explained that we are prepared to seek a protective order if necessary requiring Valve to obtain this information through document requests and interrogatories. You agreed that this type of information was ordinarily obtained in that fashion, but stated that you did not trust Sierra to get the job done properly and believed the only way to do so was through a 30(b)(6) notice. I expressed my disagreement and disappointment with this point of view, reiterated that we will ensure that Sierra complies appropriately with its discovery obligations, and offered that if the limitation on interrogatories were the problem, we were willing to engage in a bilateral agreement to increase the authorized number of interrogatories in order to solve the problem. You then proposed that we simply provide you with the information without use of a discovery mechanism, and that you would then consider whether to withdraw the notice. As I stated Friday, I do not think this solves the problem.

6.  In order to try to break the impasse on this issue, however, I enclose a current corporate structure chart that encompasses VUG and Sierra. Please treat this as CONFIDENTIAL pursuant to the proposed terms of the protective order. Having provided this chart as a show of good faith, I expect you will withdraw the notice and proceed in a similar fashion by propounding ordinary discovery to get at any other issues you believe relevant which are not answered by this chart.

**46**

Jason Holtman, Esq.
October 14, 2003
Page 3

       7.    We next engaged in a lengthy discussion concerning Valve's assertion under Section 4.4 of the Software Publishing Agreement that Sierra is not cooperating in its efforts to police piracy. I explained to you my view that claims for breach of the SPA should not be conflated with discovery obligations. You stated that it was not your intention to do that, but insisted that Sierra must take a position on whether the various licensing activities you have identified in recent correspondence are authorized or not. I stated that I did not believe discovery meet and confer conversations were the appropriate way to argue about Section 4.4 obligations. Neither of us should be in a position to be making arguments that the contract was or was not breached based on some statement of counsel in a discovery conference. After additional discussion, I asked you to explain to me why Valve believes that Sierra is not authorized to license cyber-cafes, as Sierra believes it is entitled to do. Your response was, "because it is not." You offered no analysis or rationale why a cyber-café is not a retailer, simply stating that "Valve did not intend to license those rights." I explained that Sierra had previously exercised those rights and absolutely believed it was entitled to continue doing so under the SPA.

       At this point, I am not sure what more can be accomplished with respect to this issue. We are providing you with worldwide cyber-café information as fast as we can.

       8.    The last issue we discussed was format of production and Valve's compliance with its discovery obligations. With regard to the electronic production, we discussed the format of such productions. You would like us to exchange documents in TIFF format with limited coding. We will not be able to do that with respect to this first round of production. As I stated, we do not object to you providing us with Valve's documents in that fashion, so long as you understand that we will not be able to do so at this point. Kim and Kristin are to speak further regarding this issue on a going-forward basis for our productions.

       Kristin stated that Valve's production will begin shortly and will be completed by October 20. You stated that we will also receive interrogatory responses on that date. We received your fax of responses to the document requests the other day.

Jason Holtman, Esq.
October 14, 2003
Page 4

      You asked that we agree to drop the position that Valve had waived objections as a result of its failure timely to serve responses to Sierra's discovery requests. I stated that I would consider your request and I continue to do so in consultation with my clients.

                                                      Sincerely,

                                                      Annette L. Hurst

Enclosure
WD 101403/1-1562201/alh/1108026/v1