Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VALVE CORPORATION, a Washington corporation,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>SIERRA ENTERTAINMENT, INC. (AKA SIERRA ON-LINE, INC.), a Delaware Corporation; VIVENDI UNIVERSAL GAMES, INC., a Delaware Corporation; and VIVENDI UNIVERSAL, S.A., a French foreign corporation,<br><br>　　　　　　　　　　Defendants. | No. C 02-1683Z<br><br>VALVE'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S THIRD MOTION TO COMPEL<br><br>Noted for: September 24, 2004<br><br>**Oral Argument Requested** |
| SIERRA ENTERTAINMENT, INC. (AKA SIERRA ON LINE, INC., a Delaware corporation; and VIVENDI UNIVERSAL GAMES, INC., a Delaware corporation,<br><br>　　　　　　　　　Counter-Claimants,<br><br>　　v.<br><br>VALVE CORPORATION, a Washington Corporation; GABE NEWELL and LISA MENNET NEWELL, husband and wife, and the marital community composed thereof; and SCOTT LYNCH and JULIE LYNCH, husband and wife, and the marital community composed thereof,<br><br>　　　　　　　　　Counterclaim Defendants. | |

VALVE'S REPLY TO DEFENDANTS'
OPPOSITION TO PLAINTIFF'S
THIRD MOTION TO COMPEL - 0
C 02-1683Z

K:\36063\00014\KJB\KJB_O20UI

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## I. ARGUMENT

The Court has granted Valve's request to immediately depose Vivendi's Korean employees who destroyed documents and Vivendi is obligated to comply with this order. Further, Vivendi refuses to produce admittedly responsive documents, and insists that it does not have to produce a prepared 30(b)(6) witness who will not be instructed to decline to answer questions. Vivendi's positions are without merit.

First, the Court has already determined that the destruction of documents by Vivendi's employees in Korea is "an important issue" and that Valve's depositions of Vivendi's Korean employees take place "now." See Declaration of Jason Holtman ("Holtman Decl."), ¶ 2, p. 13 (Sept. 16 Transcript, at 11:19-22).

Second, Valve substantially narrowed its requests for non-Valve games at Vivendi's request. Valve requested database information for 12 games distributed by Vivendi. These 12 games are action games that are likely distributed with Valve games to cybercafés. Valve also requested document production related to Blizzard Entertainment, Inc. ("Blizzard"). Blizzard is a Vivendi operating unit that develops and licenses multiplayer games to cybercafés which are commonly bundled with Valve games. Furthermore, Valve is entitled to full production of the contracts and distributor agreements kept by Kirstin Wineke, Vivendi's Contract and Royalty Administrator for Asia Pacific, who testified that she kept complete sets and could produce these documents with just copying expenses. There is overwhelming evidence that Vivendi has reaped unlawful profits by requiring cybercafés to license Vivendi's games in order to get Valve's CounterStrike, the most popular multi-player online game in the world. Valve's document requests are not burdensome and seek relevant, necessary information. Vivendi has avoided producing this information for well over a year and has likely cost the parties more money in resisting the production than in simply providing it as required by the rules.

VALVE'S REPLY TO DEFENDANTS'
OPPOSITION TO PLAINTIFF'S
THIRD MOTION TO COMPEL - 1
C 02-1683Z

K:\36063\00014\KJB\KJB_O2OUI

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Finally, Valve is entitled to depose a FRCP 30(b)(6) witness prepared to answer relevant questions and who, among other things, is not instructed to remain silent on important issues under a claim of attorney client privilege.

### A. The Court Has Already Ruled On Initial Steps To Be Taken In Response To The Document Destruction In Korea

At this time the Court need not consider the remedy regarding Vivendi's destruction of documents in Korea. Sept. 21, 2004 Minute Entry ("The Court GRANTS plaintiff's request to take Korean deposition of employees regarding document destruction."). The Court has stated that it will consider appropriate sanctions after the ordered depositions have taken place and the record developed. See Holtman Decl., ¶ 2, p. 11 (Sept. 16 Transcript, at 9:6-9).

