Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VALVE CORPORATION, a Washington corporation,<br><br>                        Plaintiff,<br><br>   v.<br><br>SIERRA ENTERTAINMENT, INC. (AKA SIERRA ON-LINE, INC.), a Delaware Corporation; VIVENDI UNIVERSAL GAMES, INC., a Delaware Corporation; and VIVENDI UNIVERSAL, S.A., a French foreign corporation,<br><br>                        Defendants. | No. C 02-1683Z<br><br>DECLARATION OF JASON P. HOLTMAN IN SUPPORT OF REPLY TO DEFENDANTS' OPPOSITION TO VALVE'S THIRD MOTION TO COMPEL<br><br>Noted for: September 24, 2004<br><br>**Oral Argument Requested** |
| SIERRA ENTERTAINMENT, INC. (AKA SIERRA ON LINE, INC., a Delaware corporation; and VIVENDI UNIVERSAL GAMES, INC., a Delaware corporation,<br><br>                      Counter-Claimants,<br><br>   v.<br><br>VALVE CORPORATION, a Washington Corporation; GABE NEWELL and LISA MENNET NEWELL, husband and wife, and the marital community composed thereof; and SCOTT LYNCH and JULIE LYNCH, husband and wife, and the marital community composed thereof,<br><br>                  <u>Counterclaim Defendants.</u> | |

DECLARATION OF JASON P.
HOLTMAN IN SUPPORT OF REPLY
TO DEFENDANTS' OPPOSITION TO
VALVE'S THIRD MOTION TO
COMPEL - 1
C 02-1683Z

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Jason P. Holtman hereby declares as follows:

1. I am counsel for Valve Corporation ("Valve") in the above-entitled action. I am over the age of eighteen years and I am competent to make this declaration. I make this declaration based on my own personal knowledge.

2. Attached at pp. 4-16 is a true and correct copy of pages 3 through 14 of the Transcript of Proceedings occurring before Judge Zilly on September 16, 2004.

3. Attached at pp. 17-18 is a true and correct copy of my September 20, 2004 letter to Linda Foy and Sarah King.

I declare under penalty of perjury that the foregoing is true and correct:

EXECUTED this 23rd day of September, 2004 at Seattle, Washington.

                                              /s/ Jason P. Holtman

                                              Jason P. Holtman

DECLARATION OF JASON P. HOLTMAN IN SUPPORT OF REPLY TO DEFENDANTS' OPPOSITION TO VALVE'S THIRD MOTION TO COMPEL - 2
C 02-1683Z

K:\36063\00014\KJB\KJB_P20UJ

2

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on September 23, 2004, I electronically filed the foregoing with the clerk of the Court using the CM/ECF system, which will send notification of such filing to the following,

Annette Hurst/Sarah King/Linda Q. Foy
Howard Rice Nemerovski Canady Falk & Rabkin, P.C.
Three Embarcadero Center
7th Floor
San Francisco, CA 94111

Michael R. Scott
Hillis, Clark, Martin & Peterson
500 Galland Building
1221 Second Avenue
Seattle, WA 98101-2925

/s/   Jason P. Holtman
Karl J. Quackenbush, WSBA #9602
Jason P. Holtman, WSBA # 28233
Kristin J. Boraas, WSBA # 32015
Attorneys for Plaintiff
Valve Corporation
Tel: (206) 623-7580
Fax: (206) 623-7022
jasonh@prestongates.com

DECLARATION OF JASON P. HOLTMAN IN SUPPORT OF REPLY TO DEFENDANTS' OPPOSITION TO VALVE'S THIRD MOTION TO COMPEL - 3
C 02-1683Z

