Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VALVE CORPORATION, a Washington corporation,<br><br>                        Plaintiff,<br><br>v.<br><br>SIERRA ENTERTAINMENT, INC. (AKA SIERRA ON-LINE, INC.), a Delaware Corporation; VIVENDI UNIVERSAL GAMES, INC., a Delaware Corporation; and VIVENDI UNIVERSAL, S.A., A French foreign corporation,<br><br>                        Defendants. | No. C 02-1683Z<br><br>**VALVE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF SOURCE CODE AND FOR ENTRY OF AMENDMENT TO STIPULATED PROTECTIVE ORDER GOVERNING PLAINTIFF'S SOURCE CODE**<br><br>**Noted for: October 1, 2004** |
| SIERRA ENTERTAINMENT, INC. (AKA SIERRA ON LINE, INC., a Delaware corporation; and VIVENDI UNIVERSAL GAMES, INC., a Delaware corporation,<br><br>                        Counter-Claimants,<br><br>v.<br><br>VALVE CORPORATION, a Washington Corporation, GABE NEWELL and LISA MENNET NEWELL, husband and wife, and the marital community composed thereof; and SCOTT LYNCH and JULIE LYNCH, husband and wife, and the marital community composed thereof,<br><br>                        Counterclaim Defendants. | **ORAL ARGUMENT REQUESTED** |

OPPOSITION TO MOTION TO
COMPEL PRODUCTION OF
SOURCE CODE- 0
C 02-1683Z

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## I.  SUMMARY

Valve has no issue with producing its source code to Vivendi. However, the security of its source code is a preeminent concern to Valve. Valve's source code is its most valuable asset, and—as evinced by last October's hack of Half-Life 2 source code—a desirable target for sophisticated hackers worldwide. Valve is, and has been, willing to produce the requested source code in electronic format, so long as production is subject to two reasonable precautions: (1) the source code is not compiled into executable form; and (2) the source code remains under secure conditions in the offices of Vivendi's counsel. Neither of these restrictions will impair Vivendi's intended use of the source code. Both are sensible precautions that are necessary to ensure the security of Valve's source code, and Vivendi has offered no explanation as to why such measures are unworkable.

Vivendi's request for sanctions misrepresents the facts. Valve has been very clear that, although the source code is of questionable relevance, it was willing to produce it in native electronic format. Declaration of Karl Quackenbush ("Quackenbush Dec"), ¶¶ 7, 9. At a July 30, 2004 hearing on this matter, the Court recognized the importance of protecting Valve's source code and asked the parties to meet and confer about a "very strict" and "very narrow" protective order. Id. ¶ 8, at pp. 25-28. On August 12, after conferring with Vivendi, Valve prepared and forwarded to Vivendi a proposed Amendment to the Protective Order that provided safeguards for Valve's production of source code. Id. ¶ 9, at pp. 29-35. In stating that Valve is "refusing to produce the source code in native electronic format," Vivendi's motion deceptively omits the fact that Valve sent a proposed stipulation in a timely fashion. Def. Mot., at p. 8. Further, Vivendi neglects to disclose that, after receiving Valve's proposed stipulation on August 12, it did not respond at all for nearly a month. Quackenbush Dec, ¶ 10, pp. 36-39. Valve received no response from Vivendi until September 7 and, upon Valve's request for an explanation as to specifically *why* the two safeguards were unworkable,

OPPOSITION TO MOTION TO
COMPEL PRODUCTION OF
SOURCE CODE- 1
C 02-1683Z

K:\36063\00014\KJB\KJB_P20UL

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

received no response whatsoever. Id. Now—in an apparent effort to wrongly portray Valve as "recalcitrant" and thereby mask its own discovery deficiencies and deflect attention from Valve's Third Motion to Compel—Vivendi is manufacturing a problem that does not exist. Vivendi's motion should be denied.

