1    The Court concludes parol evidence may be admitted to show fraud-in-the-
2 inducement, if it does not contradict the terms of the written agreement or concerns the
3 subject matter covered by the negotiated terms of the contract. This is consistent with
4 section 573 of the Restatement of Contracts, which provides that fraudulent
5 misrepresentations *not contained in the writing*, which in fact induced the formation of the
6 contract, may render a contract voidable. See also Goel, 259 F. Supp. 2d at 1138 (claims of
7 fraudulent inducement "must not be stretched or inflated in a way that would severely
8 undermine the policy of the parol evidence rule") (citing Caruso, 848 F.2d at 1287) (internal
9 quotes omitted).

10   **2.   Representation of Existing Fact**

11   Evidence of fraud-in-the-inducement must not only not contradict the written
12 agreement, but the statements must also be statements of existing fact. In order to state claim
13 for relief, the plaintiff must also show that the defendant fraudulently misrepresented an
14 existing fact. Segal Co. v. Amazon, 280 F. Supp. 2d 1229, 1232 (W.D. Wash. 2003) (citing
15 Havens v. C & D Plastics, Inc., 124 Wash. 2d 158, 182 (1994)). Promises relating to future
16 performances are not representations of existing facts. W. Coast, Inc. v. Snohomish County,
17 112 Wash. App. 200, 206 (2002).

18   Accordingly, to state a claim for fraudulent misrepresentation, two conditions must be
19 satisfied: (1) the evidence of the alleged prior misrepresentations may not contradict or
20 concern the negotiated terms of a fully-integrated contract; and (2) the alleged
21 misrepresentations must concern an existing fact. Sierra and VUG rely on several statements
22 allegedly made by Valve to support their counterclaim for fraudulent misrepresentation. The
23 Court will address each of these in turn.

24   **a.   Plans to Distribute Games Online**

25   During the negotiation of the 2001 Agreement, Sierra and VUG allege that they were
26 assured that "retail sales would remain the key to [Valve's] strategy." The Court concludes

ORDER  13–

that this is not a representation of an existing fact, but a statement relating to future performances. Next, Sierra and VUG were allegedly told "Valve did not plan to engage in anything other than de minimis distribution games online" and that "Valve had no plans to release a non-retail version of CSCZ." The Court finds these statements to be representations of existing fact. However, the Court finds that these statements concern subject matter covered by the 2001 Agreement.[6]

The 2001 Agreement gives Valve the right to distribute games online, subject to the restriction that Valve could not release the games online before Sierra and VUG released the games into the retail markets. Amended Answer, docket no. 80, Ex. D (2001 Agreement, ¶ 3.11). The agreement is silent regarding the volume of games that Valve could distribute, with the exception of section 5.3 of the 2001 Agreement. Section 5.3 requires Valve to compensate Sierra and VUG for any loss of sales due to Valve's non-retail exploitation (e.g., online distribution) of its games and products. Id., ¶ 5.3. This provision was later deleted from the agreement with respect to Game 3, CSCZ. Id., Addendum 3. However, the amount of games that Valve intended to distribute online was clearly contemplated by the parties and addressed by the 2001 Agreement. "[S]ilence in a final agreement containing an integration clause – in the face of prior explicit representations – must be deemed an abandonment of those earlier representations." Caruso, 848 F.2d at 1287. The 2001 Agreement clearly contemplates and provides for Valve's ability to distribute games online. To allow Sierra and Vivendi to submit evidence relating to the amount of games that Valve was permitted to distribute online would vary, add-to, and contradict the broad grant of authority given Valve by the 2001 Agreement.

---

[6] Valve also allegedly represented that the population of online gamers was three million. This is a statement of an existing fact that is not covered by the 2001 Agreement. During oral argument, Sierra and VUG represented that this statement pertains to Valve's plan to distribute games online. However, Sierra and VUG do not allege that this statement alone induced them to enter into the 2001 Agreement. This single statement, without more, does not support a claim for fraudulent misrepresentation.

