The Honorable Thomas S. Zilly

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VALVE CORPORATION, a Washington corporation,<br><br>            Plaintiff,<br><br>    vs.<br><br>SIERRA ENTERTAINMENT, INC. (AKA SIERRA ON LINE, INC.), a Delaware corporation; VIVENDI UNIVERSAL GAMES, INC., a Delaware corporation; and VIVENDI UNIVERSAL, S.A., a French foreign corporation,<br><br>            Defendants. | No. 2:02-cv-01683-TSZ-MAT<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**<br><br>**NOTE ON MOTION CALENDAR: SEPTEMBER 24, 2004** |
| SIERRA ENTERTAINMENT, INC. (AKA SIERRA ON LINE, INC.), a Delaware corporation; and VIVENDI UNIVERSAL GAMES, INC., a Delaware corporation,<br><br>            Counter-Claimants,<br><br>    vs.<br><br>VALVE CORPORATION, a Washington corporation; GABE NEWELL and LISA MENNET NEWELL, husband and wife and the marital community composed thereof; and SCOTT LYNCH and JULIE LYNCH, husband and wife and the marital community composed thereof,<br><br>            Counterclaim Defendants. | |

*Defendants' Reply In Support Of Motion For Protective Order (2:02-cv-01683-TSZ-MAT)*

HILLIS CLARK MARTIN &
PETERSON, P.S.

500 Galland Building, 1221 Second Ave
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants Sierra Entertainment, Inc. ("Sierra"), Vivendi Universal Games, Inc. ("VUG") and Vivendi Universal, S.A. move for a protective order for relief from Plaintiff Valve Corporation's ("Valve's") abusive discovery.

## ARGUMENT

### A. Documents That Do Not Pertain To Valve Products Are Irrelevant To The Claims And Defenses In This Case.

Valve's primary justification for seeking documents pertaining to non-Valve games is based on an allegation—as yet unalleged in its pleadings—that Sierra/VUG are using Valve games to sell non-Valve titles.[1] Valve's Opposition To Defendants' Motion For Protective Order ("Opp.") at 6–7. More specifically, Valve has claimed in motions—but not in its pleadings— that Sierra/VUG "maintained, and continues to maintain, a scheme for forcing its less popular games on customers who want Valve's Counterstrike."[2] *Id*. at 6. However, documents dealing solely with non-Valve games are irrelevant to this claim and fall outside the proper scope of discovery. Fed. R. Civ. Proc. 26(b)(1) (permitting discovery limited to matters that are "relevant to the claim or defense of any party").

Sierra/VUG have produced or will soon produce all non-privileged, responsive documents that pertain to non-Valve games to the extent that the documents also contain information regarding Valve or Valve games. Declaration Of Sarah M. King In Support Of Defendants' Motion For Protective Order ("King Decl.") ¶4. Valve will therefore receive any

---

[1] Valve claims that the discovery of non-Valve documents will provide "evidence of Vivendi's differential treatment of the retail channel versus the cybercafé channel, a distinction that is highly relevant to Valve's claim that Vivendi infringed Valve's copyright . . . ." Opp. at 6 n.4. As discussed in Sierra/VUG's Opposition to Valve's Cross-Motion For Partial Summary Judgment Re Cybercafe Rights, documents reflecting internal shorthand references to the words "retail" and "cyber-café" with respect to Valve games cannot trump a carefully-negotiated contract with uniquely defined terms. Even more certainly still, Sierra/VUG's terminology with respect to *non-Valve* games cannot alter the meaning of the 2001 SPA between Valve and Sierra/VUG.

[2] Valve attempts to support this wholly unjustified allegation with broad hearsay statements made by Michael Dunkle concerning Sierra/VUG's purported interactions with cyber-cafés and the reasons for such actions. Sierra/VUG hereby move to strike Mr. Dunkle's declaration as unsupported by personal knowledge. *See* Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.") Moreover, the email attached as an exhibit to Mr. Dunkle's declaration (hearsay in and of itself) deals with the requirements imposed by a third party distributor called Pulsar, not Sierra/VUG. Declaration Of H. Michael Dunkle In Support Of Valve's Opposition To Defendants' Motion For Protective Order ("Dunkle Decl.") at 5.

*Defendants' Reply In Support Of Motion*
*For Protective Order (2:02-cv-01683-TSZ-MAT)*
*-Page 1 of 7*

HILLIS CLARK MARTIN &
PETERSON, P.S.

