The Honorable Thomas S. Zilly

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VALVE CORPORATION, a Washington corporation,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>SIERRA ENTERTAINMENT, INC. (AKA SIERRA ON LINE, INC.), a Delaware corporation; VIVENDI UNIVERSAL GAMES, INC., a Delaware corporation; and VIVENDI UNIVERSAL, S.A., a French foreign corporation,<br><br>　　　　　　Defendants.<br><br>SIERRA ENTERTAINMENT, INC. (AKA SIERRA ON LINE, INC.), a Delaware corporation; and VIVENDI UNIVERSAL GAMES, INC., a Delaware corporation,<br><br>　　　　　　Counter-Claimants,<br>　　vs.<br><br>VALVE CORPORATION, a Washington corporation; GABE NEWELL and LISA MENNET NEWELL, husband and wife and the marital community composed thereof; and SCOTT LYNCH and JULIE LYNCH, husband and wife and the marital community composed thereof,<br><br>　　　　　　Counterclaim Defendants. | No. 2:02-cv-01683-TSZ-MAT<br><br>**DEFENDANTS'/ COUNTERCLAIMANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE CONTRACTUAL LIMITATION OF LIABILITY**<br><br>**NOTE ON MOTION CALENDAR:**<br>**October 8, 2004**<br><br>**ORAL ARGUMENT REQUESTED** |

*Defs/Counterclaimants' Reply ISO Mot. For Partial SJ And In Opp. to Plf's Cross-Mot. For Partial SJ (Limitation Of Liability) (2:02-cv-01683-TSZ-MAT)*

HILLIS CLARK MARTIN & PETERSON, P.S.

500 Galland Building, 1221 Second Ave
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

**INTRODUCTION AND SUMMARY OF ARGUMENT**

In Valve Corporation's ("Valve") Opposition to the Motion for Partial Summary Judgment as to Contractual Limitation of Liability, filed by Sierra Entertainment, Inc. ("Sierra") and Vivendi Universal Games, Inc. ("VUG" and, together with Sierra, "Sierra/VUG"), Valve argues that Sierra/VUG's alleged copyright infringements fell outside the scope of the licensing contract embodied in the Software Publishing Agreement ("SPA") and therefore that the limitation of liability clause does not apply to copyright claims. Valve further argues that the type of remedy available under the Copyright Act is outside the scope of the damages covered by the clause. Finally, with respect to Valve's breach of contract claim, while Valve concedes that the limitation of liability clause applies to bar specified types of damages, Valve contends that Sierra/VUG's motion should be denied because Valve contends there are other types of damages Valve may recover.

As shown herein, Valve's contentions rely on faulty reasoning and lack support from any meaningful authorities. Valve's claim that the alleged copyright infringement by Sierra/VUG is not "in connection with" the contract contradicts the nature of the contract and the parties' basic relationship. As the Court will be aware from all of the papers filed in this motion proceeding, this entire litigation revolves around the parties' longstanding contractual relationship, which addresses every aspect of both parties' ability to use the intellectual property at issue.

With respect to the types of damages sought for the alleged copyright infringement, while Valve implicitly concedes that its own lost profits would be "special damages" and therefore within the scope of the clause, Valve argues through distraction: Claiming that infringer's profits must also be considered in this claim, and contending that such a measure of damages arises only under the Copyright Act, Valve concludes that copyright remedies cannot be "special damages." Valve's argument ignores the secondary nature of these damages, which are available only if not duplicative of Valve's actual damages, which Valve itself has stated are primarily lost profits. Valve's lost profits, placed by Valve at the center of this lawsuit, are the primary measure of damages, are considered "special damages," and are therefore precluded by the limitation of liability clause.

*Defs/Counterclaimants' Reply ISO Mot. For Partial SJ And In Opp. to Plf's Cross-Mot. For Partial SJ (Limitation Of Liability) (2:02-cv-01683-TSZ-MAT)  -Page 1 of 11*

HILLIS CLARK MARTIN & PETERSON, P.S.

500 Galland Building, 1221 Second Ave
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

Regarding the breach of contract claim, Valve's response, that Sierra/VUG overreaches by seeking to bar all damages that might be proven, is simply erroneous on its face. To the contrary, Sierra/VUG was quite specific in its moving papers about the elements of damages barred by the limitation of liability clause. Valve's argument is a red herring because it fails to address the actual moving points made by Sierra/VUG.[1]

Valve also purports to make a "Cross-Motion for Partial Summary Judgment" requesting that the Court "grant Valve's Cross-Motion that the SPA does not preclude Valve's Copyright Act remedies or its claim for direct damages resulting from Vivendi's breaches of the SPA." Valve's cross-motion is premature and ill-reasoned. While federal courts routinely enforce limitation of liability clauses on summary judgment, it is procedurally improper to grant summary judgment *against* such a clause — Valve has not proven entitlement to any types of damages yet, and it is impossible to tell that the clause cannot apply.

