Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VALVE CORPORATION, a Washington corporation,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>SIERRA ENTERTAINMENT, INC. (AKA SIERRA ON-LINE, INC.), a Delaware Corporation; VIVENDI UNIVERSAL GAMES, INC., a Delaware Corporation; and VIVENDI UNIVERSAL, S.A., a French foreign corporation,<br><br>　　　　　　　　　　　　Defendants.<br>_____<br>SIERRA ENTERTAINMENT, INC. (AKA SIERRA ON LINE, INC., a Delaware corporation; and VIVENDI UNIVERSAL GAMES, INC., a Delaware corporation,<br><br>　　　　　　　　　　　　Counter-Claimants,<br><br>　　v.<br><br>VALVE CORPORATION, a Washington Corporation; GABE NEWELL and LISA MENNET NEWELL, husband and wife, and the marital community composed thereof; and SCOTT LYNCH and JULIE LYNCH, husband and wife, and the marital community composed thereof,<br><br>　　　　　　　　　　　　Counterclaim Defendants.<br>_____ | No. C 02-1683Z<br><br>REPLY IN SUPPORT OF VALVE'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING CONTRACTUAL LIMITATION OF LIABILITY<br><br><br>**Noted for:  October 8, 2004** |

VALVE'S REPLY RE CONTRACTUAL
LIMITATION OF LIABILITY *C 02-1683Z*

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## I.   SUMMARY

In trying to preemptively avoid liability for infringement of Valve Corporation's ("Valve") copyrighted works, Defendants (collectively "Vivendi") argue the stunning proposition that any wrongful act of any kind (including copyright infringement) relating to distribution of Valve's games is by definition "in connection with" the Software Publishing Agreement ("SPA"). Defendants' Opposition to Valve's Motion for Partial Summary Judgment Re Contractual Limitation of Liability ("Def. Br."), at pp. 2-5. Therefore, Vivendi argues, Valve's Copyright Act remedies are eliminated and Valve's breach of contract remedies are virtually eliminated by the SPA's limitation of liability clause (Section 8.2). This argument is inconsistent with the language of the agreement and applicable law; and as an unreasonable interpretation of the SPA, should be rejected.

Vivendi's infringing cybercafé distribution is not "in connection with" the SPA because it is outside the scope of its license grant to distribute Retail Packaged Product in the Retail Channel. *See* Declaration of Jason Holtman in Support of Valve's Opposition to Partial Summary Judgment and Cross Motions Re Cybercafé Rights and Contractual Limitation of Liability ("Holtman Opp. Decl."), ¶ 4, pp. 8-11 (SPA § 3.5.1). Vivendi is not licensed to distribute to cybercafés for commercial exploitation. It is beyond fair dispute that a licensee who engages in unlicensed distribution of a copyrighted work is a "stranger" to the licensing contract (here, the SPA) and an infringer as a matter of law. Vivendi's argument amounts to a claim that it may infringe Valve's copyrighted works with impunity. The SPA simply cannot be contorted to reach this result.

Even if copyright infringement was considered to be "in connection with" the SPA, which it is not, the limitation of liability clause does not contain any express language referring to copyright damages, as is required by law. Neither the word "otherwise" nor the word "tort" can be read as an explicit reference to copyright. Further, Vivendi's argument that "copyright damages are lost profits are special damages" should be rejected. This faulty

VALVE'S REPLY RE
CONTRACTUAL LIMITATION OF
LIABILITY - 1

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

syllogism falls apart at each step. Not all copyright damages are lost profits, and not all lost profits are special damages. Vivendi's last minute argument that infringer's profits under the Copyright Act are "punitive damages" should also be rejected. Disgorgement of unlawful profits is not punishment; it is a Copyright Act remedy that ensures that infringers do not wrongly benefit from unlawful acts. Vivendi's interpretation of the limitation of remedies clause is unreasonable and must be rejected.