The Court has recognized the seriousness of this issue and has noted that the depositions should take place very soon: "I'm inclined -- and it's an important issue, and it involves a lot of expense, so I want to get your reaction. But I'm inclined to say to Mr. Quackenbush and to the defense that he can go to Korea and he can take those depositions now."[1] Holtman Decl., ¶ 2, p. 13 (Sept. 16 Transcript, 11:19-22). Valve has requested that Vivendi provide dates for the Korean depositions and other fact depositions that can proceed during the same trip to Asia-Pacific. See Holtman Decl., ¶ 3, p. 17. Vivendi has not yet provided Valve with dates to take the ordered depositions. Valve respectfully requests that the Court order Vivendi to immediately provide dates as requested and to work with Valve to schedule Asia-Pacific depositions in an orderly and efficient manner.

### B. The Documents Related to Non-Valve Games Sought By Valve are Relevant, Discoverable, and Not Unduly Burdensome to Produce

---

[1] Valve is not obligated to wait to take these depositions until Vivendi completes its "independent" investigation. This issue was discussed by the parties and addressed by the Court during the discovery hearing on September 16, 2004. During the hearing, the Court stated, "I think [Valve] is entitled to do [its] own investigation of this issue. And I'm not sure that [it] has to wait until [Vivendi's investigators] get done doing whatever they're doing." Holtman Decl., ¶ 2, p. 13 (Sept. 16 Transcript, at 11:3-6).

VALVE'S REPLY TO DEFENDANTS'
OPPOSITION TO PLAINTIFF'S
THIRD MOTION TO COMPEL - 2
C 02-1683Z

K:\36063\00014\KJB\KJB_O20UI

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

As stated above, Valve seeks production of three categories of documents that Vivendi has thus far refused to produce: 1) database information for 12 non-Valve games; 2) distributor agreements and deal summary files in the control of Kirstin Wineke, and; 3) responsive documents regarding non-Valve games limited to Vivendi's in-house game developer, Blizzard. See Third Motion to Compel, pp. 1-2. These three categories are a limited subset of the non-Valve documents responsive to Valve's First Set of Requests for Production, and represent a compromise offered to alleviate the alleged burden on Vivendi.

The requested documents will, in part, allow Valve to prove Vivendi's illicit bundling activity, wherein Vivendi required cybercafés to pay for less popular non-Valve games in order to get extremely popular Valve games such as CounterStrike, which Vivendi was not licensed to distribute. See Holtman Decl. in Support of Third Motion to Compel, ¶ 5; see also Holtman Decl. in Support of Opposition to Vivendi's Motion for Protective Order, ¶6 p. 57; Declaration of H. Michael Dunkle in Support of Opposition to Vivendi's Motion for Protective Order, ¶ 5, pp. 5-6. Frequently, Vivendi would also lower the price on CounterStrike to below market levels in order to extract a higher price on the non-Valve games, to Valve's detriment. Id. When an infringer uses sales of the infringing work to sell other non-infringing products the copyright owner is entitled to recovery of profits earned on the "convoyed" products. See Nimmer on Copyright, § 14.03 (discussing Frank Music Corp. v. Metro-Goldwyn-Mayer Inc., 886 F.2d 1545 (9th Cir. 1989)). Notably, in its Opposition, Vivendi does not dispute that it bundled Valve games with other games or that it reduced the price of bundled Valve games, artificially shifting profits to the other Vivendi games.