3

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

```
                                                                    1

 1            IN THE UNITED STATES DISTRICT COURT FOR
                THE WESTERN DISTRICT OF WASHINGTON
 2                         AT SEATTLE

 3   VALVE CORPORATION,            )
                                   )  Case No. C02-1683Z
 4                  Plaintiff,     )
                                   )  Seattle, Washington
 5           v.                    )  September 16, 2004
                                   )
 6   SIERRA ENTERTAINMENT, INC. (AKA )
     SIERRA ON LINE, INC.), et al.,)
 7                                 )
                    Defendants     )
 8   _____)
     SIERRA ENTERTAINMENT, INC. (AKA )
 9   SIERRA ON LINE, INC.), et al.,)
                                   )
10         Counter-Claimants,      )
                                   )
11           v.                    )
                                   )
12   VALVE CORPORATION, et al.,    )
                                   )
13         Counterclaim Defendants.)
     _____)
14
                  TRANSCRIPT OF PROCEEDINGS
15        BEFORE THE HONORABLE THOMAS S. ZILLY
              UNITED STATES DISTRICT JUDGE
16

17   For the Plaintiff:     Karl Quackenbush
                            Jason Holtman
18                          Preston Gates Ellis
                            925 Fourth Avenue, Suite 2900
19                          Seattle, Washington   98104-1158

20   For the Defendants:    Linda Q. Foy
                            Howard, Rice, Nemerovski, Canady, Falk &
21                          Rabkin
                            Three Embarcadero Center
22                          Seventh Floor
                            San Francisco, California   94111-4065
23
                            Michael R. Scott
24                          Hillis, Clark, Martin & Peterson
                            500 Galland Building
25                          1221 Second Avenue
                            Seattle, Washington 98101-2925
```

1    And the defense has given me -- Ms. Foy I think is the author
2    of the letter -- a letter, a two-page letter outlining from the
3    defendants' standpoint issues for discussion.
4        We've got basically an hour.  So let's proceed first with
5    plaintiff and then we'll go to the defendants.  So I guess -- and
6    I know that there are some motions to -- pending motions for
7    summary judgment, partial summary judgment, that are pending, but
8    they're not yet ripe for consideration.  And I know that there is
9    a Valve -- there's a motion to compel discovery, which was
10   renoted till the 24th, I believe --
11           MR. QUACKENBUSH:  Yes.
12           THE COURT:  -- as a result of a stipulation of the
13   parties.  So I really haven't looked at that either.
14           MR. QUACKENBUSH:  Yes.
15           THE COURT:  So, Mr. Quackenbush, what can we do to
16   assist the parties today in the time we have?
17           MR. QUACKENBUSH:  Well, the issue we wanted to talk
18   about -- I think this was -- this session was organized primarily
19   by the defense, but the real time critical issue is the
20   destruction of these documents in Korea.  The defendants produced
21   some documents to us in the original Korean language.  It just so
22   happened that we had a summer clerk, a fellow by the name of
23   Eugene Kim, from the University of Washington law school, who's
24   Korean.  So we asked Eugene what these documents said, and the
25   translation is set out there.

4

1  When we first notified counsel about this their first
2  response was, no, you're all wrong, there wasn't any document
3  destruction, don't worry about it. And then a week later the
4  message was we know that's what we said before, that was wrong,
5  and now we're looking into this. We're going to do an
6  investigation. And when our investigation is done we'll provide
7  this investigator to you and you can take his deposition. And
8  that's just not satisfactory to us. We want the two individuals
9  involved brought here at Vivendi's expense.
10       THE COURT: The two people being the one who sent the
11  email and the one who received it?
12       MR. QUACKENBUSH: Right. Mr. -- I'm sorry, Jason.
13  Thanks. Mr. Kwon and Mr. Jungwon Hahn, H-a-h-n. And, you know,
14  our feeling is that when something happens and you want to find
15  out what happened, you talk to the people who know, rather than,
16  you know, getting some filtered version of the official story.
17  We think we need to get this resolved right away.
18       THE COURT: What's your position?
19       MS. FOY: Your Honor, to an extent Mr. Quackenbush's
20  account of the incident is accurate. We were informed of the
21  belief there had been a destruction of some emails.
22       THE COURT: Sorry.
23       MS. FOY: We informed Valve's counsel we would conduct
24  an immediate investigation. We conducted an internal
25  investigation, a preliminary investigation, and believed that