## II.   STATEMENT OF FACTS

Vivendi has requested that Valve produce its source code for several of its games, including Half-Life, Counter-Strike: Condition Zero, Half-Life 2, Half-Life 2 Xbox, and Team Fortress 2 as well as source code for Steam, Valve's online registration, administration, anti-piracy, and distribution system. See Declaration of Linda Foy ("Foy Dec"), ¶ 5. Vivendi has asked that the source code be produced in digital or "native" form —as opposed to printed form—and that Valve's production include the pre-released development version of the source code for these games. See Quackenbush Dec., ¶ 5. With the exception of Half-Life 2, all of the source code Valve seeks is for games that have already been released. Id. Vivendi apparently believes that the requested source code is somehow relevant to its claim that Valve did not work diligently to develop these games, notwithstanding the fact that all of the referenced games (except Half Life 2) have already been released for retail distribution by Vivendi and are currently providing Vivendi with substantial revenue.[1] Id. Further, Valve has recently delivered a release candidate version of Half-Life 2 to Vivendi; the game is anticipated to be one of the greatest computer games ever produced. Id. Vivendi's claims regarding diligent efforts to create these games is simply hollow.

Nonetheless, Valve is, and has been, willing to produce its source code to Vivendi. During discussions in July 2004, Valve agreed to produce the requested source code in native

---

[1] The agreement between the parties provides that Valve controls the schedule for development and delivery of its games to Vivendi for retail distribution. There is no due date or delivery schedule in the Software Publishing Agreement. Development of the games is funded entirely by Valve. Provisions of the parties' agreement relating to delivery schedules is discussed in the Court's June 16, 2004 Order granting Valve's motion to dismiss Vivendi's fraud claims. See Quackenbush Dec., ¶ 6, n.1, pp. 9-24.

OPPOSITION TO MOTION TO
COMPEL PRODUCTION OF
SOURCE CODE- 2
C 02-1683Z

K:\36063\00014\KJB\KJB_P20UL

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

electronic format but, in order to provide security measures for its protection, asked that Vivendi agree to certain modifications to the Protective Order that would protect this valuable intellectual property. Id. ¶ 7. Vivendi, however, refused to agree to such modifications. Id. During a July 31, 2004 teleconference, the parties discussed Valve's production of source code with Judge Zilly. Judge Zilly agreed that a "very strict protective order is probably appropriate for the source code" and directed the parties to meet and work out an effective protective order. Id. ¶ 8, at pp. 25-28.

On August 12, Valve transmitted a proposed protective order to Vivendi's counsel.[2] Vivendi's counsel did not respond to Valve's proposal for nearly a month, finally responding in a September 7 letter that Valve's proposal was "generally acceptable." Id. ¶ 10, at pp. 36-39. Vivendi, however, contested two of the proposal's provisions: (1) the provision requiring that the source code remain secured at counsel's offices and (2) the provision prohibiting compilation of the source code into executable form. Id. ¶¶ 10, 11. These objections were repeated during a September 9 telephone conference between the parties. Id. ¶ 11.

During the September 9 telephone conference, Valve pointed out that such restrictions were common and asked for Vivendi's assistance in understanding Vivendi's objections. Id. ¶ 12. In attempting to defend its objection to restricting the source code to its offices, Vivendi's counsel stated that it might be necessary for an expert to bring the source code to his "laboratory" to examine it with special "tools". Id. Valve responded that the only tools it was aware of for examining source code were software tools, which the expert could typically load on his laptop and thus not require moving the source code to a "laboratory". Id. Valve creates its source code with available off-the-shelf materials. It is simply at a loss to conceive of any non-portable, specialized hardware and tools that are described by the defendants. When pushed for further explanation, Vivendi's counsel was unable to specify what tools

---

[2] A copy of the proposed order is attached to the Quackenbush Dec, ¶ 9, pp. 29-35.

OPPOSITION TO MOTION TO
COMPEL PRODUCTION OF
SOURCE CODE- 3
C 02-1683Z

K:\36063\00014\KJB\KJB_P20UL

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

would be used by its expert, or why such tools could not simply be loaded on the expert's laptop computer and brought to counsel's office. Id. Valve stated to Vivendi's counsel that it would be willing to consider the issue further if Vivendi could explain why the proposed restriction was impractical. Id. ¶ 13. Vivendi's counsel indicated that she would consult with its expert and determine whether the restrictions were truly impractical. Id. To date, Valve has heard nothing further from Vivendi's counsel. Id.