ORDER 14–

Sierra and VUG were also allegedly told by Valve that "online is a way to nurture business," that only a fraction of online gamers would be downloading Half-Life 2, and that the online distribution of CSCZ "should not have a material effect on retail sales." These are all statements of opinion or future performances. They are not representations of existing fact and do not support a claim of fraudulent misrepresentation.[7]

### b. Development of Games

Sierra and VUG were allegedly told that "Half-Life 2 could be released that year" and that CSCZ "could be added to the new agreement" and "would be ready for release on October 31, 2001." These are statements of opinion, not statements of existing fact. Valve also exchanged spreadsheets with Sierra and VUG that projected royalties for the sale of Half-Life 2. This is not a fact, but an opinion.

Finally, Sierra and VUG allege that in March 2001, Mr. Lynch represented that "Valve was developing CSCZ" and that Valve "falsely represented that Half-Life 2 and CSCZ were near completion." These are statements of existing fact that relate to the development and delivery of games. Section 2 of the 2001 Agreement states that "Valve will use diligent efforts to continuously develop [the games] to completion" and that "upon Sierra's reasonable request, Valve shall inform Sierra of its then-current development schedule for the games." Amended Answer, docket no. 80, Ex. D (2001 Agreement, ¶ 2, Addendum 3). The 2001 Agreement does not contain an express completion date for the games. Evidence of alleged prior representations regarding the completion and status of these games would add-to and vary the terms of the written agreement. For the reasons discussed previously, these alleged statements may not be used to form the basis for fraudulent misrepresentation.

---

[7] The statement allegedly made by Douglas Lombardi that "Valve didn't have anything going" was made in January 2002, after the 2001 Agreement was executed. Thus, Sierra and VUG could not have relied on, or been induced by, the statement during the negotiation of the 2001 Agreement.

ORDER 15–

1     Sierra and VUG next argue that, even if the statements regarding the games'
2 completion are representations of future events, the representations relating to the completion
3 dates are sufficiently "mingled" with the current state of the development of the game to be
4 actionable. See Horowitz v. Kuehl, 117 Wash. 16, 19 (1921) (false misrepresentations
5 relating to future acts, which are so intermingled with existing fact "as to form an integral
6 part thereof" may be used to support a fraud claim). In Horowitz, the owner of a business
7 had made representations about the value of the business and had stated, inter alia, that "95
8 per cent of the musicians would renew their subscriptions without solicitation." 117 Wash.
9 at 17-18. However, even if representations regarding completion dates were sufficiently
10 mingled with statements of existing fact, the statements are not admissible because, for the
11 reasons discussed previously, they are contrary to the terms of the 2001 Agreement.

## CONCLUSION

    The 2001 Agreement is not a simple sales contract consisting of non-negotiable, boilerplate provisions. To the contrary, it is a complex agreement and the product of months of negotiation between sophisticated parties. The Court finds that Sierra and VUG have failed to state a claim for fraudulent misrepresentation. The Court hereby GRANTS Plaintiff's motion to dismiss Defendants' counterclaim of fraudulent misrepresentation, docket no. 110.

    IT IS SO ORDERED.

    DATED this 16th day of June, 2004.

/s/ Thomas S. Zilly

---
THOMAS S. ZILLY
UNITED STATES DISTRICT JUDGE

ORDER 16–

```
 1                UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF WASHINGTON
 2

 3   VALVE LLC,                        )
                                       )
 4                     Plaintiff,      )  No. C 02-1683
                                       )
 5           v.                        )  Seattle, Washington
                                       )
 6   SIERRA ENTERTAINMENT,             )
                                       )
 7                     Defendant.      )
                                       )

 8

 9      BEFORE THE HONORABLE THOMAS S. ZILLY, DISTRICT JUDGE

10             REPORTER'S TRANSCRIPT OF PROCEEDINGS

11                       JULY 30, 2004

12

13

14   APPEARANCES:

15   For Plaintiffs and counterclaim defendants: KARL QUACKENBUSH

16

17   For Defendants and counterclaimants:         ANNETTE HURST
                                                  LINDA FOY
18

19

20

21

22   Court Reporter:           Laurene Kelly, RDR, CRR
                               1010 Fifth Avenue, Room 600
23                             Seattle, WA  98104
                               (206) 553-1899
24                             Laurene_Kelly@wawd.uscourts.gov

25   Proceedings recorded by mechanical stenography, transcript
     produced by computer-aided transcription.
```