500 Galland Building, 1221 Second Ave
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

documents reflecting sales of Valve titles together with non-Valve titles, any comparison of Valve and non-Valve prices or any other sort of document that could possibly tend to show a link between the sale of Valve and non-Valve products. Indeed, all of the examples of the purported scheme cited by Valve in opposition to this motion mention Valve products by name.

The standard for discovery was amended in 2000 in order to curb the type of abusive discovery that Valve seeks here. The limitation of discovery to "relevant" matter addresses situations such as this in which a party "seek[s] to justify discovery requests that sweep far beyond the claims and defenses of the parties." The rule establishes that parties "have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." 2000 Adv. Comm. Notes to Fed. R. Civ. Proc. 26(b)(1). Valve has already strayed far beyond the claims in its complaint with its bundling allegations. Moreover, documents which do not mention Valve products are simply not relevant to Valve's bundling claim and Sierra/VUG should not be forced to produce them under the standard set out in the Federal Rules.

### B. Even If Documents Pertaining Solely To Non-Valve Titles Were Relevant, Valve's Requests Are Overbroad And Unduly Burdensome

#### 1. Production Of All Documents Pertaining To Blizzard Games Would Require A Massive And Time-Consuming Search For Documents Of No Relevance To This Case.

As explained in the opening papers, collection of all documents pertaining to the sale of Blizzard products would require a massive world-wide search for documents similar to the collection and production of Valve documents currently underway. Defendants' Motion for Protective Order ("Mot.") at 1. Moreover, as explained above, because Sierra/VUG are already producing all responsive non-privileged documents relating to both Valve and non-Valve products, Valve will gain nothing from the additional production of non-Valve documents that have nothing to do with Valve games. Valve's opposition does not explain why a massive effort to collect these documents is necessary to prove its case. Rather, Valve argues that Sierra/VUG's apparent assets and revenues combined with Valve's claim for millions of dollars in damages give it the right to impose a staggering discovery burden. It does not. Valve's

*Defendants' Reply In Support Of Motion For Protective Order (2:02-cv-01683-TSZ-MAT) -Page 2 of 7*

HILLIS CLARK MARTIN & PETERSON, P.S.

500 Galland Building, 1221 Second Ave
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

demand for the expenditure of hundreds of thousands of dollars more on discovery because Sierra/VUG's remote corporate parent Vivendi Universal has deep pockets is undisguised discovery abuse.

### 2. Sierra/VUG Should Not Be Forced To Provide Confidential, Proprietary and Trade Secret Information From Its Databases To Valve's COO Scott Lynch.

Valve offers no justification for requiring that Scott Lynch be included on the list of persons who may view confidential database information regarding its key competitors. Sierra/VUG's offer to provide information subject to a modified protective order is reasonable given the highly sensitive nature of the information. Moreover, Valve itself has acknowledged that the current Protective Order is insufficient for the parties' most sensitive information, since Valve itself has asked Sierra/VUG to remove VUG in-house counsel Eric Roeder from the list of people authorized to view Valve's source code.

Valve similarly fails to provide *any* rationale for requiring Sierra/VUG to conduct database searches for non-Blizzard games or for information predating the 2001 Software Publishing Agreement ("SPA") upon which the dispute regarding cyber-café sales is based.[3] *See* King Decl. at 66 (requesting database searches for non-Valve information dating from 1997 to the present). Sierra/VUG's offer to conduct database searches on Blizzard products from the period after the second quarter of 2001 meets Valve more than halfway. *Id*. ¶9.[4]

### 3. Valve's Request For Contracts And "Deal Summary Files" Held By Kirstin Wineke Pertaining To *All* Games Remains Unreasonably Broad.

Although Valve initially requested *all* VUG distributor and agreements and related deal summary files, it has now limited that request somewhat to agreements and deal summary files in Kirstin Wineke's possession. Opp. at 4. Nevertheless, Valve's request remains unreasonably

---

[3] Valve's claims relating to non-Valve products have consistently centered on games produced by Blizzard. *See, e.g.*, Opp. at 7; Valve's Third Motion to Compel Discovery at 7–9.