## ARGUMENT

The entire subject matter of this action arises out of the parties' longstanding relationship in distributing video games, as defined by the SPA and its predecessors. As shown below, every action either party takes with respect to the distribution of these games necessarily arises in connection with the document that empowers that distribution; the SPA is broad and detailed, with a long history closely intertwined with both the ownership of the intellectual property involved and with the type of distribution about which Valve complains in this litigation.

As set forth in Sierra/VUG's Motion, the SPA contains a broad limitation of liability clause that applies to various elements of damage:

> 8.2    Limitation on Liability. EXCEPT AS PROVIDED IN SECTION 8.1 AND EXCEPT FOR A BREACH OF THE EXCLUSIVITY PROVISIONS HEREOF, NEITHER PARTY WILL BE LIABLE TO THE OTHER UNDER OR IN CONNECTION WITH THIS AGREEMENT FOR SPECIAL, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES OF ANY NATURE, FOR ANY REASON, INCLUDING WITHOUT LIMITATION, THE BREACH OF THIS AGREEMENT OR ANY TERMINATION OF THIS AGREEMENT, WHETHER

---

[1] As was stated clearly in Sierra/VUG's moving papers, Sierra/VUG does not contend that the limitation of liability clause bars any money recovery by Valve. For example, unpaid royalties would not typically constitute special, consequential or incidental damages. Were Valve to prevail on liability, Valve might also have other elements of direct, general damages that are not barred by the clause.

*Defs/Counterclaimants' Reply ISO Mot. For Partial SJ And In Opp. to Plf's Cross-Mot. For Partial SJ (Limitation Of Liability) (2:02-cv-01683-TSZ-MAT) -Page 2 of 11*

HILLIS CLARK MARTIN & PETERSON, P.S.

500 Galland Building, 1221 Second Ave
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

SUCH LIABILITY IS ASSERTED ON THE BASIS OF CONTRACT, TORT OR OTHERWISE, EVEN IF THE OTHER PARTY HAS BEEN WARNED OF THE POSSIBILITY OF SUCH DAMAGES. (Defendants/Counterclaimants' Motion for Partial Summary Judgment Re Contractual Limitation of Liability ("Opening Brief").

By its terms, the limitation of liability clause applies to all types of substantive claims relating to the parties' contractual relationship. As shown in Sierra/VUG's moving papers, a large portion of the damages Valve could recover if it prevails on liability questions will constitute "special damages" as that term is defined under federal and Washington state law. Therefore, partial summary judgment is appropriate on this critical damages issue.

## I.

### THE SOFTWARE PUBLISHING AGREEMENT CAN AND DOES LIMIT LIABILITY FOR SPECIAL DAMAGES UNDER THE COPYRIGHT ACT.

**A.   Valve Seeks Artificially to Limit the Scope of the Software Publishing Agreement, Which Governs the Parties' Commercial Relationship.**

As shown in Sierra/VUG's moving papers, Valve's complaint and discovery responses, as well as the other evidence taken in the case, closely link Valve's copyright infringement claim to the existence of the SPA and therefore to the limitation of liability clause. Valve now seeks to escape the effect of the clause by claiming that the copyright infringement action does not arise "in connection with" the SPA and therefore is not impacted by the parties' agreed-upon limits on remedies available. Valve repeatedly attempts to de-emphasize the scope of the SPA, stating that Sierra/VUG's distribution license is "limited" and only a "narrow right." Plaintiff's Opposition and Cross-Motion for Partial Summary Judgment Re Contractual Limitation of Liability ("Opp.") at 1, 4.

Valve's repeated references to the "narrow" nature of the SPA relationship (*see, e.g.*, *id*. at 5) contradict not only the undisputed history of the parties' relationship established by the SPA and its predecessors, but also Valve's own statements in this litigation, including Valve's current opposition brief. As amply established at pages two through five of Sierra/VUG's moving papers, Valve's attempt to limit the scope of the SPA ignores the reality that the parties' entire

*Defs/Counterclaimants' Reply ISO Mot. For Partial SJ And In Opp. to Plf's Cross-Mot. For Partial SJ (Limitation Of Liability) (2:02-cv-01683-TSZ-MAT)  -Page 3 of 11*

HILLIS CLARK MARTIN & PETERSON, P.S.

500 Galland Building, 1221 Second Ave
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

relationship pertaining to the games flows from the SPA — the subject matter of this litigation is the historical rights of the parties as determined by the SPA and its predecessors.