Likewise, Vivendi's request for an order barring Valve's recovery of most or all of its damages caused by Vivendi's breaches of the SPA should be denied. It is undisputed that Valve is entitled to recover, at a minimum, its direct damages resulting from these breaches, and that special, consequential, incidental or punitive damages arising from those breaches are limited by the SPA. But that begs the question of how the damages will ultimately be characterized in this case. Vivendi's unilateral assessment of Valve's damages is both inaccurate and premature. Discovery is not yet complete. When it is, Valve will be able to determine the type and amount of harm it suffered and the proper characterization of those damages. Allowing Vivendi to define the damages suffered by Valve at this stage would prevent Valve from having the opportunity to develop its case, characterize the harm it has suffered, and root out the cause of those harms. Vivendi's motion should be denied and Valve's cross motion should be granted.

## II.    ARGUMENT

### A.    Vivendi's Acts of Copyright Infringement Are Not "In Connection With" the SPA and Valve's Copyright Act Remedies are Not Barred.

To rule in Vivendi's favor the Court must accept Vivendi's argument that anything it could do with a Valve game is "in connection with" the SPA. *See* Def. Br., p. 2. ("*every* action either party takes with respect to the distribution of these games *necessarily* arises in connection with the document that empowers that distribution") (emphasis added). The SPA licenses Vivendi for a particular distribution right – Retail Packaged Product in the Retail

VALVE'S REPLY RE
CONTRACTUAL LIMITATION OF
LIABILITY - 2

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Channel. *See* Holtman Opp. Decl., ¶ 4, pp. 8-11 (SPA § 3.5.1). Valve did not authorize

Vivendi to exploit Valve's copyrighted works in any ways not licensed, i.e., to distribute

Valve's games to cybercafés for commercial exploitation. Indeed, everything not expressly

granted to Vivendi under the SPA is reserved to Valve. *Id.* (SPA § 3.9).

   Vivendi ignores the SPA's limitation grant and asserts that the parties have a

"longstanding contractual relationship, which addresses every aspect of both parties' ability to

use the intellectual property at issue." Def. Br., p.1. Vivendi glosses over the fact that it only

has the ability to use Valve's intellectual property in one way, as Retail Packaged Product in

the Retail Channel. For example, online distribution is unambiguously outside Vivendi's

license grant and is not authorized by the SPA. Were Vivendi to distribute CounterStrike

online, it certainly would not be "in connection with" the SPA but outside its scope. Under

Vivendi's argument, however, the limitation of liability clause would apply to such willful

infringement, allowing Vivendi to keep the majority of the profits while remitting only a

"royalty" payment to Valve–even though it plainly has no right to *any* profits from online

distribution. The online business, and its profits, belong to Valve by virtue of is ownership of

the copyrighted works. Vivendi's theory would essentially force a *de facto* license on Valve

against its will, and the limited license Vivendi does have under the SPA would be illusory

and meaningless. Unlicensed distribution to cybercafés is no different. By definition,

exploiting a copyrighted work  outside the scope of the license makes a copyright licensee an

infringer. *See Nimmer on Copyright* § 10.15(A) ("[w]hen a license is limited in scope,

exploitation of the copyrighted work outside the specified limits constitutes infringement.");

*see also Marshall v. New Kids on the Block Partnership*, 780 F. Supp. 1005, 1009 (S.D.N.Y.

1991) ("a copyright licensee can make himself a 'stranger' to the licensor by using the

copyrighted material in a manner that exceeds either the duration or the scope of the license").

   Indeed, Vivendi's infringement is no more "connected" to the SPA than the

infringement of Valve's rights by any third party who obtained a copy of a game. *See* Def.

VALVE'S REPLY RE
CONTRACTUAL LIMITATION OF
LIABILITY - 3

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Br., p. 2 (stating that "the SPA is broad and detailed, with a long history closely intertwined with...the type of distribution about which Valve complains...."). To the contrary, actions taken "in connection with" the SPA are those performed in the context of implementing and complying with the terms of the agreement. For example, underpaying royalties owed Valve on authorized distribution of Retail Packaged Product would be "in connection with" the SPA and application of the limitation of liability clause to that breach claim may be appropriate.