In addition to providing evidence about Vivendi's unlicensed and damaging bundling activities, the requested document discovery from Blizzard is relevant in demonstrating that Vivendi's interpretation of the SPA is unreasonable. Vivendi's core premise is that cybercafés should be included within the narrow license of the "retail channel" (the only

VALVE'S REPLY TO DEFENDANTS'
OPPOSITION TO PLAINTIFF'S
THIRD MOTION TO COMPEL - 3
C 02-1683Z

K:\36063\00014\KJB\KJB_O20UI

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

channel in which Vivendi may distribute Valve games). Yet even Blizzard clearly believes there is a difference between retail and cybercafés (which Blizzard refers to as "location based entertainment sites"):

> "To provide location-based-entertainment (LBE) sites such as yours with a legally compliant way to charge your customers to play Blizzard games, we have established the LBE License program. *The basic license that is provided with the <u>retail version</u> of our software allows for <u>personal and private use only</u>.* In order to operate any of our titles for profit, you must purchase a commercial exploitation license. *Once there is any kind of for-profit charge applied to the operation of one of our software titles, whether for time on the game, time on a computer, a club membership, a door charge, a tournament fee, or anything of like nature where our software is included, <u>a commercial exploitation license is required for your site</u>.*

Holtman Decl. in Support of Valve's Opposition to Defendant's Motion for Partial Summary Judgment and Cross-Motion Re Cybercafés and Contractual Limitation of Liability, ¶ 35, pp. 219-220. Vivendi cannot reasonably argue that cybercafés are not distinct from the retail channel.

Vivendi complains that the requested discovery will cost approximately $173,000. This is inapposite. "[J]ust because complying with a discovery request will involve expense or may be time consuming, does not make it unduly burdensome." Jackson v. Montgomery Ward & Co., 173 F.R.D. 524, 528-529 (D. Nev. 1997). The costs and time required for producing documents have been high for both parties; the amounts at stake are quite high as well. Vivendi cannot avoid discovery on three narrowed categories of responsive documents, particularly as two of these categories will involve only marginal cost and effort. The database information requested by Valve is only a few clicks away. Ms. Wineke testified that the only burden associated with producing the distributor agreements and deal summaries would be copying costs.[2] Holtman Decl. in Support of Third Motion to Compel, ¶ 23, pp. 6

---

[2] While Vivendi states in a footnote that the overlooked documents in Kirstin Wineke's possession have since been produced, it is not clear that these documents include distributor agreements and deal summary files relating to *non-Valve* games. Rather, it appears that these overlooked documents relate only to Valve games, and

VALVE'S REPLY TO DEFENDANTS'
OPPOSITION TO PLAINTIFF'S
THIRD MOTION TO COMPEL - 4
C 02-1683Z

K:\36063\00014\KJB\KJB_O2OUI

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

(Wineke Dep. at 139:06-13). Even the collection and production of Blizzard documents is not unduly burdensome. The relevance of these documents far outweighs the $173,000 Vivendi estimates it might spend, because Blizzard games are commonly bundled with Valve games, and therefore provide the greatest insights into the unlawful profits earned by Vivendi. Indeed, Vivendi received $500,000 in revenue on just one such deal in one country (the Philippines/AMDG deal). See Holtman Decl. in Support of Third Motion to Compel, ¶ 5.

Finally, Vivendi argues that Scott Lynch (Valve's designated corporate representative for Attorneys' Eyes Only documents) not be allowed to view documents that contain "proprietary, confidential commercial or trade secret information regarding Valve's competitors." This argument is baseless, as the Stipulated Protective Order was intended to protect just such documents: "The parties contemplate that "ATTORNEYS' EYES ONLY" material shall include economic, financial, and marketing data and information, research and development and technical information, trade secret information and current and future business plans." Final Stipulated Protective Order, Dkt. No. 137, p. 4.

### C. Valve is Entitled to a Continuation of the Deposition of Michael Tan

Vivendi inadequately prepared Michael Tan as its 30(b)(6) witness. Despite having almost no personal knowledge of Vivendi's relationship with AMDG, Mr. Tan spoke with only two individuals prior to the deposition[3] and inexplicably chose not to speak to Hubert Larenaudie, Vivendi's Senior Vice President and Director of Asia Pacific, an individual extensively involved with Vivendi's dealings with AMDG. Mr. Tan also failed to review financial information and royalty reports relating to AMDG—even though one of the deposition topics concerned the calculation and payment of royalties, licensing fees or other

---

were not produced in error, as Vivendi continues to refuse to produce distributor agreements and deal summary forms relating to non-Valve games. See Vivendi's Motion for Protective Order, pp. 5-6.