1  there was an issue of deletion of some emails, but that they were
2  backed up and the copies existed.
3      On further investigation, we believe that the problem might
4  be more significant, and we decided at that point to retain an
5  independent investigator. We informed them that we would upon
6  the completion of the investigation provide either a 30(b)(6)
7  witness or a percipient witness, but that that would await the
8  completion of the investigation.
9      That's where things stood, and then we found ourselves
10 confronted with a motion to compel, which was premature, in that
11 the issue had never been brought to the Court. We have
12 repeatedly informed counsel that the investigation is under way,
13 it is not yet complete, and when it is complete, we will know the
14 scope of the potential witnesses.
15     We're also conducting a forensic analysis of the hard drives
16 to determine what, if anything, was deleted and whether it can be
17 recovered. But all of that awaits the findings of our
18 independent investigator.
19         THE COURT: Give me some idea of what -- who is the
20 independent investigator?
21         MS. FOY: They are counsel we've retained in Korea.
22         THE COURT: They're Korean counsel?
23         MS. FOY: Yes, they are. And we expect that --
24         THE COURT: And you say they're independent. Have they
25 been employed on some written basis, so there's sort of a letter

6

1  directing what they do and how they do it?
2          MS. FOY:  There is an engagement letter.
3          THE COURT:  And has that been produced?
4          MS. FOY:  No, we -- again, Your Honor, we just received
5  this motion to compel from Valve.
6          THE COURT:  Well, is there any reason why that should
7  not be produced to plaintiffs' counsel?
8          MS. FOY:  No, there is no reason it can't be.
9          THE COURT:  All right.  Let's produce the letter.  So
10 the letter of engagement, or letters, or agreements of engagement
11 should be produced.
12      Now, it's not satisfactory that you just tell me that when
13 the investigation is complete something further will happen.
14 First, timingwise, what are we talking about?
15         MS. FOY:  They're conducting investigations and
16 interviews of the key witnesses who've been identified to date.
17 We don't know what further employees will have to be interviewed
18 and we don't know the scope of the forensic analysis that will
19 have to be done.
20      We expect that -- we informed them that we would like the
21 investigation done promptly and efficiently.  And they began, I
22 believe, on September 8th, and we expect that if there are no
23 further interviews to be conducted, they should be completed
24 within the next two to three weeks.
25         THE COURT:  Well, we're steaming up on -- this is a

1   pretty serious issue, if indeed evidence was destroyed.  I can't
2   imagine that I would not permit Mr. Quackenbush to take the
3   depositions of the percipient -- in other words, the person who
4   sent the email, the person who received it, at the very least,
5   together with a 30(b)(6) witness.
6       Can a corporation designate as a 30(b)(6) witness someone who
7   is an independent lawyer that's been hired?  Normally the
8   corporation identifies a person in the corporation who is the
9   speaking agent.  I suppose that the corporation could designate
10  someone else as a speaking agent, but I've never seen it.
11      Have you even thought about that problem?
12          MR. QUACKENBUSH:  I haven't seen it, and the problem
13  with that is that this is a lawyer who's employed by Vivendi.
14          THE COURT:  I understand.
15          MR. QUACKENBUSH:  And I don't know who these folks are,
16  and I assume they're honorable folks, but their client is
17  Vivendi.  I assume if this person shows up to testify, and I'm
18  asking about who said what to whom, they're going to have the
19  same problem we had with Mr. Tan, which is the subject of one of
20  our motions to compel.
21          THE COURT:  These people are lawyers that your company
22  has hired?
23          MS. FOY:  Yes, Your Honor.  It's precisely the opposite.
24  We felt it was extremely important to hire an independent
25  investigator outside the company who would not be an interested