Valve also requested that Vivendi's counsel explain why it would be necessary for Vivendi to compile the source code[3]—since examining *un*compiled source code would provide Vivendi with the information it claimed to need regarding the progress of development.[4] Id. ¶ 14.

Half Life 2 is one of the most eagerly anticipated computer games of all time, and there is intense interest in Half Life 2 within the gaming community. Id. In October 2003, a hacker invaded Valve's network and stole a version of the Half Life 2 code then under development. Id. Portions of this code were posted on the Internet by the hacker, and Valve incurred substantial expenses in its effort to halt the proliferation of the code and have the code removed from various Internet sites. Id. Valve explained to counsel that, while a leak of source code would be harmful, any leak of a compiled, playable version of the program would

---

[3] The source code of a computer program consists of the programming language incarnation of the program. It is, in essence, the complete specification of the program, including the instructions structure and the design of the program. The source code file in its native state can be thought of as a complete book of programming logic and instructions contained in text files. Source code is ordinarily held in the strictest confidence by its owners and is not publicly distributed. That is certainly the case with Valve's source code, which is the subject of defendants' motion to compel and is highly valuable intellectual property.

To run a program on a personal computer, the source code must be translated into object code. Object code is the program put into a form that is readable by the computer but indecipherable to humans. The object code version of the program is what is distributed to end users to run on their computers. In order too transform source code into object code, it is necessary to run the source code through a software tool called a "compiler." Another software tool called a "linker" creates required connections between the executable program and any library of other files needed to complete the program, such as sound files or graphics files. A diagram of the compilation process is set out at Quackenbush Dec. ¶ 4. By running the source code through a compiler, the code is turned into an executable program—a program that would be no different than the software that one would purchase at a store.

[4] The source code, after being compiled, is no longer readable; it can only be run (like any other program).

OPPOSITION TO MOTION TO
COMPEL PRODUCTION OF
SOURCE CODE- 4
C 02-1683Z

K:\36063\00014\KJB\KJB_P20UL

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

result in wide dissemination over the Internet. Id. This would be harmful to Valve because executable code is usable by end users and would not require the technical knowledge and time needed to compile the source code into a usable version of the software. Id. Once again, Valve indicated to Vivendi that it would be willing to discuss the compilation restriction further if Vivendi could explain the practical reason why compiling would be necessary, or why compiled source code would provide relevant information otherwise unascertainable from uncompiled source code. Id. Counsel offered no explanation, and, until Vivendi filed the instant motion, Valve heard nothing further from counsel on the subject. Id.

### III.   ARGUMENT

**A.   Compiling Valve's Source Code is Unnecessary and Despite Repeated Requests from Valve, Vivendi Has Not Articulated a Compelling Reason to Do So.**

Valve has already agreed to produce its source code in native electronic format. Quackenbush Dec., ¶ 9, pp. 29-35. Yet despite Valve's attempts to secure reasonable protections for its release, Vivendi now maintains that, in order to verify the timing, diligence, and quality of Valve's development, its experts must be able to compile the source code. Def. Mot. p. 5. Notably, Vivendi's explanation goes no further than this flat statement. No facts or expert testimony supporting Vivendi's argument are provided. Vivendi has never explained to Valve, nor the Court, why its experts require compiling the source code, nor why compiling source code could lead to information not already ascertainable from uncompiled source code.

Vivendi's claim that it needs to be able to compile Valve's source code is entirely unsupported, indicative of Vivendi's fundamental misapprehension of the readability of source code and the value of compiling. *Un*compiled source code provides the means to actually read the code and track its development. The status and progress of a game, the timing of development, and the changes made from previous stages of development—all of

OPPOSITION TO MOTION TO
COMPEL PRODUCTION OF
SOURCE CODE- 5
C 02-1683Z

K:\36063\00014\KJB\KJB_P20UL

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

these will be apparent to Vivendi from reading uncompiled code. Moreover, even if Vivendi were able to ascertain information from compiled code, Vivendi would learn nothing more from *running* the source code than from *reading* the source code. There is simply no need for Vivendi to compile Valve's source code—and certainly not enough of a need to outweigh the security risks.