COPY

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED



1    MALE VOICE ON SPEAKERPHONE: Not from me.
2    FEMALE VOICE ON SPEAKERPHONE: No. Thank you, Your
3 Honor.
4    THE COURT: I don't know that there's anything
5 further I can do today. I mean, you know, if I had the
6 questions and the answers and the deposition notice in front of
7 me and we could spend another hour on it, I might have a pretty
8 good fix for you, but I'm not there.
9    So let's go to the letter from Miss Foy. Item one is
10 the production of the source codes re the Valve games. Let me
11 ask the question.
12    As I understand it Valve -- I've ordered production
13 of the source codes. Valve has refused to produce the source
14 code in electronic form. I gather you've produced it in
15 written form but not electronic form. Is that right?
16    MALE VOICE ON SPEAKERPHONE: Well, we haven't
17 produced it at all, and we haven't refused to produce it.
18 We've had some conversations --
19    THE COURT: Let me interrupt, then. Do you have it
20 in electronic form?
21    MALE VOICE ON SPEAKERPHONE: Yes.
22    THE COURT: Why not produce it in that form if that's
23 the way they want it?
24    MALE VOICE ON SPEAKERPHONE: Well, we are going to
25 produce it in electronic form, but we've tried to confer with

them -- I mean this is -- as I'm sure you can understand, this is the most sensitive thing in the company, and we tried to talk to counsel about is there some added protection we could have against disclosure of this, is there some way we could make it, you know, available only to certain people.

THE COURT: You know, I think a protective order, a very strict protective order, is probably appropriate for the source code.

Miss Hurst or Foy, don't you agree with that?

FEMALE VOICE ON SPEAKERPHONE: Your Honor, this is Miss Hurst.

I do agree. In fact, we told Mr. Quackenbush that we would agree to disclose the people in advance to whom the source code would be disclosed and to, you know, limit the number of people who can have access to it.

MALE VOICE ON SPEAKERPHONE: Uh-huh.

FEMALE VOICE ON SPEAKERPHONE: The issue here is that they want to give it to us in a form other than its native form, and that substantially hampers our ability to analyze it for purposes of a number of issues in the case.

What they have said is -- well, first they said they wouldn't give it to us in electronic form at all. Then they said they'd give it to us in some kind of read-only form, and our consultation with our people causes us to believe that that would not allow us to analyze and compile the source code to

1  understand what the different pieces of it do and when they
2  were developed.
3       And so the security measures we have no problem with,
4  but we need them to agree to give it to us in its native format
5  so we can conduct analysis on it.
6       MALE VOICE ON SPEAKERPHONE:  We don't have a problem
7  giving it in native format.  I'm not really sure -- I think
8  we've already discussed this.  But, you know, the problem is
9  just making sure it stays -- you know, it stays put.  It's --
10      THE COURT:  All right.  Well, work out a protective
11 order that's very narrow and identify specifically who gets to
12 see it.  And, you know, it seems to me we're talking the
13 attorneys, one or two people in the company, and maybe one
14 expert witness who are all identified.  And you guys know how
15 to do protective orders.  See if you can't work that out.
16      But it sounds like plaintiff is willing to produce it
17 in electronic form, in its original, native form or whatever
18 you call it.
19      So let's move on to item 2, the privilege log issue
20 and these email chains.
21      How difficult, Mr. Quackenbush, is it to take apart
22 the chains and give 'm the individual emails, which is what
23 they apparently want?
24      MALE VOICE ON SPEAKERPHONE:  I don't think that's
25 what they really want.  I'm not sure why we're arguing about it

# Boraas, Kristin (SEA)

| | |
|---|---|
| **From:** | Boraas, Kristin (SEA) |
| **Sent:** | Thursday, August 12, 2004 2:45 PM |
| **To:** | 'ahurst@howardrice.com'; 'lfoy@howardrice.com' |
| **Cc:** | Quackenbush, Karl (SEA); Holtman, Jason (SEA) |
| **Subject:** | Amendment to Protective Order |

Annette and Linda,

Attached for your review is Valve's proposed Amendment to the Stipulated Protective Order for the production of Source Code.



KJB_P20T4==Amen
dment to Protec...