[4] Valve also claims that the database searches are "fast and straightforward . . ." and easy to complete. Opp. at 4. In order to run the requested searches for Valve games, Sierra/VUG was required to search four different databases, including databases that are no longer in use and/or are unsearchable in their current state. Supplemental Declaration Of Sarah M. King In Support Of Defendants' Motion For Protective Order ("Suppl. King Decl.") at 2–11. The burden will be the same to run searches for additional titles.

*Defendants' Reply In Support Of Motion For Protective Order (2:02-cv-01683-TSZ-MAT) -Page 3 of 7*

HILLIS CLARK MARTIN & PETERSON, P.S.

500 Galland Building, 1221 Second Ave
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

broad, since it encompasses *all* games published by Sierra/VUG, irrespective of date or genre. *Id.* Valve provides no explanation as to the relevance of these documents other than to say that the production of such documents would provide an outline of the "potential bundling and other licensing activity that affected Valve games." *Id.* However, sales of games prior to the date of the 2001 SPA *cannot* be relevant, since it is undisputed that Sierra/VUG were entitled to distribute Valve games to cyber-cafés under the prior SPA. Moreover, Sierra/VUG publish many titles—including Barbie titles, Hoyle card game titles, and numerous educational and other titles—that clearly would not be bundled for cyber-café use with Valve games, even if such a practice were to occur.[5] Once again, Valve's request is unnecessarily broad and unduly burdensome.[6]

### C. Michael Tan Was Properly Prepared To Testify Concerning All Of The Topics Designated In Valve's Rule 30(b)(6) Deposition Notice.

Despite repeated requests by Sierra/VUG, as well as this Court, Valve has yet to specifically identify *any* questions that Mr. Tan was unable to answer due to a lack of preparation. Unable to show that Mr. Tan refused to answer questions based on a lack of knowledge, Valve instead criticizes the method of Mr. Tan's preparation rather than the results.

First, Valve again argues that Mr. Tan lacks personal knowledge of designated topics. However, Valve has failed to provide any legal authority requiring that a Rule 30(b)(6) witness have personal knowledge of all topics. Rather, as long as the witness is properly prepared, "[t]here is no requirement that the deponent have firsthand knowledge and involvement in the underlying transaction." 7 Moore's, *Federal Practice* §30.25[3] (3d ed. 2003);[7] *see also SEC v. Morelli*, 143 F.R.D. 42, 45 (S.D.N.Y. 1992).

---

[5] Sierra/VUG emphatically deny that they engage in the type of bundling alleged by Valve.
[6] Valve blithely characterizes this production as a copy job. Opp. at 4. However, Ms. Wineke testified at her deposition that it would take weeks to copy all of the distributor agreements and deal summary files. Suppl. King Decl. at 12–14.
[7] Valve's criticism of Sierra/VUG's use of this citation is unfounded. *See* Opp. at 9 n.5. Sierra/VUG has never disputed that a Rule 30(b)(6) must be appropriately prepared. However, such preparation does not require that the deponent have personal knowledge of all topics.

Second, Valve argues that Mr. Tan was unprepared because he failed to contact Hubert Larenaudie, VUG President for the Asia Pacific Region.[8] However, as Valve apparently concedes (*see* Opp. at 11), it would be impractical and beyond the requirements of Rule 30(b)(6) for a deponent to contact every possible employee with any knowledge of a designated topic. Rather, a Rule 30(b)(6) deponent is merely required to undertake preparation sufficient to provide complete and knowledgeable answers. *Media Servs. Group, Inc. v. Lesso, Inc.*, 45 F. Supp. 2d 1237, 1253 (D. Kan. 1999).

Mr. Tan contacted those people involved in the day-to-day interactions and business operations involving AMDG, as well as the negotiation and administration of the AMDG contracts. King Decl. at 96–97, 137. Conversely, Mr. Larenaudie is a high-level officer with minimal knowledge of Sierra/VUG's day-to-day relationship with AMDG. The appropriateness of Mr. Tan's preparation is further demonstrated by the email cited by Valve in its Opposition. Opp. at 10. Valve argues that the fact that Mr. Larenaudie was carbon-copied on email correspondence between Quach Quang Dong and AMDG somehow shows that Mr. Tan should have contacted Mr. Larenaudie. *Id.* However, Valve ignores that Mr. Tan contacted Mr. Quang, *the author of the email in question*. It is difficult to imagine Mr. Larenaudie possessing knowledge about such correspondence in excess of that possessed by the author himself. Consequently, Mr. Tan appropriately contacted and consulted the employees most knowledgeable about the AMDG contract.