Every aspect of this litigation hinges on the relationship of the SPA to the use made by Sierra/VUG of the intellectual property referred to in that document. As is made clear by the evidence cited in Sierra/VUG's Motion for Partial Summary Judgment Re Cyber Café Rights ("Cybercafé Mot."), the parameters of this litigation are the parties' rights under the SPA, no matter how Valve would characterize the substantive law allegedly giving rise to liability:

- The SPA is the sole reason that Valve has ownership of the intellectual property at issue in this case, which Sierra/VUG previously owned. Under the 2001 SPA, Sierra/VUG transferred to Valve the intellectual property rights in the Valve games, but was granted exclusive, worldwide rights to manufacture, reproduce, use, distribute, rent, lease and license identified Valve-developed computer games. *See* Cybercafé Mot. at 1.
- Whether Sierra/VUG's alleged sales of the games to cyber cafés, the central issue in this case, depends on whether those sales occurred outside the "Retail Channel," as defined in the SPA, and whether Sierra/VUG's traditional licensing rights extend to these third-party entities. Sierra/VUG and Valve are currently engaged in a summary judgment procedure over this very issue, and this litigation revolves around that issue, which will be decided only by reference to the SPA and its meaning. *See id. generally*.
- Following the execution of the SPA, Sierra/VUG continued to license Valve games through cyber-cafés to end users as it had done in the past under the predecessor agreements to the SPA. Valve was aware of this activity and has acknowledged that under the predecessor Agreements, Sierra/VUG had the right to distribute Valve games through cyber-cafés. Valve continued to receive notice of Sierra/VUG's cyber-café licensing under the SPA. *See id*. at 5-6.
- In addition to its awareness that Sierra/VUG was engaging in these activities under the SPA, Valve collected revenues from Sierra/VUG's distribution to cyber-cafés under the 2001 SPA and acknowledged that Sierra/VUG had those rights. *See id*. at 6-7.

Even Valve's current Opposition papers confirm that the SPA is directly connected to the

*Defs/Counterclaimants' Reply ISO Mot. For Partial SJ And In Opp. to Plf's Cross-Mot. For Partial SJ (Limitation Of Liability) (2:02-cv-01683-TSZ-MAT)  -Page 4 of 11*

HILLIS CLARK MARTIN & PETERSON, P.S.

500 Galland Building, 1221 Second Ave
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

ownership of the games and to Sierra/VUG's alleged copyright infringement. Valve states that it "owns the intellectual property in its games and the SPA confirms this fact. Reflecting basic copyright law, the parties agreed that any rights not explicitly licensed under the SPA were retained by the owner." *Id*. at 4 (citations omitted).

In sum, while Valve claims that "the SPA does not contemplate or define" Sierra/VUG's alleged "unauthorized distribution of Valve's games in cyber-cafés" (Opp. at 2), in fact the SPA directly governs the parties' relationship as to all distribution of the games. Valve cannot through its Opposition unravel the intricate factual web of evidence inextricably linking Sierra/VUG's activities, about which Valve complains, to the SPA and the parties' historical relationship under that document. The alleged copyright infringement cannot logically be "unconnected" from the SPA.

### B. Regardless of the Substantive Law Giving Rise to Damages Liability, the Parties Can Use a Licensing Agreement to Limit Types of Damages.

Valve initially argues that because "the remedies for copyright infringement . . . arise completely independently of the SPA," the parties did not contractually agree to limit those remedies. *See id*. at 7. In support of its argument, Valve cites authorities for the proposition that a copyright licensee may commit copyright infringement by exceeding its license and thereby making the licensee a "stranger" to the licensing contract. *Id*. at 5-6. None of Valve's cited authorities addresses the issue presented here, however — Valve's citations simply confirm that a licensee can breach a licensing agreement and commit copyright infringement at the same time. Valve's cases do not address the issue of whether parties to a contract can limit liability as to statutory claims brought in addition to a breach of contract.

In any event, Valve abandons this argument in citing *McRoberts Software, Inc. v. Media 100, Inc.*, No. IP99-1577, C-M/S, 2001 WL 1224727, at *15-16 (S.D. Ind. Aug. 17, 2001). In relying on *McRoberts*, Valve acknowledges that "parties could limit recovery for copyright damages by agreement . . . ." Opp. at 6. Likewise, the federal courts have recognized that parties may contractually limit statutory claims relating to liability on the contract. *See*

*Defs/Counterclaimants' Reply ISO Mot. For Partial SJ And In Opp. to Plf's Cross-Mot. For Partial SJ (Limitation Of Liability) (2:02-cv-01683-TSZ-MAT)  -Page 5 of 11*

HILLIS CLARK MARTIN & PETERSON, P.S.

500 Galland Building, 1221 Second Ave
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

*Horsehead Indus., Inc. v. Paramount Communications, Inc.*, 258 F.3d 132, 145 (3rd Cir. 2001) (parties could contractually limit liability to each other for liability under federal CERCLA statute); *Agristor Credit Corp. v. Schmidlin*, 601 F. Supp. 1307, 1317 (D. Ore. 1985) (parties may contractually waive statutory claims).  Thus, the question presented is whether the language of this clause applies to damages allegedly arising from a copyright infringement.  As shown below, the clause applies here.

### C. With No Authorities Limiting the Application of the SPA to this Case, Valve Simply Fails to Address the Breadth of the SPA's Limitation of Liability Springing from "Contract, Tort or Otherwise."