Thus, by infringing Valve's copyright and distributing Valve games to cybercafés, Vivendi took itself outside the scope of the SPA. The limitation of liability clause cannot apply to behavior that is not "in connection with" the SPA.[1]

**B.     Copyright is Not Covered by the Limitation of Liability Clause By Either the Word "Tort" Or the Word "Otherwise"**

As Vivendi acknowledges, Valve does not dispute that the parties *could have* contracted to limit copyright liability. *See* Def. Br. p. 5. The parties never made such an agreement, however, and the SPA contains no evidence of such an intent.

In *McRoberts Software, Inc. v. Media 100*, 2001 U.S. Dist. LEXIS 16794, *15 (S.D. Ind. Aug. 17, 2001), a case relied upon by Vivendi, the Court held that any limitation on copyright damages would have to be express:

> "the Court recognizes that a clause in a licensing agreement could be designed to limit the types of damages available for copyright infringement. *But the particular Limit of Liability section in question in this case does not mention intellectual property rights in any form.* Nor (even if it had mentioned intellectual property rights) does it say anything by way of precluding equitable relief. Therefore the Court holds that the clause applies only to breaches of contract, and not to violations of [the Plaintiff's] intellectual property rights.

---

[1] Contrary to Vivendi's assertions on pp. 12-13 of its brief, Valve is entitled to a summary judgment ruling on whether copyright damages are beyond the scope of Section 8.2. Courts will hold on summary judgment that a limitation of liability clause does not apply to a particular damage. *See, e.g., Cermetek, Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370, 1374-75 (9th Cir. 1978) (finding limitation of liability applied to the "breach of carriage portion of the contracts" but not to the "breach of the C.O.D. portion").

VALVE'S REPLY RE
CONTRACTUAL LIMITATION OF
LIABILITY - 4

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

(emphasis added).  "Copyright" or "intellectual property rights" are not mentioned in the SPA because there was no intent to eliminate those remedies.  Section 8.2 does not apply.

Vivendi has no response.  Instead, it argues that the words "otherwise" and "tort" should be read as a limitation on copyright.  Vivendi is wrong.  Neither the word "tort" nor the word "otherwise" in Section 8.2 indicates that the parties intended to eliminate Valve's Copyright Act remedies.  The word "tort" is not an express reference to copyright but instead is reasonably read to mean common law torts that typically arise in business relationships.  Copyright infringement, meanwhile, is a statutory cause of action authorized by Congress based in the public interest in protecting the rights of authors in their works.  *See* 17. U.S.C. § 504, *et. seq*  Contrary to Vivendi's argument, because courts have analogized to common-law tort theories in analyzing copyright does not make these causes of action interchangeable, or prove that the word "tort" in the limitation of liability clause was intended by the parties to be an express prohibition of recovery of copyright damages.  Further, "otherwise" cannot reasonably apply to important, federally-created right of recovery in the Copyright Act.  There is no reason to believe, nor is any evidence presented, that the parties anticipated that copyright remedies would be barred through Section 8.2–particularly when courts have rejected the idea that a damages limitation in "a licensing agreement presumptively preempts the intellectual property rights of the licensor."[2]  *McRoberts Software*, 2001 U.S. Dist. LEXIS 16794, at *10-11.

The parties did not intend to exclude copyright damages through Section 8.2 of the SPA.  If they had, Section 8.2 would have so stated.

---

[2] Indeed, the language of the limitation clause makes clear that its primary purpose was to limit liability for breach of the SPA.  Section 8.2 states that, "…neither party will be liable to the other under or in connection with this agreement for special, incidental, consequential or punitive damages of any nature, for any reason, including without limitation, *the breach of this agreement or any termination of this agreement*, whether such liability is asserted on the basis of contract, tort or otherwise…."  Holtman Opp. Decl., ¶ 4, pp. 8-110.

VALVE'S REPLY RE
CONTRACTUAL LIMITATION OF
LIABILITY - 5

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

**C.      Copyright Damages Are Not "Special" Or "Punitive" Damages Barred by the Limitation of Liability Clause**

The Copyright Act sets out the recovery available to Valve for Vivendi's copyright infringement: 1) actual damages caused by the infringement (measured in part by the amount Valve could have made from its copyright), and 2) infringer's profits (or the amount Vivendi profited from the infringement to the extent it is not taken into account in Valve's actual damages).[3]  *See* 17. U.S.C. § 504.