[3] One of those individuals, Kirstin Wineke, testified that she spoke with Mr. Tan in preparation for his testimony for "maybe 20 or 30 minutes." See Holtman Decl. in Support of Third Motion to Compel, ¶ 13, p. 86 (Wineke Dep., 118:6).

VALVE'S REPLY TO DEFENDANTS'
OPPOSITION TO PLAINTIFF'S
THIRD MOTION TO COMPEL - 5
C 02-1683Z

K:\36063\00014\KJB\KJB_O20U1

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

payments made by AMDG. See Holtman Decl. in Support of Third Motion to Compel, ¶ 10. Contrary to Vivendi's assertions, Mr. Tan's lack of preparation was evident throughout his deposition by his incomplete and uncertain answers. Mr. Tan was unable to answer questions in various areas, including, but not limited to: the negotiations between AMDG and Vivendi; the nature of AMDG's historic and current relationship with Vivendi; the calculation and payment of royalties, licensing fees, or any other payment made by AMDG to Sierra; AMDG's purported piracy enforcement actions that it has taken or plans to take in regard to Valve games; and Vivendi's knowledge of or participation in actions undertaken by AMDG in light of Valve's letter dated June 24, 2003. See Holtman Decl. in Support of Third Motion to Compel., ¶¶ 9, 10, 16, 17. Moreover, Mr. Tan's deposition was laden with improper and time consuming objections from defense counsel, particularly when sensitive areas of inquiry were being touched upon. See Third Motion to Compel, p. 12, n. 8. Vivendi should proffer an appropriate witness as soon a practicable.

## II.  CONCLUSION

Valve respectfully requests that the Court grant its Third Motion to Compel and 1) require the production of the three categories of documents requested by Valve; and 2) require Vivendi to identify a 30(b)(6) witness to answer the questions Mr. Tan could not or would not answer in his deposition. Valve also requests its costs and fees pursuant to CR 37.

DATED this 23rd day of September, 2004.

PRESTON GATES & ELLIS LLP


By_____/s/    Jason P. Holtman_____
Karl J. Quackenbush, WSBA #9602
Jason P. Holtman, WSBA # 28233
Kristin J. Boraas, WSBA #32015
Attorneys for Plaintiff
Valve Corporation

VALVE'S REPLY TO DEFENDANTS'
OPPOSITION TO PLAINTIFF'S
THIRD MOTION TO COMPEL - 6
C 02-1683Z

K:\36063\00014\KJB\KJB_O20UI

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

# CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on September 23, 2004, I electronically filed the foregoing with the clerk of the Court using the CM/ECF system, which will send notification of such filing to the following,

| | |
|---|---|
| Annette Hurst/Sarah King/Linda Q. Foy<br>Howard Rice Nemerovski Canady Falk & Rabkin, P.C.<br>Three Embarcadero Center<br>7th Floor<br>San Francisco, CA 94111 | Michael R. Scott<br>Hillis, Clark, Martin & Peterson<br>500 Galland Building<br>1221 Second Avenue<br>Seattle, WA 98101-2925 |

/s/   Jason P. Holtman
Karl J. Quackenbush, WSBA #9602
Jason P. Holtman, WSBA # 28233
Kristin J. Boraas, WSBA # 32015
Attorneys for Plaintiff
Valve Corporation
Tel: (206) 623-7580
Fax: (206) 623-7022
jasonh@prestongates.com

VALVE'S REPLY TO DEFENDANTS'
OPPOSITION TO PLAINTIFF'S
THIRD MOTION TO COMPEL - 7
C 02-1683Z

K:\36063\00014\KJB\KJB_O2OUI

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022