8

```
 1  party with respect to the --
 2         THE COURT:  Well, but would there be any later claim of
 3  a privilege between the investigator attorney and the company?
 4         MS. FOY:  No, that's precisely what we contemplated.
 5  They're conducting an independent investigation.  Their
 6  communications with the witnesses will not be protected by
 7  privilege or work product.
 8         MR. QUACKENBUSH:  One other point, Your Honor, about
 9  these two fellows.  They're also percipient witnesses on our
10  claims.  I mean, these are the country manager for Korea.  Korea
11  is the biggest market in the world, biggest cyber-cafe market in
12  the world.  So these guys have a lot of other information that --
13  we had asked for their depositions separately, you know, and --
14         THE COURT:  Is there any reason why that shouldn't
15  proceed?
16         MS. FOY:  Well, we're not willing to fly them to Seattle
17  for their individual witness depositions, and we've informed
18  counsel --
19         THE COURT:  Well, it seems to me that one possibility is
20  that you get on a plane and go to Korea.
21         MR. QUACKENBUSH:  That's one possibility.
22         THE COURT:  And if you learn through that discovery that
23  documents have been destroyed, one of the possible sanctions --
24  and I don't mean to limit it to this -- but would be your cost of
25  travel.
```

9

```
 1        MR. QUACKENBUSH:  That's right.
 2        THE COURT:  And time to take the deposition.  Another
 3  alternative is to bring these people to Seattle, permit the
 4  deposition, and reserve on who's going to pay for it until we
 5  sort out what's going on.
 6        But it seems to me that if documents have been destroyed,
 7  it's likely the Court is going to order some sort of sanctions,
 8  and one of the sanctions, but not the only sanction, would be the
 9  costs of getting to the bottom of the problem.
10        If that means the cost of taking people involved, if that
11  means a 30(b)(6), or the investigator, or both -- is it cheaper
12  for him to fly to Korea or for the witness to come here?  I mean,
13  what are the pros and cons of where we take the deposition?  I
14  think other than --
15        MR. QUACKENBUSH:  Yes.
16        THE COURT:  -- other than this problem, I take it you
17  were expecting you'd have to go to Korea, you'd probably have to
18  go anyway.
19        MR. QUACKENBUSH:  Well, we have several witnesses from
20  the Vivendi's Asia division that we'd like to talk to.  We
21  suggested -- we approached counsel -- why don't we bring them
22  here.  It's much cheaper to bring them here than have all of us
23  troop over there.  That's just -- that was unrelated to this
24  problem.  It's just me trying to be practical.
25        THE COURT:  Have you sorted through that yet?
```

```
 1            MR. QUACKENBUSH:  They didn't like that, so --
 2            THE COURT:  How about Hawaii?
 3            MR. QUACKENBUSH:  That would be good, too.
 4            THE COURT:  Or some intermediate place.  Then everybody
 5   has to travel.
 6            MR. QUACKENBUSH:  This is getting better.  That's even a
 7   better suggestion.
 8            MS. FOY:  They intend to note depositions from witnesses
 9   around the world, not just from Asia.
10            THE COURT:  I understand.
11            MS. FOY:  But with respect to Your Honor's initial
12   suggestion, I think it's premature to make a decision about who
13   should be flown where, because we don't know who the witnesses
14   are, who the percipient witnesses might be, and that is precisely
15   the scope of the investigation.
16            THE COURT:  All right.  I understand there's an ongoing
17   investigation.  Have you committed to providing the report --
18   does the engagement letter require this outside independent
19   investigator to provide a written report?
20            MS. FOY:  We haven't specified a written report, but
21   what we have offered to do is to produce the investigator as a
22   30(b)(6) witness on the subject of the alleged document
23   destruction by Korean employees.
24         Again, the scope is not known.  As far as we know,
25   destruction, if it occurred, is limited to lower-level employees.
```