Vivendi's inability to articulate its need to compile source code is unreasonable given that Valve's games are among the most popular in the world. The October 2003 hack of an unfinished version of the Half-Life 2 code and its subsequent proliferation on the Internet is evidence of the popularity of Valve games (as well as the sophistication of potential hackers). A compiled, playable version of Valve's game could be disseminated quickly and widely via the Internet, and—especially if the source code were from a finished but unreleased game (such as Half-Life 2)—would cause damage to Valve. There is simply no reason why Valve should be subject to such a considerable—and unnecessary—risk.

If Vivendi could articulate and discuss why compiling the source code is necessary (for each game and for Steam), Valve would be willing reconsider its position on this matter. Of course, if the Court ultimately allowed some source code to be compiled, it would be of even greater importance that the access to the code be limited as requested below.

**B.    Limiting Access to Valve's Source Code to the Offices of Vivendi's Counsel is Reasonable.**

Valve seeks a protective order that appropriately limits access of its source code to the offices of Vivendi's counsel. Considering the value of the source code, the ease of mass proliferation, and the sophistication of interested hackers, it is only reasonable that Vivendi agree to minimize security risks in such a manner. There is no reason why Vivendi's experts cannot perform their analysis on counsel's premises, nor is there any reason why the burdens of being limited to counsel's office could possibly outweigh the security risks. The potential

OPPOSITION TO MOTION TO
COMPEL PRODUCTION OF
SOURCE CODE- 6
C 02-1683Z

K:\36063\00014\KJB\KJB_P20UL

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

of a leak or a hack is simply too great, especially when considering the minimal burdens imposed upon Vivendi by such a restriction.

Allowing Valve's source code to be loaded in different parts of the country, without supervision, and onto various systems containing unknown security protections is an obvious and enormous risk. Vivendi apparently expects Valve to blindly trust that its experts will always take sufficient security precautions, but this is a dangerous and unsupportable presumption. A mere assertion that Vivendi's experts inherently "understand" the importance of security does not necessarily make their systems and practices sufficiently secure. Given the value of Valve's source code, it is prudent to keep it confined to a controlled and secure single computer (that has no network or Internet connection) in the offices of opposing counsel. Moving the code between computers via disk or networks is unnecessary and inappropriate—every copy made increases the likelihood that a leak, hack, or disclosure might take place.

Furthermore, in addition to the dangers involved, it is simply unnecessary for Vivendi's experts to examine Valve's source code outside of counsel's office. Ever since it rejected Valve's proposed protective order on September 7, Vivendi has provided nothing but vague and conclusory explanations as to why its experts cannot review Valve's source code on counsel's premises. Vivendi claims that "highly-specialized equipment and software" is necessary, but—in addition to failing to specify the type of equipment and software required—Vivendi has never explained why such equipment and software cannot be brought to Howard Rice's offices. See Def. Mot. at p. 7; Quackenbush Dec., ¶ 13. Valve should not be forced to expand access to its source code and thereby increase the risk of a leak or a hack based on vague and purely conclusory explanations.[5]

---

[5] Indeed, the only explanation provided by Vivendi with any degree of specificity is that one of its likely experts resides in a different part of California and "has family commitments that do not permit long absences from home." Def. Mot., at p. 7. Vivendi does not explain why it cannot locate suitable experts within the Bay Area

OPPOSITION TO MOTION TO
COMPEL PRODUCTION OF
SOURCE CODE- 7
C 02-1683Z

K:\36063\00014\KJB\KJB_P20UL

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Absent any specific or viable explanation as to why its experts cannot review the source code at Howard Rice's offices, Vivendi has not shown that such a burden could possibly exceed the security risks. Valve has repeatedly asked Vivendi to support its objections with a reasonable level of specificity, but—even after filing the instant motion—Vivendi remains unable to do so.

### C. Vivendi's Claim That Sanctions Are Warranted is a Meritless Claim That Misstates the Court's Instructions and Valve's Willingness to Produce Its Source Code.