1



Honorable Thomas S. Zilly

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| VALVE CORPORATION, a Washington corporation,<br><br>                      Plaintiff,<br><br>v.<br><br>SIERRA ENTERTAINMENT, INC. (AKA SIERRA ON-LINE, INC.), a Delaware Corporation; VIVENDI UNIVERSAL GAMES, INC., a Delaware Corporation; and VIVENDI UNIVERSAL, S.A., A French foreign corporation,<br><br>                      Defendants.<br><br>SIERRA ENTERTAINMENT, INC. (AKA SIERRA ON LINE, INC., a Delaware corporation; and VIVENDI UNIVERSAL GAMES, INC., a Delaware corporation,<br><br>                      Counter-Claimants,<br><br>v.<br><br>VALVE CORPORATION, a Washington Corporation, GABE NEWELL and LISA MENNET NEWELL, husband and wife, and the marital community composed thereof; and SCOTT LYNCH and JULIE LYNCH, husband and wife, and the marital community composed thereof,<br><br>                      Counterclaim Defendants. | No. C 02-1683Z<br><br>AMENDMENT TO STIPULATED PROTECTIVE ORDER |

AMENDMENT TO STIPULATED
PROTECTIVE ORDER - 1

K:\36063\00014\KJB\KJB_P20T4

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

30

1   It is hereby stipulated and agreed by and between counsel for the parties that, in
2   addition to the provisions of the Stipulated Protective Order entered by the Court in *Valve*
3   *Corporation v. Sierra Entertainment Inc. (aka Sierra On Line, Inc.), Vivendi Universal*
4   *Games, Inc., and Vivendi Universal* on June 25, 2004, the following shall apply to any
5   document, testimony, or other discovery material encompassed by Vivendi's Requests for
6   Production of Documents, which includes, discusses, or describes any of Valve's computer
7   SOURCE CODE.

9   It is hereby ORDERED as follows:
10  1.   This Order shall be applicable to and govern all computer SOURCE CODE
11  and any related depositions, documents, information or things produced in response to
12  Vivendi's requests for production of documents, answers to interrogatories, responses to
13  requests for admissions and all other discovery taken pursuant to the Federal Rules of Civil
14  Procedure, as well as testimony adduced at trial, matters in evidence and other information
15  which Valve designates as "ATTORNEYS' EYES ONLY – SOURCE CODE."
16  2.   Such SOURCE CODE, to be entitled to the further protections of this
17  Amendment, shall be designated "ATTORNEYS' EYES ONLY – SOURCE CODE."
18  3.   Access to SOURCE CODE produced pursuant to the Amended Protective
19  Order shall be limited to:
20      a.   the outside counsel of record in *Valve Corporation v. Sierra*
21           *Entertainment Inc. (aka Sierra On Line, Inc.), Vivendi Universal*
22           *Games, Inc., and Vivendi Universal*;
23      b.   at any one time, no more than three (3) of the outside consultants, each
24           of whom shall be identified to Valve as requesting access to SOURCE
25           CODE 7 (seven) days in advance of being given access to SOURCE
26           CODE; and

AMENDMENT TO STIPULATED
PROTECTIVE ORDER - 2

K:\36063\00014\KJB\KJB_P20T4

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

    c.  the Court and its personnel with a need to review such SOURCE CODE for purposes of this matter.

  4. Any materials designated as "ATTORNEYS' EYES ONLY – SOURCE CODE" produced pursuant to this Amendment shall be kept in the offices of outside counsel. The secured location shall be identified to Valve, and a single identified outside counsel for Vivendi shall be responsible for maintaining the confidentiality of such SOURCE CODE regardless of the physical storage location. Any independent consultants identified in 2.b may only view the SOURCE CODE at this secured location. All SOURCE CODE shall be kept under lock and key in such a manner as to prevent misappropriation of Valve's intellectual property reflected in the SOURCE CODE, including maintenance of an access log identifying the individuals who have examined such materials and on what date(s). Such log shall be kept confidential. This log shall be provided to Valve at the conclusion of the litigation. Valve may request access to the log at any time. If Vivendi wishes to remove materials designated as "ATTORNEYS' EYES ONLY – SOURCE CODE" from the identified secure location(s) for use as an exhibit in a deposition or at a court hearing, Vivendi shall provide notice to Valve and secure Valve's agreement as to the procedures for removing such material prior to its removal from the offices of outside counsel.