### D. Mr. Tan Appropriately Asserted The Attorney-Client And Work Product Privileges.

Mr. Tan completely and competently answered questions concerning factual information about Sierra/VUG's business and its relationship with AMDG, asserting privilege in response only to improper questions. Designation of an attorney as a Rule 30(b)(6) witness does not result in a waiver of the attorney-client or attorney work product privileges. Rather, an attorney acting as a witness for the corporation must answer factual questions, but may assert the attorney-client

---

[8]Valve inappropriately speculates about Mr. Tan's motives for not contacting Mr. Larenaudie without providing any support for its conjecture. *See id.* at 10.

and/or work product privileges to protect privileged communications. *Sony Elecs, Inc. v. Soundview Techs, Inc.*, 217 F.R.D. 104, 109-10 (D. Conn. 2002).[9]

*Valve has not cited any legal authority to the contrary*. Rather, Valve selectively quotes from the transcript of the July 30, 2004 telephonic conference before this Court. Contrary to Valve's insinuation, the Court did not make any ruling on the issue at that time. In fact, the Court recognized that, although designation of an attorney may confuse things, "even a fact witness who's not a lawyer could say, well, it's attorney-client privilege. I mean you can't ask the witness, the fact witness what did you talk to your lawyer about on this subject . . . ." Supp. King Decl. at 16-19.

Valve pins its complaint regarding the purportedly improper assertion of privilege on Mr. Tan's response to *a single question*. Opp. at 12. Valve's counsel asked Mr. Tan if VUG agreed with AMDG's statement that "'[t]he market activities of AMDG as charged by Valve per Tan's letter were actually done with your full knowledge and *implied consent* . . . .'" King Decl. at 133 (emphasis added). Contrary to Valve's assertion that the question related "merely to [VUG's] corporate knowledge," the question improperly called for Mr. Tan to express *legal conclusions* regarding AMDG's rights under the distributor agreement and whether AMDG acted with VUG's implied consent. Development of legal conclusions necessarily implicates the creation of protected attorney work product. As such, Mr. Tan was not obligated to answer.[10]

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court grant their Motion For Protective Order.

---

[9] Valve's citation to *Sony* supports Sierra/VUG's position. The Court in *Sony* held that an attorney acting as a Rule 30(b)(6) witness was only required to answer questions "posed which elicit *purely factual information* . . . and [that] do *not ask for the substance of communications between counsel and client* . . . ." 217 F.R.D. at 109–10 (emphasis added). Mr. Tan only refused to answer questions inquiring about the substance of attorney-client communications and/or attorney work product. Moreover, despite the fact that the Rule 30(b)(6) witness in *Sony* refused to answer *47 questions* on the basis of privilege, the Court found that the witness properly asserted the attorney-client privilege. *Id.* at 110. The Court only required Sony to produce another witness for unanswered questions "*which are not subject to the joint defense or attorney client privilege* . . . ." *Id.* at 113 (emphasis added).

[10] In any event, Valve's question concerning whether Sierra/VUG disagreed with AMDG's statement exceeded the scope of the matters designated in Valve's Deposition Notice. *See* Mot. at 11 n.9.

1 | DATED this 23rd day of September, 2004.

        HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN, A PROFESSIONAL CORPORATION
           Annette L. Hurst (admitted *pro hac vice*)
           Linda Q. Foy (admitted *pro hac vice*)
           Sarah M. King (admitted *pro hac vice*)
           Three Embarcadero Center, Seventh Floor
           San Francisco, CA 94111-4024
           Telephone: (415) 434.1600
           Facsimile: (415) 217.5910
           e-mail: sking@howardrice.com
        Attorneys for Defendants
        Sierra Entertainment, Inc. Vivendi Universal Games, Inc. and Vivendi Universal, S.A.

        HILLIS CLARK MARTIN & PETERSON, P.S.
        By _____/s/ Sarah A. Dunne_____
           Michael R. Scott, WSBA #12822
           Sarah A. Dunne, WSBA #34869
           500 Galland Building
           1221 Second Avenue
           Seattle WA 98101-2925
           Telephone: (206) 623-1745
           Facsimile: (206) 623-7789
           e-mail: mrs@hcmp.com