Valve contends that "The words 'special damages' do not equal a reference to Copyright Act remedies *and there is nothing else in the SPA to indicate such an intent*."  Opp. at 7 (emphasis added).  This statement is simply wrong: The SPA expressly refers to the types of substantive legal theories excluded as "contract, tort or otherwise," and it is quite surprising that Valve would fail to discuss this phrase, given the prominent treatment of the issue in Sierra/VUG's Motion.  Yet nowhere in its Opposition does Valve even mention the SPA's phrase "contract, tort or otherwise," aside from quoting the words in setting forth the limitation of liability clause in the contract.

Valve's copyright claims fall within this language on two counts: First, as demonstrated in Sierra/VUG's Motion papers — and as ignored by Valve's Opposition — copyright claims sound in tort.  *See Mackie v. Rieser*, 296 F.3d 909, 915 (9th Cir. 2002), *cert. denied*, 537 U.S. 1189 (2003) (adopting tort causation theory to calculate copyright infringement damages).

Second, Valve's claim logically must fall within the phrase "or otherwise" in the limitation of liability clause, since "otherwise" captures any other legal theory that might be asserted.  The ordinary meaning of the word "otherwise" is "something or anything else" or "in a different way or manner."  *See* Merriam Webster Collegiate Dictionary 823 (10th ed. 1993) (first and second definitions of "otherwise").  Thus, if Valve's theory of liability against Sierra/VUG sounds in (1) contract, (2) tort, or (3) "something or anything else," then the limitation of liability clause still applies to bar the specified remedies, so long as Valve's claim arises "in connection with" the

*Defs/Counterclaimants' Reply ISO Mot. For Partial SJ And In Opp. to Plf's Cross-Mot. For Partial SJ (Limitation Of Liability) (2:02-cv-01683-TSZ-MAT)  -Page 6 of 11*

HILLIS CLARK MARTIN & PETERSON, P.S.

500 Galland Building, 1221 Second Ave
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

SPA as discussed above.

Ignoring this critical contract language, Valve relies on *McRoberts Software, Inc. v. Media 100, Inc.*, to contend that a limitation of liability clause is ineffective against a copyright claim unless the limitation is "express." Opp. at 6. Valve further claims that "*McRoberts* considered a contractual clause very similar to the SPA's." *Id.* n.2.

*McRoberts* does not support Valve's contention. As already discussed in Sierra/VUG's Motion papers, *McRoberts* relied on the specific facts of that case to hold that the narrow clause presented there was insufficiently broad to cover intellectual property rights. The only portions of the clause quoted by the *McRoberts* court indicate that the clause stated that "liability 'shall not exceed the aggregate amount paid [by the breaching party] to the other under this Agreement," and that the provision limited "special, indirect, incidental, or consequential damages including without limitation loss of profit." *McRoberts Software, Inc.*, 2001 WL 1224727 at *4, 15.[2]

In analyzing this language, the court stated that "a clause in a licensing agreement could be designed to limit the types of damages available for copyright infringement. But the particular Limit of Liability section in question in this case does not mention intellectual property rights in any form." The *McRoberts* defendant — unlike Sierra/VUG — relied on the argument that the licensing agreement itself presumptively defeated the plaintiff's copyright causes of action, as opposed to a clause specifically barring certain substantive causes of action. *Id*. at 15.

Moreover, Valve inexplicably claims the *McRoberts* clause to be "very similar" to that in the SPA, when the *McRoberts* clause omits critical phrasing set forth in the SPA. As already noted, the instant limitation of liability applies to all substantive legal claims. Although the types of *damages* excluded by the SPA are similar to those in *McRoberts*, the *substantive* claims covered by the SPA are essentially unlimited. As shown by the *McRoberts* analysis, there was

---

[2] Despite citing only the *McRoberts* case to discuss this issue, and despite the fact that *McRoberts* does not help Valve in any way, Valve claims that "in reality courts hold that such clauses *do not* presumptively apply to copyright." Opp. at 7. Since Valve cites nary a case for this proposition, it is unclear to what courts Valve refers; limitation of liability clauses "presumptively" apply to those claims captured within the plain language used by the parties. As shown herein, parties are free to negotiate for the type of broad limitation contained in the SPA, and courts must enforce the intent of the plain language, not the post-hoc interpretation urged by the limited party.

*Defs/Counterclaimants' Reply ISO Mot. For Partial SJ And In Opp. to Plf's Cross-Mot. For Partial SJ (Limitation Of Liability) (2:02-cv-01683-TSZ-MAT)  -Page 7 of 11*

HILLIS CLARK MARTIN & PETERSON, P.S.

500 Galland Building, 1221 Second Ave
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

no language in that contract to indicate that the limitation applied to any claims other than breach of the contract. Here, the parties made clear that the substantive claims affected are not limited to breach of the SPA — indeed, the claims affected are limited only in that they must spring from the parties' commercial relationship relating to the distribution of the games.