Even assuming arguendo that Section 8.2 applies to copyright damages in the first place (which it does not), in order for Vivendi to limit these damages, it would have to establish that copyright damages are "special" damages under the SPA.  Yet Vivendi does not and cannot offer a case that holds that copyright infringement damages under 17. U.S.C. § 504 are by definition "special" damages.  *See* Def. Mot., pp. 15-16.  Rather, its cases show only that in certain circumstances, lost profits under *common law tort or contract claims* have been characterized as special damages.  *Id.*  These cases have no application to a copyright infringement action.  Vivendi's attempt to categorize copyright damages as "special" rests entirely upon its sloppy use of the term "lost profits."  The "lost profits" at issue in Vivendi's cases, however, are classic examples of lost profits, which are inopposite.  For example, in *Schmalenberg v. Tacoma News, Inc.*, 87 Wash. App. 579, 600, 943 P.2d 350, 362 (1997), the plaintiff landlord alleged general damages for defamation against the Tacoma News, and also special damages for the lost rent resulting from the defamation.  *See* Def. Br. at pp. 15-16.  The direct damage from the defamation was the harm to reputation, while lost rent was considered a special damage.  *Id.*  In contrast, Valve seeks the damages designated by

---

[3] Vivendi spends significant space arguing that Valve cannot receive a double recovery of actual damages and infringers' profits.  *See*, Def. Br. pp. 9-10.  Valve does not dispute that this is a basic point of copyright law but it does nothing to aid Vivendi.  Under the Copyright Act, Valve is entitled to recover the actual damages caused by Vivendi's copyright infringement, as well as Vivendi's profits resulting from that infringement to the extent they are not included in the actual damage calculation, i.e. no "double counting."  *See* 17 U.S.C. §504(a)(1); *see also Nimmer on Copyright*, § 14.03.

VALVE'S REPLY RE
CONTRACTUAL LIMITATION OF
LIABILITY - 6

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE (206) 623-7022

Congress as the proper recovery for copyright infringement (some elements of which have been described as "lost profits"), which arise directly from the infringing conduct. *See* 17. U.S.C. § 504. The use of the term "lost profits" in circumstances outside of the context of copyright law does not support Vivendi's imprecise argument.

**D.    Copyright Infringer's Profits Are Not Punitive Damages**

Vivendi is incorrect that infringer's profits under the Copyright Act are really "punitive" damages that are barred by the SPA. Punitive damages are those imposed to punish. "[P]unitive damages are not to compensate the plaintiff, but to punish the defendant and to deter the defendant and others from such conduct in the future." *Sintra, Inc. v. City of Seattle*, 131 Wn.2d 640, 662 (1997). Infringer's profits, on the other hand, "prevent the infringer from unfairly benefiting from a wrongful act." Def. Br., p. 10 (*quoting* H.R. REP. No. 94-1476, at 161 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5777); *see also Davis v. The Gap, Inc.*, 246 F.3d 152, 159 (2d Cir., 2001) ("The award of the infringer's profits examines the facts only from the infringer's point of view. If the infringer has earned a profit, this award makes him disgorge the profit to insure that he not benefit from his wrongdoing.") Infringer's profits are affirmatively distinguished from punitive damages in analyses of copyright damages. While infringer's profits are a undisputed element of copyright damages, under copyright, recovery of punitive damages is generally not permissible. *See* Nimmer on Copyright § 14.02 ('It is…clear that exemplary or punitive damages should not be awarded in a statutory copyright infringement action."); *see also Davis v. The Gap, Inc.*, 246 F.3d at 172. It is not punishment to take away from the infringer what he has no right to in the first place.