1  The country manager did not give a directive and did not himself
2  destroy documents.
3          THE COURT: But I think Mr. Quackenbush is entitled to
4  do his own investigation of this issue. And I'm not sure that he
5  has to wait until your person gets done doing whatever they're
6  doing.
7      I mean, I can conceive of those people doing an
8  investigation, maybe issuing an oral report, not even a written
9  report, and then you produce him, and he maybe has or doesn't
10 have notes of people he's talked to, Mr. Quackenbush may or may
11 not be satisfied with the scope of the investigation, or who they
12 talked to.
13     I mean, I just think we're -- I think it's unlikely, frankly,
14 that -- particularly with this all occurring in a foreign
15 country, with -- and we don't know the relationship between your
16 client and this other firm. You tell me it's independent. I'll
17 take that at face value. But, nevertheless, it may be less than
18 satisfactory to the plaintiffs.
19     I'm inclined -- and it's an important issue, and it involves
20 a lot of expense, so I want to get your reaction. But I'm
21 inclined to say to Mr. Quackenbush and to the defense that he can
22 go to Korea and he can take those depositions now.
23     And if in the discovery process we learn that there was
24 meaningful destruction of documents or other bad things that
25 occurred that shouldn't have occurred, that all or a portion of

```
 1   his expenses will be assessed against the defendants.
 2        If he comes up with nothing, then -- I assume in the normal
 3   course I probably wouldn't be in a position to order their
 4   witnesses from Korea to come here.  I mean, it might be a nice
 5   thing to do in terms of all the lawyers being here, but I think
 6   that if you're going to sue people who do business in Korea, you
 7   probably have to go to Korea, don't you, to take their
 8   depositions?
 9             MR. QUACKENBUSH:  I think that's right.  And certainly
10   we'll do that.  I was just trying to save everybody some expense.
11   I mean, we're going to troop a bunch of lawyers and a court
12   reporter and a translator and everybody else over there.
13        But, you know, on the document destruction issue, though, it
14   seems to me like we're not really -- there isn't really any
15   dispute the documents were destroyed, and it seems to me like one
16   of the -- one of the appropriate sanctions would be that the two
17   actors that we know about come here and give their depositions
18   here in the near time, because we're kind of running out of time.
19             THE COURT:  Well, but you tell me that both these people
20   are key witnesses that you're going to have a lot of other things
21   to discuss with of them.
22             MR. QUACKENBUSH:  That's right.
23             THE COURT:  Are there other things that you would be --
24   or could do in Korea at the same time.  I know one of the issues
25   is should discovery on some of these things go forward in light
```

13

1   of the pending motions for partial summary judgment.  And maybe
2   we should move to that, just to get a flavor for the problem and
3   the issues.
4           MR. QUACKENBUSH:  To answer your question, sure, there
5   are -- if we're going to go, I would want to get everybody done
6   that we need to do.
7           THE COURT:  Sure.
8           MR. QUACKENBUSH:  Sure.  That's absolutely true.
9           THE COURT:  And are you in a position now to do that, or
10  are you needing to get document production and the like before
11  you take the depositions?
12          MR. QUACKENBUSH:  Well, that's a whole other question.
13  I have a lot to talk about with regard to Vivendi's document
14  production either today or some other time, when it's more
15  convenient.
16      But we'll go now, because we're running out of time.  And I'm
17  worried that we're going to -- you know, we're getting pushed
18  back up against our discovery cutoff.  This is the biggest --
19  this is where the most infringer profits were earned.  And I can
20  see why these fellows -- I don't know, but I'm going to speculate
21  these fellows would have a motive to destroy documents, because I
22  think they know that they weren't supposed to be doing what they
23  were doing, and that there's big money involved.
24      Now, that's just me talking.  Maybe I can prove that, maybe I
25  can't, but I can't -- I don't have the opportunity unless I go,

```
 1  and so we need to go as soon as possible.
 2          THE COURT:  Do you want to talk about -- the other
 3  motions, I think, are noted for October 8th, or October 1st,
 4  perhaps.  Are they all noted for October 1st?
 5          THE LAW CLERK:  I think the 8th.
 6          THE COURT:  The 8th.
 7          MR. QUACKENBUSH:  The 8th are the summary judgment.
 8          THE COURT:  Defendants' motion for partial summary
 9  judgment noted October 8th.  Defendants' motion for partial
10  summary judgment re contractual rights, October 8th.  And then
11  the plaintiffs' cross-motions are also noted for the same date.
12  So everything is noted for the 8th.
13          MR. QUACKENBUSH:  Right.
14          THE COURT:  As a practical matter, I'm going to be out
15  of the district for two weeks in the middle of October.  I'm
16  probably not going to get to those motions and resolve them until
17  early November.  You've got a discovery cutoff of November 18, I
18  think.
19          MR. QUACKENBUSH:  Correct.
20          THE COURT:  We may have to adjust that.  We may have to
21  adjust the trial date.  But I think that discovery has to go
22  forward.  The fact that -- I mean, I haven't seen -- I haven't
23  looked at, because you've got a noting date of October 8th --
24  presumably they were just recently filed.  But we looked at that
25  issue, didn't we?  Was it a motion for a preliminary injunction,
```