Vivendi's claim that Valve has defied an order of the Court is false. Contrary to Vivendi's assertions, the Court required Valve to produce its source code only when "very strict" and "very narrow" security precautions were mutually agreed upon:

> THE COURT: You know, *I think a protective order, <u>a very strict</u> protective order, is probably appropriate for the source code.*
>
> . . . .
>
> MALE VOICE ON SPEAKERPHONE [Karl Quackenbush]: We don't have a problem giving it in native format. I'm not really sure – I think we've already discussed this. But, you know, the problem is just make sure it stays – you know, it stays put. It's –
>
> THE COURT: All right. Well, *work out a protective order that's <u>very narrow</u> and identify specifically who gets to see it.* And, you know, it seems to me we're talking the attorneys, one or two people in the company, and maybe one expert witness who are all identified. And you guys know how to do protective orders. See if you can't work that out.
> But it sounds like plaintiff is willing to produce it in electronic form, in its original, native form or whatever you call it.

Quackenbush Dec., ¶ 8, at pp. 25-28. (Transcript of July 30, 2004 Hearing, 26:6 – 27:18) (emphasis added).

Adhering to the Court's instructions, Valve sent Vivendi a proposed protective order

---

but, regardless, it is untenable to claim that Valve's most valuable assert should be put at increased risk because a single individual does not wish to fly back and forth from Los Angeles and San Francisco.

OPPOSITION TO MOTION TO
COMPEL PRODUCTION OF
SOURCE CODE- 8
C 02-1683Z

K:\36063\00014\KJB\KJB_P20UL

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

on August 12, 2004 that, upon agreement, would provide for the production of Valve's source code in electronic and native form. See Quackenbush Decl., ¶ 9, pp. 29-35. The date of this communication is noticeably absent from Vivendi's motion and declarations of counsel, as is the fact that Vivendi did not respond to Valve's proposal for nearly a month. Nevertheless, Vivendi claims that Valve is guilty of "dilatory conduct" and makes the following accusation:

> Valve has engaged in recalcitrant behavior by refusing to produce the source code in native electronic format in the face of a Court order requiring just such production.

Def. Mot., at p. 8. This accusation (1) misstates Valve's documented willingness to produce its source code in native electronic format (subject to security precautions), and (2) implies that the Court ordered such production even without a mutually agreeable protective order. Both accusations are entirely without merit and misstate the actual facts. Vivendi has no basis for its claims of sanction, and its discussion of this matter is substantially less than candid.

## IV. CONCLUSION

Valve respectfully requests that, absent reasonable security precautions, the Court deny Vivendi's Motion to Compel Production of Source Code and instead enter Valve's Proposed Amendment to Stipulated Protective Order to govern access to Valve's source code, which is attached hereto.

DATED this 23rd day of September, 2004.

PRESTON GATES & ELLIS LLP

By  /s/  Karl J. Quackenbush
Karl J. Quackenbush, WSBA #9602
Jason P. Holtman, WSBA # 28233
Kristin J. Boraas, WSBA #32015
Attorneys for Plaintiff
Valve Corporation

OPPOSITION TO MOTION TO
COMPEL PRODUCTION OF
SOURCE CODE- 9
C 02-1683Z

K:\36063\00014\KJB\KJB_P20UL

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on September 23, 2004, I electronically filed the foregoing with the clerk of the Court using the CM/ECF system, which will send notification of such filing to the following,

| | |
|---|---|
| Annette Hurst/Sarah King/Linda Q. Foy<br>Howard Rice Nemerovski Canady<br>Falk & Rabkin, P.C.<br>Three Embarcadero Center<br>7th Floor<br>San Francisco, CA 94111 | Michael R. Scott<br>Hillis, Clark, Martin & Peterson<br>500 Galland Building<br>1221 Second Avenue<br>Seattle, WA 98101-2925 |

/s/    Karl J. Quackenbush
Karl J. Quackenbush, WSBA #9602
Jason P. Holtman, WSBA # 28233
Kristin J. Boraas, WSBA # 32015
Attorneys for Plaintiff
Valve Corporation
Tel: (206) 623-7580
Fax: (206) 623-7022
jasonh@prestongates.com

OPPOSITION TO MOTION TO
COMPEL PRODUCTION OF
SOURCE CODE- 10
C 02-1683Z

K:\36063\00014\KJB\KJB_P20UL

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022