  5. No copy or transmission of SOURCE CODE shall be made. The SOURCE CODE shall not be compiled under any circumstances. The physical unit of SOURCE CODE produced in electronic form may only be loaded on a single, non-networked computer that is subject to the same access restrictions set forth in paragraph 4 above. This computer shall not be connected at any time to the Internet or to the networks of Vivendi or the law firms representing Vivendi in this matter. For purposes of this paragraph, simply loading such material on a permitted computer shall not constitute impermissible copying. Printed copies of portions of the SOURCE CODE are permitted only as necessary to analyze the code for purposes of this matter or to reference it in deposition or court hearings in accordance with the

AMENDMENT TO STIPULATED
PROTECTIVE ORDER - 3

K:\36063\00014\KJB\KJB_P20T4

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  procedures of paragraph 4 above. Any printed copies shall be treated in accordance with this
2  order, shall be limited to only those portions of the SOURCE CODE for which a printed copy
3  is needed at the time, shall be printed on yellow (or some other non-white) color paper, shall
4  be labeled at the time of creation as set forth in paragraph 1 above, and shall be destroyed as
5  soon as they are no longer needed.

6      6.    All SOURCE CODE shall be returned at the conclusion of this litigation and
7  no copies of SOURCE CODE (or any portions thereof) shall be kept, even if portions of the
8  SOURCE CODE appear in court filings. If SOURCE CODE has been loaded on any
9  computer as allowed by paragraph 5, such computer(s) shall be reformatted in such a way that
10 any copy of the SOURCE CODE, including all recoverable copies, shall be destroyed.

11     7.    (a)    Any attorney who actually views SOURCE CODE (or any portion
12 thereof or any abstract, technical description or analysis thereof that reveals the content or
13 substance of the SOURCE CODE) under the Protective Order shall not file in his or her own
14 name, or be directly responsible for or participate in the filing or prosecution of, a patent
15 application relating to the content, such as the algorithms, disclosed in the SOURCE CODE
16 (or any portion thereof or any abstract, technical description or analysis thereof that reveals
17 the content or substance of the SOURCE CODE) actually viewed by the attorney for a 1 (one)
18 year period following the last date on which such person actually viewed such SOURCE
19 CODE materials. Any such attorney who wishes to file in his or her own name, or be directly
20 responsible for or participate in the filing or prosecution of, a patent application relating to the
21 content, such as the algorithms, disclosed in the SOURCE CODE actually viewed by that
22 attorney during a time when this paragraph would otherwise prohibit that activity may do so
23 only with Valve's consent or with leave of the Court. Notice of such intent shall be given to
24 Valve's designated outside counsel and shall be designated as "ATTORNEYS' EYES ONLY
25 – SOURCE CODE" within the terms of this Amended Protective Order.

26     (b)    Vivendi shall identify to Valve all attorneys who actually view

AMENDMENT TO STIPULATED
PROTECTIVE ORDER - 4

K:\36063\00014\KJB\KJB_P20T4

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

33

SOURCE CODE (or any portion thereof or any abstract, technical description or analysis thereof that reveals the content or substance of the SOURCE CODE), and shall identify in the log provided by Paragraph 4, the specific related portions of the SOURCE CODE viewed.

8.  (a)  Any consultant who actually views SOURCE CODE (or any portion thereof or any abstract, technical description or analysis thereof that reveals the content or substance of the SOURCE CODE) under the Protective Order shall not file in his or her own name, or be directly responsible for or participate in the filing or prosecution of, a patent application relating to the content, such as the algorithms, disclosed in the SOURCE CODE (or any portion thereof or any abstract, technical description or analysis thereof that reveals the content or substance of the SOURCE CODE) actually viewed by the consultant for a 1-year period following the last date on which such person actually viewed such SOURCE CODE materials. Any such consultant who wishes to file in his or her own name, or be directly responsible for or participate in the filing or prosecution of, a patent application relating to the content, such as the algorithms, disclosed in the SOURCE CODE actually viewed by that consultant during a time when this paragraph would otherwise prohibit that activity may do so only with Valve's consent or with leave of the Court. Notice of such intent shall be given to Valve's designated outside counsel and shall be designated as "ATTORNEYS' EYES ONLY – SOURCE CODE" within the terms of this Amended Protective Order.