## II.

### VALVE'S CLAIMS OF "INFRINGER'S PROFITS" ON SIERRA/VUG'S PART ARE CLAIMS FOR VALVE'S ALLEGED "LOST PROFITS."

Under the Copyright Act, a copyright owner's primary form of recovery is "actual damages," typically in the form of "lost profits." As established in Sierra/VUG's moving papers, Valve has claimed continuously during this litigation that its primary damages are in the form of "lost profits" — until now, that is, upon being confronted with Sierra/VUG's showing that lost profits are "special damages" and, as such, barred by the limitation of liability clause.

Now Valve shifts gears on its claim for relief, ignoring its prior statements — made at every prior stage of this litigation — that Valve intends to seek its "lost profits." *Compare* Opp. at 8-9 *with* Opening Brief at 5-6. Valve contends that "'Infringer's profits' under the Copyright Act are not 'lost profits' and therefore 'special damages' . . . . Opp. at 9. According to Valve, Sierra/VUG's argument regarding the limitation of liability clause "ignores the law regarding the remedies the Copyright Act affords a copyright owner." *Id.* at 8.

In response to Valve's sudden re-characterization of the remedy it seeks, an examination of "the law" to which Valve refers is in order. While an infringer's profits can be part of the remedy available to a copyright owner, such profits may come into play only after the lost profits of the copyright owner are examined. Section 504(b) of the Copyright Act states, "The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b).

It is well-established that among the actual damages that may be suffered by the copyright owner are lost profits, *i.e.*, profits the copyright owner would have realized but for the

*Defs/Counterclaimants' Reply ISO Mot. For Partial SJ And In Opp. to Plf's Cross-Mot. For Partial SJ (Limitation Of Liability) (2:02-cv-01683-TSZ-MAT)  -Page 8 of 11*

HILLIS CLARK MARTIN & PETERSON, P.S.

500 Galland Building, 1221 Second Ave
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

infringement. *See, e.g., Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991). But to the extent that these actual lost profits of the copyright owner — *i.e.*, special damages — duplicate the infringer's profits, the copyright owner may not also recover the infringer's profits — to permit otherwise would be to allow a double recovery by the copyright owner. Numerous federal courts, as well as the legislative history of Section 504, reject the idea of double-dipping: "Where the defendant's profits are nothing more than a measure of the damages suffered by the copyright owner, it would be inappropriate to award damages and profits cumulatively, since in effect they amount to the same thing." H.R. REP. No. 94-1476, at 161 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5777.

As recognized by the 1976 amendments to the Copyright Act, before recovering infringer profits, the copyright owner must show that those profits exceed his own actual damages:

> The 1976 Copyright Act departed from the previous copyright statute, under which a copyright holder could receive a cumulative award of his own damages, including profits the owner would have earned on lost sales, and the infringer's actual profits . . . . The 1976 Act reflects the view of Congress that where the defendant's profits are nothing more than a measure of the damages suffered by the copyright owner, it would be inappropriate to award damages and profits cumulatively, since in effect they amount to the same thing.

*Childress v. Taylor*, 798 F. Supp. 981, 988 (S.D.N.Y. 1992). Numerous federal courts have affirmed that a copyright owner can sue for his losses or the infringer's profits, but not for the sum of the two amounts — if the copyright owner's profits do not capture all of the infringer's profits, then the owner may make a further recovery. *See Hamil Am., Inc. v. GFI, Inc.*, 193 F.3d 92, 108 n.7 (2d Cir. 1999); *Deltak, Inc. v. Advanced Sys., Inc.*, 767 F.2d 357, 363 (7th Cir. 1985).

Thus, Valve may only recover infringer's profits to the extent those profits "are not taken into account in computing the actual damages." Valve may not reach any infringer's profits without a showing that those profits exceed the actual damages Valve claims it will prove in this case.[3] *See Abeshouse v. Ultragraphics, Inc.*, 754 F.2d 467, 471 (2d Cir. 1985) (double recovery,

---

[3] Valve also attempts to mislead the Court in claiming that Sierra/VUG "wrongly labels any possible damages caused by Vivendi's actions as 'lost profits,'" which would be barred as special damages. Opp. at 2. Sierra/VUG's Motion quite plainly limits its scope to those damages defined by the authorities as "special damages" — in particular, lost profits and damage to reputation or good will — quoting from Valve's own claims for damages to determine what that scope is. Valve, not Vivendi, has enumerated a substantial portion of Valve's losses as "lost profits." Valve also claims that enforcing the LOL clause against Valve's claims for lost profits would "giv[e]

*Defs/Counterclaimants' Reply ISO Mot. For Partial SJ And In Opp. to Plf's Cross-Mot. For Partial SJ (Limitation Of Liability) (2:02-cv-01683-TSZ-MAT) -Page 9 of 11*

HILLIS CLARK MARTIN & PETERSON, P.S.

500 Galland Building, 1221 Second Ave
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

as prohibited by § 504(b), "occur[s] when an infringing seller has to disgorge profits on sales that a copyright holder might have made and for which he may therefore claim [] lost profits").