**E.    Vivendi's Characterization of Valve's Contract Damages Claims is Inaccurate and Premature**

If the limitation of liability clause were to apply,[4] Valve does not dispute that it cannot

---

[4] The limitation of liability clause does not apply if Vivendi acted in "bad faith." *See City of Dillingham v CH2M Hill Northwest, Inc*, 873 P.2d 1271, 1275 (Alaska 1994) ("a party may contract to limit liability for damages resulting from breach of contract, but…'such a provision is not effective in case he acts fraudulently or

VALVE'S REPLY RE
CONTRACTUAL LIMITATION OF
LIABILITY - 7

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

recover "special," "consequential," "incidental," or "punitive" damages on its breach of contract claims. The parties' disagreement hinges on what types of damages fall under these categories. What Vivendi ignores is that damages categories are not static but depend on the unique situation of each dispute. *See* 22 Am. Jur.2d *Damages* § 41 (2d ed. 2003) ("Distinctions between general and special damage arising from the breach of contract are not absolute, but relative; in other words, damage which is general in relation to a contract of one kind may be classified as special in relation to another."). Vivendi located a few cases that defined lost profits and damage to goodwill, for example, as "special" damages, and relies upon these cases without application to the facts of this case. *See* Def. Br., pp. 14-16. These cases are not analogous. *Id.* For instance, Vivendi has an express direct obligation to preserve Valve's goodwill under the SPA. *See* Holtman Opp. Decl., § 4, pp. 8-110 (SPA § 9.2). Damage to good will is therefore a direct damage as it flows directly from Vivendi's breach of Section 9.2. Vivendi's argument, which prohibits any recovery for a breach of Section 9.2, would write out an express obligation from the SPA.

Vivendi's motion to bar recovery of breach of contract damages is premature. Discovery is not yet complete, as there are several categories of information Vivendi has refused to produce which are the subject of Valve's pending motion to compel. When this information is finally produced, Valve will be able to assess the nature and severity of its damages. Allowing Vivendi to unilaterally and preemptively define the damages suffered by Valve would impede Valve's ability to develop its case.

Vivendi's attempt to get the Court to rule that virtually all Valve's damages are "special" and therefore barred is inappropriate at this time.

---

in bad faith '") (*quoting* 6A *Corbin on Contracts* § 1472 (1962)); *see also*, *McNally Wellman Co  v. New York State Elec  & Gas Corp* , 63 F.3d 1188, 1198 (2d Cir , 1995) (finding liability limitation unenforceable where actions constituted an "intentional breach of the contract").

VALVE'S REPLY RE
CONTRACTUAL LIMITATION OF
LIABILITY - 8

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

### III.   CONCLUSION

Valve respectfully requests that the Court deny Vivendi's Motion for Partial Summary Judgment re Contractual Limitation of Liability and grant Valve's Motion for Partial Summary Judgment Re Contractual Limitation of Liability and hold that 1) copyright infringement damages are not barred by the limitation of liability clause in the SPA; and 2) that Valve's direct damages resulting from Vivendi's breach of contract are not barred by the SPA.

DATED this 1st day of October, 2004.

PRESTON GATES & ELLIS LLP

By        /s/     Jason P. Holtman
Karl J. Quackenbush, WSBA #9602
Jason P. Holtman, WSBA # 28233
Kristin J. Boraas, WSBA #32015
Attorneys for Plaintiff
Valve Corporation

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on October 1, 2004, I electronically filed the foregoing with the clerk of the Court using the CM/ECF system, which will send notification of such filing to the following,

Annette Hurst/Sarah King/Linda Q. Foy
Howard Rice Nemerovski Canady Falk & Rabkin, P.C.
Three Embarcadero Center
7th Floor
San Francisco, CA 94111

Michael R. Scott
Hillis, Clark, Martin & Peterson
500 Galland Building
1221 Second Avenue
Seattle, WA 98101-2925

/s/    Jason P. Holtman
Karl J. Quackenbush, WSBA #9602
Jason P. Holtman, WSBA # 28233
Kristin J. Boraas, WSBA # 32015
Attorneys for Plaintiff
Valve Corporation
Tel: (206) 623-7580
Fax: (206) 623-7022
jasonh@prestongates.com

VALVE'S REPLY RE
CONTRACTUAL LIMITATION OF
LIABILITY - 10

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022