# Preston|Gates|Ellis LLP

Jason P. Holtman
jasonh@prestongates.com
direct tel: (206) 370-8397
direct fax: (206) 370-6087

September 20, 2004

**VIA FACSIMILE**
**ORIGINAL VIA U.S. MAIL**
Linda Q. Foy, Esq.
Sarah M. King, Esq.
Howard, Rice, Nemerovski, Canady, Falk & Rabkin, PC
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111

Re: Valve v. Sierra, et al.

Dear Linda and Sarah:

On August 27 we wrote you asking for deposition dates for certain Vivendi personnel. We have had no response to this letter. Please provide us with available dates for these witnesses as soon as possible. We intend to start with Mr. Kwon and Mr. Hahn in Korea and would like to take their depositions during the week of October 3.

To efficiently make use of our time in and travel to Asia Pacific, please provide consecutive dates beginning the week of October 3 for the following Vivendi personnel located in Singapore, namely Hubert Laurenaudie, Franck Villet, Chloe Rothwell, Deanna Erickson, and Mark Warburton. Additionally, please provide dates for the deposition of Michael Fong during that same time period and let us know where you propose that his deposition take place.

Very truly yours,

PRESTON GATES & ELLIS LLP

By
Jason P. Holtman

JPH:lg

A LAW FIRM | A LIMITED LIABILITY PARTNERSHIP INCLUDING OTHER LIMITED LIABILITY ENTITIES

925 FOURTH AVENUE, SUITE 2900  SEATTLE, WA 98104-1158  TEL: (206) 623-7580  FAX: (206) 623-7022  www.prestongates.com
Anchorage  Coeur d'Alene  Hong Kong  Orange County  Portland  San Francisco  Seattle  Spokane  Washington, DC

17

```
09/20/2004 11:04 FAX 2066237022        Preston Gate & Ellis                    @001
```

```
                    ***********************
                    ***  MULTI TX/RX REPORT  ***
                    ***********************
TX/RX NO            2038
PGS.                2
TX/RX INCOMPLETE    (2)   15740#3606300014#4152175910
TRANSACTION OK      (1)   15740#3606300014#6237789          26 gage
ERROR INFORMATION   -----
```

# Preston|Gates|Ellis LLP

**FAX COVER SHEET**

| TO: | COMPANY: | FAX NO: | CONF. NO: |
|---|---|---|---|
| Michael R. Scott | Hillis Clark Martin & Peterson | (206) 623-7789 | (206) 623-1745 |
| Linda Q. Foy/Sarah King | Howard, Rice, Nemerovski | (415) 217-5910 | (415) 434-1600 |

**FROM** Jason Holtman/Karl Quackenbush/Kristin Boraas    **RE:** #36063-00014
                                                              Valve v. Sierra and Vivendi

**DATE:** September 20, 2004    **TOTAL NUMBER OF PAGES INCLUDING THIS COVER**    2

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE CONTACT:    [X] FAX OPERATOR: (206) 623-7580
                                                           [ ] NAME:
                                                           EXT:

**COMMENTS**