(b)  Vivendi shall identify to Valve all those consultants who Vivendi plans to allow to access the SOURCE CODE (or any portion thereof or any abstract, technical description or analysis thereof that reveals the content or substance of the SOURCE CODE) no less than 7 (seven) days prior to permitting such access, and shall identify in the log provided by Paragraph 4, the specific related portions of the SOURCE CODE viewed.

9.  This Stipulation and Order shall be construed as incorporating additional terms into the existing Stipulated Protective Order. Nothing in this Stipulation shall be read as

AMENDMENT TO STIPULATED
PROTECTIVE ORDER - 5

K:\36063\00014\KJB\KJB_P20T4

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

limiting or nullifying any term or provision of the existing Stipulated Protective Order, and all terms and provisions of the Stipulated Protective Order shall remain in full force and effect. Further, nothing in this stipulation is intended, or shall be construed, as a waiver of Valve's right to contest the relevance or discoverability of any SOURCE CODE in this matter.

IT IS SO ORDERED.

DATED this _____ day of _____, 2004.

```
                                    _____
                                    THOMAS S. ZILLY
                                    UNITED STATES DISTRICT JUDGE
```

Presented by:

PRESTON GATES & ELLIS LLP

By_____
   Karl J. Quackenbush, WSBA #9602
   Jason P. Holtman, WSBA # 28233
   Kristin J. Boraas, WSBA #32015
Attorneys for Plaintiff
Valve Corporation, Gabe Newell
and Lisa Mennet Newell and
Scott and Julie Lynch

Approved as to Form;
Approved for Entry:

HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN

By_____
   Annette L. Hurst (*pro hac vice*)
   Linda Q. Foy (*pro hac vice*)
   Sarah M. King (*pro hac vice*)
Attorneys for Sierra Entertainment, Inc.,
Vivendi Unviersal Games, Inc.
and Vivendi Universal, S.A.

AMENDMENT TO STIPULATED
PROTECTION ORDER - 6

K:\36063\00014\KJB\KJB_P20T4

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

SEP-07-04  12:57PM    FROM-HOWARD,RICE,ET AL  (415)217-5910    +14152175910    T-845  P 02/05  F-151

**HOWARD**
**RICE**
**NEMEROVSKI**
**CANADY**
**FALK**
**& RABKIN**

*A Professional Corporation*

Three Embarcadero Center
Seventh Floor
San Francisco, CA 94111-4024

Telephone 415.434.1600
Facsimile 415.217.5910
*www.howardrice.com*

September 7, 2004

VIA FACSIMILE 206-623-7580

Karl Quackenbush, Esq.
Jason Holtman, Esq.
Preston, Gates & Ellis
925 Fourth Avenue, Ste. 2900
Seattle, WA 98104-1158

    Re:    <u>Upcoming Conference Call On Discovery</u>

Dear Counsel:

    We received Jason's letter of September 3 requesting that we meet and confer prior to Thursday. Unfortunately, Linda is just back from vacation and unable to meet until Thursday at 10:00 a.m. Annette, as you know, is unavailable to meet because she is currently recovering from the delivery of her twins. However, you can certainly speed the meet and confer process if you would identify beforehand, in writing, the problems that you wish to discuss.

    The following is a list of the unresolved problems that we would like to discuss during our call.

    1.    **Production of Source Code In Electronic Form.**

    In the last hearing, the Court ordered Valve to produce its source code. We have repeatedly requested the production of this source code from you in electronic form and have voluntarily agreed to a specialized protective order that would exclude Eric Roeder or other in-house personnel from access to the source code. Your proposed amendment to the Protective Order is generally acceptable, except that we cannot agree that the source code must be kept in the offices of Vivendi's outside counsel. Outside consultants must have the ability to use their facilities and equipment to conduct appropriate review and analysis. Such consultants are well accustomed to handling highly sensitive information and complying with the terms of appropriate protective orders. Similarly, to the extent that propose analysis for purposes of the litigation require

36

SEP-07-04  12:57PM  FROM-HOWARD,RICE,ET AL. (415)217-5910         +14152175910           T-845  P 03/05  F-151

Karl Quackenbush, Esq.
Jason Holtman, Esq.
September 7, 2004
Page 2

some form of compilation, Vivendi's outside consultants cannot be prohibited from doing so.