Further, the profits recoverable beyond Valve's own lost profits also constitute damages barred by the limitation of liability clause.[4]  The rationale for awarding infringer's profits is two-fold: Infringer's profits are (1) an alternative measure for calculating the copyright owner's lost profits, which are sometimes difficult to ascertain without speculation; and (2) a penalty to discourage copyright infringement, in the nature of punitive damages, since infringer's profits are frequently not precisely compensatory to the copyright owner.  *See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 514 (9th Cir.) (infringer's profits are "alternative to actual damages"); *U.S. Payphone, Inc. v. Executives Unlimited of Durham, Inc.*, 781 F. Supp. 412, 413 (M.D.N.C. 1991) ("The recovery of profits attributable to the infringement in addition to actual damages is designed to ensure that infringers are not able to retain some benefit flowing from their wrongful conduct that is not fully taken into account in the award of actual damages"); *Mount v. Book-Of-The-Month Club, Inc.*, No. 75 Civ 6474-CSH 1978 WL 946, 9 (S.D.N.Y. May 1, 1978) (legislative history indicates that plaintiff's recovery of either actual damages or infringer's profits is an "alternative" recovery).  *See also* H.R. REP. No. 94-1476, at 161 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5777 ("profits are awarded to prevent the infringer from unfairly benefiting from a wrongful act").

---

Vivendi the right to force a compulsory licensing agreement on Valve and obtain[] a free pass to infringe at will without fear of consequence."  Opp. at 1.  This is far from the case, however, as enforcing the limitation of liability will give effect to the parties' intention that Valve not be able to claim certain types of damages, namely lost profits.  In the event Valve were able to show a violation of the SPA or a copyright infringement, Valve could still recover various other forms of relief, such as other actual damages that do not constitute special damages, as well as the specific statutory relief provided by the Act.  The logical reading of the SPA is that the parties intended to limit liability to more predictable forms of relief such as declaratory or equitable remedies and statutory damages.

[4]Even if the "infringer's profits" do not constitute special or punitive damages, Valve may not substitute infringer's profits for its own actual damages in order to escape the effect of the limitation of liability clause.  Alternative remedies are designed to replace actual damages where such damages cannot be calculated or are otherwise not practical, not where the plaintiff itself has agreed not to have a recovery right.  The use of an alternative damages provision in a statute to escape the effect of the plaintiff's contractual election defeats the parties' intent in entering the contract.  *Cf. Scott & Fetzer, Co. v. Montgomery Ward & Co.*, 129 Ill. App. 3d 1011, 1021-22  (1984) (damages limitation in contract did not render damages inadequate for purposes of entitling plaintiff to equitable relief).  Therefore, to the extent Valve would have realized profits but for the alleged infringement, those lost profits are barred as special damages and may not be replaced by infringer's profits.

*Defs/Counterclaimants' Reply ISO Mot. For Partial SJ And In Opp. to Plf's Cross-Mot. For Partial SJ (Limitation Of Liability) (2:02-cv-01683-TSZ-MAT)  -Page 10 of 11*

HILLIS CLARK MARTIN & PETERSON, P.S.

500 Galland Building, 1221 Second Ave
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

## III.

## VALVE'S ARGUMENT THAT "VALVE'S DAMAGES ARE NOT EXCLUSIVELY FOR LOST PROFITS" IS IRRELEVANT TO WHETHER PARTIAL SUMMARY JUDGMENT IS APPROPRIATE.

Valve concedes, as it must, that parties to private contracts may contractually agree to limit their liability to each other under Washington law (Opp. at 10), and Sierra/VUG has already established the enforceability of such clauses under Washington contract law. *See Am. Nursery Prods., Inc. v. Indian Wells Orchards*, 115 Wn. 2d 217, 222 (1990). To the extent Valve's contract allegations give rise to liability on the part of Sierra/VUG for any of the types of damages enumerated in the limitation of liability clause in the SPA, such damages may not be recovered, and Valve acknowledges as much, stating, "Valve is Entitled to Any Contract Damages Not Explicitly Limited by the SPA." Opp. at 10.

While Valve states that "Vivendi argues that SPA § 8.2 precludes Valve from recovering virtually any damages," in fact, Sierra/VUG's Motion was quite specific as to the individual categories of damages that would be precluded: anything that falls into the categories of special, consequential, or incidental damages would not be permitted as a recovery. Valve offers nothing with respect to those specific limits on Valve's breach of contract claims. Valve enumerates various types of damages that Valve claims it would be entitled to if Valve prevails on underlying questions of liability, e.g., failing to notify Valve of infringement, failing to use Sierra/VUG's best efforts to maximize sales, damaging Valve's good will, and failing to pay royalties. *Id.* at 11.

Among these claims, the only one addressed by Sierra/VUG so far as an element of special damages is "damaging Valve's good will." *Id.* Valve claims that this element would be recoverable but offers no citation to any authority contradicting Sierra/VUG's argument that "good will" is an element of special damages and as such barred by the LOL clause. As already established by Sierra/VUG, such a claim is considered "special damages" and is barred by the limitation of liability clause. *See* Opening Brief at 16-17. As further established by that Motion, it is appropriate to render summary judgment generally as to those types of damages barred by

*Defs/Counterclaimants' Reply ISO Mot. For Partial SJ And In Opp. to Plf's Cross-Mot. For Partial SJ (Limitation Of Liability) (2:02-cv-01683-TSZ-MAT) -Page 11 of 11*

HILLIS CLARK MARTIN & PETERSON, P.S.