### 2. Recovery Of Documents From Gabe Newell's Hard Drive.

We have yet to receive an adequate explanation as to why Gabe Newell's hard drive was wiped during the course of this litigation. Moreover, testimony from Valve's 30(b)(6) witnesses indicates that the documents deleted from Mr. Newell's hard drive should have been backed up. We have repeatedly requested that you describe efforts that have been made to date to recover the documents that were destroyed during the course of this litigation.

### 3. Production of Documents Ordered To Be Produced On August 3.

The Court ordered Valve to complete its production of all documents no later than August 3. More than two weeks ago, you assured us that all documents had been reviewed and were with a vendor being processed for production. We nevertheless continue to receive cd's from Valve on a daily basis. Please inform us when your production will be complete.

### 4. Preparation of Valve's 30(b)(6) Witnesses.

I have identified problems with the preparation of Valve's 30(b)(6) witnesses in detail in my letter to you of August 31. We would like to discuss the production of an additional witness or witnesses fully prepared to discuss the topics discussed in that letter.

### 5. Production of Low-Level Documents.

By separate letter, in accordance with previous discussions with you concerning the production of low level documents, we will be providing samples of the types of low-level documents that we would like to exclude form our production, as well as an identification of the higher level documents in which this information can be found. Given the burden involved in producing these documents, we would like to eliminate these low-level documents from our production. We intend to raise this issue with the Court should we fail to reach agreement.

### 6. Investigation Concerning Korean Documents.

The filing of your motion to compel concerning the Korean document issue directly violated the Court's order requiring the Court's permission to raise additional

37

SEP-07-04 12:58PM   FROM-HOWARD,RICE,ET AL (415)217-5910           +14152175910           T-845  P 04/05  F-151

Karl Quackenbush, Esq.
Jason Holtman, Esq.
September 7, 2004
Page 3

discovery issues by written motion. In addition, your motion misrepresents our statements on this topic during our last conference call. At no time did we agree to provide you with a report on this issue by August 20. Moreover, assuming that this was your understanding, you did not even bother to inquire regarding the status of our investigation prior to filing your motion to compel.

During our last conference call, we agreed to provide either a 30(b)(6) witness or fact witnesses on this topic. We have retained an independent consultant for the purpose of conducting a ground-up investigation and analysis of the issue and to perform forensic analysis and data recovery as to any deleted documents or emails. We will produce the investigator as a Rule 30(b)(6) witness regarding the potential destruction of documents in Korea.

We will not agree to translate all foreign language documents—not only because such an undertaking would be staggeringly expensive, but also because translation of all foreign language documents would not serve any relevant purpose, e.g., the Korean language documents include numerous press clippings and communications concerning the release of Counterstrike: Condition Zero. The translation of Korean documents alone would be prohibitively expensive. However, we are willing to discuss a possible cost-sharing agreement for translation of an agreed-upon group of Korean documents related to the apparent deletion of emails.

### 7. Upcoming Individual Depositions.

You have informed us that you intend to note 16 individual depositions during the month of October. We are currently attempting to verify the availability of these witnesses. However, we will not agree to undertake to produce witnesses residing outside of the Seattle area for deposition in Seattle.

Please inform us regarding the availability of the individual deponents identified in my September 3 letter to you.

### 8. Valve's 30(b)(6) Notice.

Your most recent 30(b)(6) notice calls for the production of witnesses regarding dozens of topics, many of which are duplicative of topics addressed by your previous 30(b)(6) notices. We will not agree to prepare witnesses on topics that were already been addressed in your prior 30(b)(6) depositions.

38

SEP-07-04  12:58PM   FROM-HOWARD,RICE,ET AL  (415)217-5910         +14152175910         T-845  P 05/05  F-151

Karl Quackenbush, Esq.
Jason Holtman, Esq.
September 7, 2004
Page 4

### 9. Production of Non-Valve Documents.

We do not believe that you have exhausted the meet and confer process regarding the production of documents dealing exclusively with non-Valve games. We are prepared to discuss a limited production of information concerning non-Valve games.

We look forward to discussing these issues and any others of which you may notify us on Thursday or, if you prefer, a later date.

Sincerely,

Sarah M. King

cc:   Mike Scott

39