500 Galland Building, 1221 Second Ave
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

the clause.

## IV.

### VALVE'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT CANNOT BE GRANTED BECAUSE THE BEST-CASE SCENARIO FOR VALVE IS THAT THE COVERAGE OF THE LIMITATION OF LIABILITY IS AMBIGUOUS.

Valve requests summary judgment against Sierra/VUG barring application of the limitation of liability clause to "Copyright Act remedies or . . . direct damages resulting from Vivendi's breaches of the SPA." Opp. at 14. Valve's Cross-Motion should be denied because it is premature as to the copyright remedies and patently without merit as to the contract claim.

Regarding copyright remedies, the evidentiary posture of the parties' motions reveals the emptiness of Valve's Cross-Motion. Because it cannot be disputed that Valve seeks lost profits and damages for loss of goodwill, Sierra/VUG contends that the Court can currently ascertain from the undisputed evidence that certain items of damage will fall under the limitation of liability clause. Valve has admitted to certain facts that, under the authorities set forth in Sierra/VUG's moving and reply papers, eliminate any genuine issue of material fact as to the application of the limitation of liability clause. As shown by Sierra/VUG's previously cited authorities, federal courts routinely impose summary judgment where pre-trial evidence demonstrates that a limitation of liability clause will apply to a portion of asserted damages. *See* Opening Brief at 9.

In contrast, federal courts do not typically grant summary judgment against the application of a limitation of liability clause, and this case typifies why: Valve has yet to prove a single dollar in damages, whether recoverable or not under the limitation of liability clause. Valve cannot provide undisputed facts showing that its alleged copyright remedies fall outside the boundaries of the parties' contractual relationship and therefore are not within the limitation of liability clause. At this time, the most Valve can hope for is that the court views the contractual issue as ambiguous and not suitable for resolution by summary judgment.

Valve, of course, cites not a single precedent in which a court has granted summary

*Defs/Counterclaimants' Reply ISO Mot. For Partial SJ And In Opp. to Plf's Cross-Mot. For Partial SJ (Limitation Of Liability) (2:02-cv-01683-TSZ-MAT)  -Page 12 of 11*

HILLIS CLARK MARTIN & PETERSON, P.S.

500 Galland Building, 1221 Second Ave
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

1  judgment barring the application of a limitation of liability clause.  The reason for this dearth of
2  authority in Valve's favor is clear: while some pre-trial factual situations make clear that a
3  limitation of liability clause will apply, it is impossible to tell that such a clause cannot apply
4  until all of the evidence is before the court at trial.

5      Regarding the breach of contract claim, Valve's Cross-Motion is simply nonsensical,
6  considering that Valve's Opposition *concedes* that the limitation of liability clause can apply to
7  elements of contractual damages.  Among the potential "direct damages" claimed by Valve from
8  the alleged breaches of the SPA are the lost profits and damage to goodwill that were already
9  shown to constitute "special damages" under Washington law applicable to this case.  Therefore,
10 summary judgment as to the contractual claim is improper by Valve's own admission.

11     DATED this 24th day of September, 2004.

HILLIS CLARK MARTIN & PETERSON, P.S.


By_____/s/_____

HILLIS CLARK MARTIN & PETERSON, P.S.
    Michael R. Scott, WSBA #12822
    Sarah A. Dunne, WSBA #34869
    500 Galland Building
    1221 Second Avenue
    Seattle WA 98101-2925
    Telephone:  (206) 623-1745
    Facsimile:   (206) 623-7789
    e-mail:  mrs@hcmp.com

HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN, A PROFESSIONAL CORPORATION
    Annette L. Hurst (admitted *pro hac vice*)
    Linda Q. Foy (admitted *pro hac vice*)
    Sarah M. King (admitted *pro hac vice*)
    Three Embarcadero Center, Seventh Floor
    San Francisco, CA 94111-4024
    Telephone:  (415) 434.1600
    Facsimile:  (415) 217.5910
Attorneys for Defendants
Sierra/VUG Entertainment, Inc., Vivendi Universal Games, Inc. and Vivendi Universal, S.A.

*Defs/Counterclaimants' Reply ISO Mot. For Partial SJ And In Opp. to Plf's Cross-Mot. For Partial SJ (Limitation Of Liability) (2:02-cv-01683-TSZ-MAT)  -Page 13 of 11*

HILLIS CLARK MARTIN & PETERSON, P.S.

500 Galland Building, 1221 Second Ave
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

# TABLE OF CONTENTS

| | Page |
|---|---:|
| INTRODUCTION AND SUMMARY OF ARGUMENT | 1 |
| ARGUMENT | 2 |
| I. THE SOFTWARE PUBLISHING AGREEMENT CAN AND DOES LIMIT LIABILITY FOR SPECIAL DAMAGES UNDER THE COPYRIGHT ACT. | 3 |
|     A. Valve Seeks Artificially to Limit the Scope of the Software Publishing Agreement, Which Governs the Parties' Commercial Relationship. | 3 |
|     B. Regardless of the Substantive Law Giving Rise to Damages Liability, the Parties Can Use a Licensing Agreement to Limit Types of Damages. | 5 |
|     C. With No Authorities Limiting the Application of the SPA to this Case, Valve Simply Fails to Address the Breadth of the SPA's Limitation of Liability Springing from "Contract, Tort or Otherwise." | 6 |
| II. VALVE'S CLAIMS OF "INFRINGER'S PROFITS" ON SIERRA/VUG'S PART ARE CLAIMS FOR VALVE'S ALLEGED "LOST PROFITS." | 8 |
| III. VALVE'S ARGUMENT THAT "VALVE'S DAMAGES ARE NOT EXCLUSIVELY FOR LOST PROFITS" IS IRRELEVANT TO WHETHER PARTIAL SUMMARY JUDGMENT IS APPROPRIATE. | 11 |
| IV. VALVE'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT CANNOT BE GRANTED BECAUSE THE BEST-CASE SCENARIO FOR VALVE IS THAT THE COVERAGE OF THE LIMITATION OF LIABILITY IS AMBIGUOUS. | 12 |

*Defs/Counterclaimants' Reply ISO Mot. For Partial SJ And In Opp. to Plf's Cross-Mot. For Partial SJ (Limitation Of Liability) (2:02-cv-01683-TSZ-MAT)  -Page i*

HILLIS CLARK MARTIN & PETERSON, P.S.

500 Galland Building, 1221 Second Ave
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

# TABLE OF AUTHORITIES

Page(s)

### Cases

*Abeshouse v. Ultragraphics, Inc.*, 754 F.2d 467 (2d Cir. 1985) — 9

*Agristor Credit Corp. v. Schmidlin*, 601 F. Supp. 1307 (D. Ore. 1985) — 6

*Am. Nursery Prods., Inc. v. Indian Wells Orchards*, 115 Wn. 2d 217 (1990) — 11

*Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224 (7th Cir. 1991) — 9

*Childress v. Taylor*, 798 F. Supp. 981 (S.D.N.Y. 1992) — 9

*Deltak, Inc. v. Advanced Sys., Inc.*, 767 F.2d 357 (7th Cir. 1985) — 9

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505 (9th Cir.) — 10

*Hamil Am., Inc. v. GFI, Inc.*, 193 F.3d 92 (2d Cir. 1999) — 9

*Horsehead Indus., Inc. v. Paramount Communications, Inc.*, 258 F.3d 132 (3rd Cir. 2001) — 6

*Mackie v. Rieser*, 296 F.3d 909 (9th Cir. 2002), *cert. denied*, 537 U.S. 1189 (2003) — 6

*McRoberts Software, Inc. v. Media 100, Inc.*, No. IP99-1577, C-M/S, 2001 WL 1224727 (S.D. Ind. Aug. 17, 2001) — 5, 7

*Mount v. Book-Of-The-Month Club, Inc.*, No. 75 Civ 6474-CSH, 1978 WL 946, (S.D.N.Y. May 1, 1978) — 10

*Scott & Fetzer, Co. v. Montgomery Ward & Co.*, 129 Ill. App. 3d 1011 (1984) — 10

*U.S. Payphone, Inc. v. Executives Unlimited of Durham, Inc.*, 781 F. Supp. 412 (M.D.N.C. 1991) — 10

### Statutes

17 U.S.C. § 504(b) — 8

### Other Authorities

H.R. REP. No. 94-1476 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659 — 9, 10

Merriam Webster Collegiate Dictionary (10th ed. 1993) — 6

*Defs/Counterclaimants' Reply ISO Mot. For Partial SJ And In Opp. to Plf's Cross-Mot. For Partial SJ (Limitation Of Liability) (2:02-cv-01683-TSZ-MAT)  -Page ii*

HILLIS CLARK MARTIN & PETERSON, P.S.

500 Galland Building, 1221 Second Ave
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

Case 2:02-cv-01683-TSZ-MAT   Document 198   Filed 09/27/04   Page 17 of 17

1  An extra section break has been inserted above this paragraph. Do not delete this section
2  break if you plan to add text after the Table of Contents/Authorities.  Deleting this break will
3  cause Table of Contents/Authorities headers and footers to appear on any pages following the
4  Table of Contents/Authorities.

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Defs/Counterclaimants' Reply ISO Mot. For Partial SJ And In Opp. to Plf's Cross-Mot. For Partial SJ (Limitation Of Liability) (2:02-cv-01683-TSZ-MAT)  -Page 1 of 11*

HILLIS CLARK MARTIN & PETERSON, P.S.

500 Galland Building, 1221 Second Ave
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789